*Attachment A - Bivens Complaint form*



FILED

FEB - 3 2020

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

Timothy Scott Wise

#03540-063

*(Enter above the full name of the plaintiff
or plaintiffs in this action)*

*(Inmate Reg. # of each Plaintiff)*

v.

CIVIL ACTION NO. 1:20-cv-00056

*(Number to be assigned by Court)*

C. Maruka (Warden) et al. D. Dilant, MR. Phillips,
R. Malone, K. Thompson, F. Saunders, W. Kendrick, D. Sanders,
L. Howell, L. Green, S. Cook, G. Walters, MR Horton,
S. Wyatt, R. Alexander, C. Carothers, AW Rich, AW Shrader,

*(Enter above the full name of the defendant
or defendants in this action)*

Defendant(s).

## COMPLAINT

I.    **Parties**

A.    Name of Plaintiff:    Timothy Scott Wise

Inmate No.:    03540-063

Address:    Federal Correctional Institution McDowell,
P.O. Box 1009, Welch, WV 24801

B.    Additional Plaintiff(s) (provide the same information for each plaintiff as listed in Item A above).

Name of Plaintiff: _____

Inmate No.: _____

Address: _____

_____

Name of Plaintiff: _____

Inmate No.: _____

Address: _____

_____

C.    Name of Defendant: _____

Position: _____

Place of Employment: _____

_____

D.[1]    Additional Defendant(s) (provide the same information for each defendant as listed in Item C above):

Name of Defendant: _C. Maruka_____

Position: _Warden_____

Place of Employment: _FCI McDowell, Box 1029____

_Welch, WV 24801_____

Name of Defendant: _D. Pilant_____

Position: _B-unit Manager_____

Place of Employment: _FCI McDowell, Box 1029___

_Welch, WV 24801_____

2

Name of Defendant: R. Malone

Position: B-4 unit Counselor

Place of Employment: FCI McDowell, p.o. Box 1029
Welch, WV 24801

Name of Defendant: K. Thompson

Position: Health Services Administrator

Place of Employment: FCI McDowell, po Box 1029
Welch, WV 24801

Name of Defendant: E. Saunders

Position: Special Housing unit Lieutenant

Place of Employment: FCI McDowell, p.o. Box 1029
Welch, WV 24801

Name of Defendant: W. Kendrick

Position: special Housing unit #1 day shift C.O.

Place of Employment: FCI McDowell, p.o. Box 1029
Welch, WV 24801

Name of Defendant: L. Howell

Position: Special Housing Unit Corrections officer

Place of Employment: FCI McDowell, po. Box 1029
Welch, WV 24801

Name of Defendant: L. Green

Position: Mail Room Supervisor

Place of Employment: FCI McDowell, p.o. Box 1029
Welch, WV 24801

3

D. [3]

Name of Defendant: S. Cook

Position: Correction officer

Place of Employment: McDowell FCI, P.O. Box 1029
Welch, WV 24801

Name of Defendant: G. Walters

Position: Nurse

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV 24801

Name of Defendant: S. Wyatt

Position: Nurse

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV 24801

Name of Defendant: R. Alexander

Position: Nurse

Place of Employment: FCI McDowell, P.O Box 1029
Welch, WV 24801

Name of Defendant: D. Sanders

Position: Correction Officer

Place of Employment: FCI McDowell P.O. Box 1029
Welch, WV 24801

Name of Defendant: AW    Rich

Position: Associate Warden

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV 24801

4

Name of Defendant: MRS C. Carothers
Position: PA
Place of Employment: FCI McDowell, P.o. Box 1029
Welch, WV 24801

Name of Defendant: MR. Horton
Position: SIS, special investigation Service
Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV 24801

Name of Defendant: Phillips
Position: Counselor unit C-1
Place of Employment: FCI McDowell, P.o. Box 1029
Welch, WV 24801

Name of Defendant: MR. Shroder
Position: Associate Warden
Place of Employment: FCI McDowell, P.o. Box 1029
Welch, WV 24801

Name of Defendant:
Position:
Place of Employment:


Name of Defendant:
Position:
Place of Employment:

5

II.    **Place of Present Confinement**

Name of Prison/Institution:    _FCI McDowell_

A.    Is this where the events concerning your complaint took place?

Yes __✓__          No _____

If you answered "no," where did the events occur? _____

_____

B.    Is there a prisoner grievance procedure in this institution?

Yes __✓__          No _____

C.    Did you present the facts relating to your complaint in the prisoner grievance procedure?    Yes _____          No __✓__

If you answered "no," explain why not: _For six months I've been denied grievance_

_forms, making my remedies unavailable, though I've done all I could._

If you answered "yes," what was the result at level one, level two and level three (attach grievances and responses): _____

_____

III.    **Previous Lawsuits**

A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise related to your imprisonments?

Yes __✓__          No _____

B.    If your answer to A is "yes," describe the lawsuit in the space below. If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.

1.    Parties to the previous lawsuit:

Plaintiff(s): _Timothy Scott Wise_

Defendant(s): _Harley Leppin et al._

6

2. Parties to the previous Lawsuit:

Plaintiff: _Timothy Scott Wise_

Defendants: _Harley Lappin et al._

2. Court

_Arkansas, Eastern District, Little Rock_

3. Docket Number: _Denied Legal materials, I do not have the #._

4. Name of Judge of whom case was assigned: _Same as above_

5. Disposition

_Jury verdict for Government_

6. Approximate date of Lawsuits: _2008_

Approximate Date of Disposition: _2013_

C.

1. Parties to the previous Lawsuit:

Plaintiff _Timothy scott Wise_

Defendant (s) _Harley Lappin et, al._

7

2.      Court (if federal court, name the district; if state court, name the county);

_EASTERN DISTRICT OF TEXAS, BEAUMONT_

3.      Docket Number: _I am being denied access to legal papers. I do not have docket #._

4.      Name of judge to whom case was assigned: _(Same as above)_

5.      Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)
_Still pending_

6.      Approximate date of filing lawsuit: _2009_

7.      Approximate date of disposition: _Pending_

**IV.    Statement of Claim**

State here, as briefly as possible, the <u>facts</u> of your case. Describe what each defendant did to violate your constitutional rights. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets of paper if necessary.)

(1.) Denial of Grievance forms, from August 2019 to present, 1-26-2020, making remedies unavailable. In September 2019, I began asking Counselor Malone for Grievance forms. He made excuses, such as "I do not have any with me, I'll bring them next time." He never brought them. I only ever seen R. Malone, while in SHU, 3 or 4 times and he always said the same thing, that he did not have the forms with him. When I asked other Staff in SHU, they ALWAYS said "You have to get them from your counselor, R. Malone." While on the compound, I was moved to unit C-1 and did not have access to Malone, and with lock-downs and restricted movement he was unavailable. R. Malone was put on "Extended Leave," Approximately October 2019, and I have not seen him since. I've spoke to the B unit Manager Pilant, C1 Counselor phillips, every institution Duty officer I have seen, and other unit Team members. They all told me "You have to get them from your counselor." Mr. D. Pilant told me several times, he "would let Malone know." It's an unwritten policy to "deny grievances" to SHU inmates. This institution has made my remedies unavailable.

IV.  Statement of Claim (cont.)

(2.) Deliberate Indifference to serious medical needs, Cruel and unusual punnishment, descrimination, failure to protect and harrassment.

On July 23rd, 2019, during my "intake evaluation/screening," done upon my arrival at FCI McDowell, by nurse S. Wyatt. I Timothy Scott Wise, informed him "I have a history of seizure. For several years, I took anti-seizure medications, both Tegretol and at another time oxcarbazepine. When my seizures went into remission, I got off the meds. In the last eighteen (18) months, my seizure activity has recurred a dozen or more times and I want to get back on medication to control and prevent seizure." S. Wyatt told me he could see my seizure history in my computer file, and he issued me a "medical bottom bunk restriction," due to "History of seizure," clearly typed on the page. He told me to "watch the call-out for an appointment to see the PA." I was sent to my housing unit, B4, an upper building (2 stories with stairs,) upper bunk. I informed the unit officer of my bottom bunk restriction due to seizure. He told me I would have to see my counselor "tomorrow." The next day I took my medical restriction to counselor R. Malone. He said "There are no open bottom bunks right now, just give me some time." I told him I was fearfull of seizing in my sleep, falling and hurting myself, and that I was not comfortable staying on a top bunk. MR. Malone said "You can stay where I put you for now, or I can put you in Special Housing Unit, (SHU.)" I was coerced to concede. This caused me great stress. Approximately sometime in September I had a seizure. Someone activated the "durress call button," in my cell. The responding officer S. Cook was told by another inmate (upon belief and information,) that "He's having a seizure." S. Cook replied "B.S. he's on drugs." Due to this officers assumption, the stage was set for my stigmatization

9

IV       Statement of Claim (cont.)

Over the next 6 months to be "classified," as a drug addict and junkie. Though this Officer had in his office, a copy of my "bottom bunk medical restriction," he responded to my medical duress alarm and immediately assumed I was "High on drugs." The other officers responding now to officer S. Cook's body alarm, followed his lead, attacking me, battering and abusing me as if I were aggressively resisting them and not complying by willfull choice, when I was actually having a seizure. I was cuffed behind my back, without the cuffs being double locked to prevent them from ratcheting tighter on my wrists, my legs were shackled, and I was carried outside the unit head first, face down, to a gurney waiting at the bottom of the steps. I was flipped in midair by several officers, and slammed on my back on the gurney, my body weight ratcheting the cuffs down, cutting skin and bruising to the bone, my hands and the cuffs digging into my low back painfully. I was then strapped down to the gurney, the strap padlocked preventing me from moving or alleviating the pressure + pain at all. I was wheeled to the Lieutenants (LT.) office, and parked like this for approximately 2 hours. During this time I pleaded and cried for relief, and said for everyone to hear, "I had a seizure, why are you doing this to me, please loosen the cuffs my hands are hurting so bad," etc. I was mocked and called "drug addict," "junkie," and "clown." My pleas were ignored. I was not seen by medical staff. Though my disability is copiously recorded in my medical file, and the McDowell medical staff creating and circulating medical restriction clue to seizure history, I was thrown in SHU for approximately 18 days of extremely harsh conditions. Books were not allowed in SHU, nor newspapers, magazines, radios, during this time.

10

IV       Statement of Claim (cont.)

When Counselor R. Malone come to see me approximately 7 days after I was placed in SHU, I asked for grievance forms. He told me he "did not have any with him," but said he would bring some back. He never did. Officer S. Cook wrote me an Incident Report for drug use. In the Incident Report medical stated "inmate Wisse is on no medications and has no pre-existing conditions to explain his behavior." During my hearing the disciplinary hearing officer listened to my statement "That I have a history of seizure. I was having a seizure. I tested negative for drugs after the incident, no drugs were found and I've never in 22 years been guilty of using drugs." She researched my medical history, which conflicted with the statement in the incident report from McDowell medical staff. The incident was expunged. At this point Counselor Malone come to see me. He said "I forgot the forms Wise, but you have bigger problems." When I asked, "what problems?" He stated "I know the shot was expunged but I can't let you out, because the inmates in Unit B4 don't want you back in the unit because they "Think," you had a drug episode, apparently officer Cook was very vocal about it, and the inmates are regulating this drug problem, as they are tired of being "shook-down," by staff." I was shocked and said "mr. Malone, you know about my seizures and medical history, I did not do anything wrong, and have been beat up by staff and stuck in this messed up SHU for weeks, I want out!" He asked "If I could get you moved to another unit, bottom level, bottom tier, bottom bunk. would you be good with it?" I replied "Yes, I just want out of SHU." While in SHU, I submitted sick call requests

11

IV    Statement of Claim (cont.)

regarding seizure and my need to be put back on the antiseizure medication. I recieved no response, was not seen and could not convince anyone to help me who I could manage to get to stop at my door. I was completely denied grievance forms. I asked R. Malone "if I could write my grievance on blank paper?" he said "They will not be processed unless they are on the official forms, but I will bring them next time." I was released to unit C1 from SHU the next day. That same evening we (the institution) was locked down for 2 weeks. Counselor Malone did not come to my door during that time. Approximately 6 days after the lock down Officer D. Sanders, Came to my door after Count, while the doors were still locked, opened my door and woke me from sleep on my bed and immediately began yelling questions at me. Startled from sleep, I could not figure out what was going on and officer D. Sanders said "Come here." motioning me toward him at the door, as I approached, he grabbed my arm and said "Let me guess, you're having another seizure!" He then pulled me to the Sally port where 2 other C.O.s were waiting. One of them told me "Turn around and cuff up." I put my hands behind my back and he grabbed my hands and yanked my arms up behind me until it felt like my shoulders would pop out of their sockets. The pain caused me to lose control of my bladder and officer D. Sanders said "Look he's pissing hisself." They all laughed. I was not taken to medical or evaluated. I was given a drug screen urinalysis which came back negative. I was given an incident report for drug use. Approximately 5 days later Counselor R. Malone came to do my unit Disciplinary Hearing and refer the incident to DHO.

12

IV    Statement of Claim (cont.)

Counselor Malone told me "You really pissed Cook and his buddies off when you got out of that write up. This is a 100 series. I have to refer it to DHO. do you have any comment?" I replied "No." and signed for my rights being read. I then reminded Mr. Malone that I needed grievance forms. He made a note and told me he would bring them the next time he come to SHU. This was some time Approximately October 2019. Counselor R. Malone was placed on "Extended Leave," for reasons unknown to myself. I have never seen R. Malone since this UDC hearing in october. He has not been to SHU to do "rounds." No one has been designated or identified to me, to take over Counselor R. Malones duties or help me at all, not even to hand me a blank grievance form. I have asked multiple Counselors and Case managers from other Unit Teams not assigned to me, like CM White from A unit, MR. Thomas also from A-unit and several others. The response is ALWAYs the same "You MUST get them from "your" Counselor." I've spoke to D. Pilant, the B unit Manager several times and he always says he "will let Malone know to bring me the forms." Approximately after 30 days in SHU, the incident report was expunged due to total lack of evidence. I was released to unit B4, Top unit, Top Tier, Top bunk, Cell 228. This was my original unit where staff already knew the inmates did not want me due to S. Cooks handling of my first seizure in FCI McDowell. I looked for Counselor R. Malone, and was told "He is on extended leave." I spoke with Case Manager Oxford, who called Counselor phillips in unit C-1 and had me

13

IV    Statement of Claim (cont.)

moved back to unit C-1, bottom floor, tier, and bottom bunk to accomodate my medical restriction, as well as to prevent an inmate on inmate altercation/assault because the inmates in Unit B4 did not want to anger officer S. Cook, who was angry his incident report got expunged and let it be known he did not want me in the unit.

On December 9th, 2019, I had a seizure while alone in cell 110 unit C-1. My cellmate and another inmate came in while I was seizing and apparently left the door opened, as when I came to, I was in Welch at the hospital. The Doctor R. Southerland evaluated me and said "The officer in your unit saw you hit your head on a steel bunk and knock yourself out. The people I've talked to, the C.O.s with you say this has happened two or three times and they think you are on drugs. Are you on something?" I told him "I am not on any drugs. I had a seizure!" He asked "Do you have a history of seizure? Are you on medication for it?" I replied "Yes, I have a history, it is in my medical file, it is on the "bottom bunk medical restriction," that McDowell medical staff issued. I was on Tegretol and oxcarbazepine before, but when my seizures were in remission for a while, I got off the medication. I've been trying for over 4 months to get them to put me back on it, but I've not even been seen despite many requests." The Doctor left for a while. When he came back, he told me he had consulted a neurologist in Beckley, WV. He gave me 1000 mc of Kepra orally, and said "I'm prescribing you Kepra and ya'll be recieving it from now on." I thanked him and was taken back to FCI McDowell. My escort asked if I could

'14

IV  Statement of Claim (cont.)

be allowed to go back to the Housing unit and cell I was assigned to?
The operations Lieutenant Said "where's he been?" The C.O. replied
"He had a seizure, We took him to the hospital in Welch, the Doctor gave
him some medication and released him." The LT. Said "Sounds
like a B.S. excuse for getting high, throw his ass in SHU." I
was x-ray scanned for drugs, then taken to SHU. I was not seen by
medical staff, was not given any medication. On December 10th, 11th,
16th and 18th, I spoke to nurse Wyatt Continually asking about the
anti-seizure medication Doctor Southerland had prescribed on The 9th of
December, yet I'd not recieved it. Nurse S. Wyatt continually
said he "would look into this." Finally on 12/19-19 Nurse S. Wyatt told
me " You were prescribed Kepra, anti-seizure medication by the
Doctor in Welch on The 9th." I asked "Then why have I not
recieved any medication; no one here has seen me or evaluated
me, yet Some one is denying me a needed medication prescribed
by a Doctor?" I was told "it is being looked into."
Between 12-20-19 and 12-26-19, I gave nurse G. Walters BOP
medical Release forms, filled out and Signed, to release my
records to my lawyer. These releases were not Processed and on 1-26-20 I submitted more.
    On approximately 12-31-19, I Was released from
SHU, without an incident report, after 22 days of harsh deprevations.
and denial to even provide grievance forms. I was sent back
to unit B4, an upper unit, upper floor, upper bunk. Counselor
Malone had been and was still on Extended leave. I Went to
Case Manager Oxford, who immediately Called Counselor phillips in
unit C1, reiterating my need for bottom unit, bottom floor, bottom bunk.

15

IV   Statement of Claim (cont.)

per my medical restrictions. She hung up the phone and told me go ahead and lock in for 4 pm Count in Cell 228 upper bunk, and she was going to talk to Unit Manager D. Pilant and see what could be done. I locked in to Cell 228 and a short time later officer S. Cook told me to "leave your personal property and go to the Lieutenants office." When I arrived LT. Prout said "Someone has went to unit Manager Pilant and told him if you are not moved to another unit, it is going to get physical. I don't know why I'm not locking up the guy who made the threat, but I gotta put you back in SHU." About this time, C1 Counselor Phillips and unit Manager D. Pilant come into the LT's office. I plead with all three of them stating "You are all aware that I have a disability, I suffer Seizures, it's well documented in my file and I have no control of it. Yet I've never been seen by medical here, never been given the medication prescribed by the Doctor I was sent to. I've suffered months in the SHU, been beat up and abused due to my known medical record and history being ignored. Ya'll have even denied me the ability to file grievances. Now after 22 days of hell without an incident report, because I had a seizure, and the other almost 2 months in SHU you are trying to throw me back in there for nothing I've done, instead of moving me to another unit? That's wrong."

16

IV    Statement of Claim (cont.)

I was told they would "see what could be done, but had to lock me up now." I was taken to the X Ray Scanner and screened for weapons or drugs. Then I was taken back to SHU. All of my legal work, letters, pens etc.. that I'd had in SHU were taken from me. This put me under great stress. On the evening approximately the 1st of January 2020, I had another seizure. An officer doing rounds found me unresponsive. I was taken for the 2nd time to Welch, hospital and evaluated by Doctor Southerland. Blood and urine were taken for drug screens for the 2nd time. The Doctor asked me "Did the medication I prescribed not work?" I stated "I was never given any medication, and I had another seizure." The Doctor left and when he came back, told me "I am prescribing the Kepra again, and you should get it from now on." I thanked him and was taken back to the prison. I was moved to another range and cell. On approximately the evening of the 2nd of January 2020, I had the worst seizure I've experienced, during which I badly bruised both hips and Left quadricept which across the middle of the bruise was a laceration. All three bruises were approximately the size of basketballs. I also hurt something in my back, that felt like my spine was fractured and bone was moving around under the skin. My cellmate pushed the duress button, and staff responded, taking me back to Welch hospital. I was in horrible

IV    Statement of Claim (cont.)

pain. Upon arrival Doctor Southerland asked me "What's going on, I seen you last night?" I said "They never gave me the medication and I had a bad seizure. Something is hurt in my back, something feels broken." I was having to whisper due to the pain. The escorting Officer, W. Kendrick was yelling "He's lying, he's high on drugs, him and his celly." The Doctor was having difficulty hearing my whisper over Officer Kendrick's yelling and leaned down and asked "What was that?" I again whispered, "I think Something is broke in my back, I feel a bone moving around." Officer Kordrick became very loud and insistent at that Same time repeating "He is high on K2, he's on drugs and lying." The Doctor seemed distracted by this outburst and said they had taken blood and urine to screen for drugs, just as they had the last 2 times before (which were negative.) He said he was not sure what else they could do. I was given Xrays, and the Doctor told me "I am prescribing you the Kepra again, and an anti-biotic, as I noticed in one of your scans that you have an abscess." I thanked him in a painfull whisper. Taken back to the prison, put through the X ray scanner for drugs to be detected, which as every previous time there were none. I was then taken to a "dry cell," so called because there is nothing but a Concrete slab with a very hard mat; in a locked cell surrounded by windows; where staff observe every movement and keep notes in a watch "Log."

18

IV    Statement of Claim (cont.)

The lights are left on 24 hours a day, the room is cold and you are only given a "suicide gown," and a stiff, thick mat-like thing instead of a blanket. SHU Lieutenant F. Saunders put me in this "dry cell," as more punnishment and made it understood he felt I was on drugs and just had not been caught. I could not lay on my stomach or back due to a bone moving around making it too painfull to stand. Both my hips were badly bruised, but I had no choice but to flip flop from one hip to the other, and was in excruciating pain the whole time. I was made to defecate in a bag in front of a Lieutenant and a C.O., for three days. During this time I was never seen by medical staff. I was never given the medications Doctor Southerland prescribed, for the third time. The second day in the "DRY cell," Officer Jockson asked me "Are you all right? I heard you moaning when you slept and whenever you move?" I showed him the basketball size bruises on my hips and left thigh bruised and lacerated. Officer Jackson scowled. I told him "The bruises hurt, but there is a big bone moving around under the skin of my back. It feels broken and every time I move I feel it trying to poke out." He made a "NOTE" in the watch "Log," on the 4th or 5th of January 2020. He told me later, "I notified medical and they are going to come look at you."

19

IV    Statement of Claim (cont.)

I told him "thank you, even a Motrin would be welcome. I'm worried about what this could be wrong with my back." On my third day in this torture room I was taken out to the x ray scanner again, then put back in SHU, into a "Hard Cell," which is an identical concrete slab and very hard, thin mat. The only difference is there is a toilet and sink in a hard cell. I was left here for 2 more days of torture, and **never seen by any medical staff, given any medication, nor allowed to purchase even over the counter meds,** for pain. On 1-6-20, I stopped Nurse S. Wyatt in the afternoon during his pill line rounds. I explained the injury I sustained during the seizure, and my symtoms and pain. He said "it sounds like an intercostal rib dislocation, that's what **I think**, unfortunately there's not much that can be done for it. I'm going to try and get you some wraps and Ibuproffen." I thanked him. Later he brought me 8 Ibuproffen 800 mg tablets. On January 8th, I was given 6 more Ibuproffen, and told I "would not recieve any medication until I was sent out for a "neurology consult." S. Wyatt told me this could take 6 months to a year. On 1-11-20, I turned in another "Sick-Call," slip, detailing my pain and again requesting to be seen by some one from medical, as I'd never been evaluated or examined since being hurt.

   To this present date I have not been seen by medical.

20

IV      Statement of Claim (cont.)

Despite numerous sick call and verbal requests to s.Wyatt, G. Walters, R. Alexander, C. Carothers and HSA, K. Thompson, I have not been evaluated, examined, Xrayed, or medicated, for seizures, abscesses, or the painfull condition of my back besides 15 motrin/ibuproffen. To date I've recieved nothing but those ibuproffen from McDowell staff.

(3.) Denial of Dental Care, 7-23-19 to present 1-26-20. I've never been seen or evaluated for dental at FCI McDowell, despite many requests detailing abcess, chipped and broken teeth damaged during seizures here at McDowell. No one has responded and my teeth get worse by the day while leaving me in pain.

(4.) Cruel and unusual punnishment, Due process violations (including denial of contact with the outside world, contrary to the Code of Federal regulations & BOP policy.) harrassment, descrimination and using the Special Housing Unit as punnishment before sanctions, evidenced by McDowell SHU Rules, which show the same restrictions for Administrative Segregation (before finding of guilt or sanctions,) and disciplinary Segregation, (after finding of guilt and sanctions imposed by DHO.) While in SHU for 90+ days and counting, without ever being sanctioned, and on Ad. seg. the whole time I suffered the same "punnishment" and restrictions as someone "sanctioned," for assault, rape, escape attempts etc... See EXHIBIT A, attached to this complaint showing authorized items for both Administrative and disciplinary Segregations. It is the same exact list for both, the numbers are just arranged different. In McDowell SHU, no books, newspapers or magazines are allowed from the publishers or otherwise. No "book cart" is provided, other than Approx. 5 weeks of one book per week, but this was discontinued without justification. Leaving inmates completely cutoff from the outside world and left locked in a cell with nothing. The monotony is intended to punnish and torture. During November, December and January of 2019 and 2020, even when the temperature outside was in the teens and twenties, the air is left blowing cold, frigid air causing inmates to stay under flimsy blankets all day and night to stay warm, and personally often not succeding. The food is served cold more often than not. I've never been allowed to inventory my personal property or retrieve legal work in 90+days. Commissary is only provided every 2 weeks, when it is provided and is ofte 3-4

IV     Statement of Claim (cont.)

Weeks between shopping dates, effectively denying me access to the Courts and family, as well as over the Counter pain medications and ointments. Often denied pens with the excuse "we ran out." Given no access to Law Library or legal materials. Outgoing mail with any complaints about FCI McDowell often "disappear." As an unwritten policy grievance forms are denied. Recreation is regularly not given, sometimes for a week at a time. Any one of these issues alone, or even a couple together may not seem too harsh. When taken all together it is excessive and intentionally harsh, as the Executive Staff, Unit Teams, SHU Lieutenant and C.O.'s openly state the "belief," that the more torture the SHU is, the less likely one will "Choose," to be put there. When speaking to AW Rich, AW Shroder, D. pilant LT. F. Saunders, W. Kendrick and L. Howell, these "complaints," are shrugged off, with statements like "You should'nt have Come to SHU if you don't like it." Even when it Violates the law, like L. Howell denying me the phone Well after I had not used it for 30 days, and after she read letters from my family Stating worry and stress from not hearing from me, "she responded with "Too bad." and then got other staff to also refuse me the phone. I did not get a call for 45 days. They have all discriminated against my disability.

22

IV.   Statement of Claim (cont.)

(5.)

    Illegal mail policies which violate Code of Federal regulations, B.o.p. policy statements and constitutional rights. The severe limitations put on incoming mail Serve no penological need, nor do they make sense. Limiting colors when the mail is being photo copied anyway. Destroying original mail without consent of sender, and or rejecting/destroying incoming mail without notice or appeal process. Limiting the content of incoming mail to 5 pages. Hindering incoming mail so long it is obsolete by the time it is recieved.

    Outgoing mail being routinely lost or thrown away, by staff as there is no record.

    Legal mail clearly marked from lawyers or the Federal Court in Bluefield, W.V. with "open only in the presence of inmate," being opened without me present, as on Dec. 12th 2019, when the Bluefield Court sent me forms, I recieved them already opened.

    I have spoken to L. Green, mail room Supervisor about all these issues. I've also sent him requests detailing all of this, as well as there being no "procedure," available for SHU inmates to send legal mail out, or to get certified labels, return reciept labels, legal envelopes etc..

    Books sent by publishers to me while in SHU, being delivered to housing unit B4 and given to other inmates, costing my family and friends money while denying me the ability to ever recieve them, as records will show.

23

IV    Statement of Claim (cont.)

(6.)    Due process violations, discrimination based on refusal / failure to process visiting forms of visitors, immediate family and friends already approved in multiple other B.O.P locations. From 7-23-19 to present, despite my Fiancee submitting multiple forms filled out correctly and sent certified return reciept via usps, my visitors forms have still not been processed, arbitrarily denying me visits without sanction or due process. R. Malone, D. pilant have been asked repeatedly by myself and contacted by phone by my Fiancee regarding this issue. We've both been given no reason or explination for 6 months. There are records of this.

(7.)    Failure of Executive Staff to correct Constitutional Violations or Code of Federal Regulations and BOP policy Violations. In November of 2019 I stopped who I "Thought," was Warden C. Maruka at my door in Cell 226 on E-Range. I asked "Are you the warden?" He shook his head in the negative. I said "you are not the warden?" He replied "No!" and kept walking. I stopped AW Rich next and asked "where is the warden, I'm trying to bring some serious issues to his attention?" AW Rich said "He was just at your door." The man who told me he was "Not the Worden," was.

24

IV    Statement of Claim (cont.)

From that point on I could not get him to stop at my door, making himself as unavailable as grievance forms. I've spoke to AW Rich, D. Pilant, K. Thompson, and Associate Warden Shrader. All failed to show the interest or follow up. The abuses in McDowell are systemic, and shocking. There is a blatant indifference to Constitutional rights of inmates and disregard for the Courts. These policies in McDowell have trickled down from Executive Staff to the rest of the Staff under their authority

## Conclusion

After 6 plus months in FCI McDowell, I have been forced to experience stress, pain, discrimination, denial of medical care, torment and torture, including 90 plus days and counting without justification in a special housing unit which operates to abuse rights and create illegal hardship to deter "rule breaking." The reason I've been in SHU all this time is due to a "Known," documented medical condition. In 22 plus years in Federal prison, I have NEVER tested positive for or been found to possess drugs. Yet, in spite of my medical records and FCI McDowell medical Staff issuing me a bottom bunk Restriction, Staff have continued to insist I am on drugs: without any evidence of such, in fact contrary to the fact I've tested negative for all drugs in the many drug screens, urinalysis + blood tests administered in this prison and the outside hospital. All while denying medication prescribed by the one qualified person, Doctor Switzerland, who they sent me to three times.

IV    Statement of Claim (cont.)

I've still recieved no medication, and live with the very real stress of having another seizure and not only being hurt during such, but then to be abused and tortured by the people left responsible for providing me care.

In two plus decades of incarceration, I've experienced some truly horrible things. The six months I have been at FCI McDowell, goes in with the worst and several times has made me disbelieve reality of all that goes on here.

I have always thought I was resilient, stoic, tough. The things I've suffered here have broke me down to tears, frustration and helplessness. I send this cry, this prayer to the Court as my only hope of relief. I'm not trained in the law, and as a pro se littigant, ask if I've made any mistakes, I be allowed opportunity to amend my complaint. I've had to "approximate," dates, and omit many facts as I have not am not being allowed legal materials, paperwork etc. Which would require me inventorying my property. There is much I would have put in this complaint but did not want to rely solely on memory and thus make a mistake. I beg this Court to read my complaint in the light most favorable.

Corrections: I have been allowed 1 book a week for approximately 5 weeks of my 90+ days and counting in SHU, though they've again been dissallowed the last month or more without justification. I was allowed to purchase a radio on 1-13-20

26

## V.     Relief

State briefly and exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.

Order defendants to immediately provide treatment of medical needs and provide antiseizure meds. Judgement ordering payment of $500,000.⁰⁰ compensatory damages, $500,000.⁰⁰ punitive damages, for total $1,000,000.⁰⁰ Order BOP to train all staff how to appropriately respond to potential medical issue of seizure and how to recognize one. Reinstate legal mail handling policies. Order defendants to transfer me to a low security prison commensurate with my custody points and close to my release address Atlanta GA.

Signed this 27ᵗʰ day of __January__, 20 _20_.

_Timothy Scott Wise_

_____
Signature of Plaintiff or Plaintiffs

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on __January 29ᵗʰ, 2020__
                        (Date)
To Officer Simmons.

_Timothy Scott Wise_
Signature of Plaintiff

27

EXHIBIT 4A

Inmates placed in the Special Housing Unit will not be allowed to retrieve items from their personal property after initial inventory is conducted by the segregation property officer. The only exceptions to this will be the following:

1. Inmates will be able to retrieve legal material that is related to current and on-going case (s). This must be verified and approved by the inmate's Unit Team and SHU Lieutenant.

2. Inmates that have no funds in their commissary account will be able to receive hygiene items from staff. Inmates that have funds available will have to purchase new hygiene items from the commissary. The unit team must verify that the inmate is indigent.

**AUTHORIZED ITEMS:**        **(ADMINISTRATIVE DETENTION)**

(1) Bible or Koran, or other Authorized Scripture, paper back (1 only)
(2) 1 paperback books (book cart only)
(3) Eye glasses (1 pair)
(4) Legal materials (current case only, minimal amount that will not create a fire or security hazard) - Authorized by Unit Team and SHU Lieutenant.
(5) Personal hygiene items (purchased through commissary while in SHU)
(6) Mail (received in SHU only)-10 pieces
(7) Stamps (1 book) and stationary
(8) Medicine (provided by health services, not expired and labeled)
(9) Over the counter medicine (purchased in SHU only)
(10) Address book (1 only)

**AUTHORIZED ITEMS:**        **(DISCIPLINARY SEGREGATION)**
(1) Bible or Koran, or other Authorized Scripture, paperback only (1 only)
(2) Legal materials (current case only, minimal amount that will not create a fire or security hazard)-Authorized by Unit Team and SHU Lieutenant.
(3) Stamps (1 book)
(4) Mail (received in SHU only)-10 pieces
(5) Eyeglasses (1 pair)
(6) 1 paperback book (book cart only)
(7) Personal hygiene items (only purchased through commissary while in SHU)
(8) Medication (provided by health services, not expired and labeled)
(9) Over the counter medicine (purchased in SHU only)
(10) Address book (1 only)

**COUNT PROCEDURES:**
Counts are conducted in the same manner as they are in general population. Stand-Up counts are conducted at 4:00 and 10:00 p.m. daily and 10:00 a.m. on weekends and holidays. Failure to stand for count may result in disciplinary action.

**ORDERLIES:**
SHU Orderlies are approved by the Captain. Orderlies are prohibited from being on the ranges without direct staff supervision. Any inmate interested in performing duties as an orderly must





Timothy Scott Wise #03540-063

Federal Bureau of Prisons
Federal Correctional Institution - McDowell
P.O. Box 1009
Welch, WV 24801

CERTIFIED MAIL

7019 0140 0000 9300 8208

Clerk of The Court, U.S. District Court
Elizabeth Kee Federal Building
Room 2303, 601 Federal Street.
Bluefield, West Virginia 24701

FEDERAL CORRECTIONAL INSTITUTION
McDOWELL
PO BOX 1029
WELCH, WV 24801        1/29/20

DATE _____

THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAILING PROCEDURES FOR FORWARDING TO
YOU. THE LETTER HAS BEEN NEITHER OPENED NOR
INSPECTED. IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS JURIS-
DICTION, YOU MAY WISH TO RETURN THE MATERIAL
FOR FURTHER INFORMATION OR CLARIFICATION. IF
THE WRITER ENCLOSES CORRESPONDENCE FOR
FORWARDING TO ANOTHER ADDRESSEE, PLEASE
RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.