*Attachment A - <u>Bivens</u> Complaint form*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

Timothy S. Wise                                    03540-063

_____                          _____

_____                          _____

_____                          _____

*(Enter above the full name of the plaintiff*        *(Inmate Reg. # of each Plaintiff)*
*or plaintiffs in this action)*

v.                                          CIVIL ACTION NO. 1:20-cv-00056

C. Maruka, R. Malone, D. Pilant, F. Saunders, W. Kendrick,
A. Shrader, S. Wyatt, G. Walters, C. Carothers, K. Thompson,
S. Cook, D. Rich, V. Phillips, R. Alexander, D. Munn, J. Green
J. Doe #1, J. Doe #2, J. Doe #3, C. Horton, K. Marsh

*(Enter above the full name of the defendant*
*or defendants in this action)*

Defendant(s).

## **COMPLAINT**

**I.    Parties**

    A.    Name of Plaintiff:    Timothy S. Wise

          Inmate No.:    03540-063

          Address:    Federal Correctional Institution McDowell,
                    P.O. BOX 1009, Welch, WV. 24801

B.   Additional Plaintiff(s) (provide the same information for each plaintiff as listed in Item A above).

Name of Plaintiff: _____

Inmate No.: _____

Address: _____

_____

Name of Plaintiff: _____

Inmate No.: _____

Address: _____

_____

C.   Name of Defendant: *C. Maruka*

Position: *WARDEN*

Place of Employment: *FCI M<sup>c</sup>DOWELL, P.O. BOX 1029, Welch, W.V. 24801*

D.   Additional Defendant(s) (provide the same information for each defendant as listed in Item C above):

Name of Defendant: *R. Malone*

Position: *Counselor, Unit B-4*

Place of Employment: *FCI M<sup>c</sup>DOWELL, P.O. BOX 1029 Welch, W.V. 24801*

Name of Defendant: *D. pilant*

Position: *UNIT MANAGER, B-unit*

Place of Employment: *FCI M<sup>c</sup>DOWELL, P.O. BOX 1029 Welch, W.V., 24801*

Name of Defendant: F. Saunders

Position: Special Housing Unit Lieutennant

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: W. Kendrick

Position: Corrections Officer

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: A. Shrader

Position: Inmate Trust Services Supervisor

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: S. Wyatt

Position: Nurse

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: G. Walters

Position: Nurse

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: C. Carothers

Position: Physicians Assistant

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: K. Thompson

Position: Health Services Administrator

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: S. Cook

Position: Corrections Officer

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: D. Rich

Position: Associate Warden

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: V. Phillips

Position: Counselor

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: R. Alexander

Position: Nurse

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

Name of Defendant: D. Munn

Position: Captain

Place of Employment: FCI McDowell, P.O. Box 1029
Welch, WV., 24801

4

Name of Defendant: J. Green

Position: Mail Room Supervisor

Place of Employment: FCI McDowell, P.O. Box 1029, Welch, WV, 24801

Name of Defendant: C. Horton

Position: SIS Lieutenant

Place of Employment: FCI McDowell, P.O. Box 1029, Welch, WV, 24801

Name of Defendant: K. Marsh

Position: Human Resources

Place of Employment: FCI McDowell, P.O. Box 1029, Welch, WV, 24801

Name of Defendant: John Doe #1

Position: Corrections officer

Place of Employment: FCI McDowell, P.O. Box 1029, Welch, WV, 24801

Name of Defendant: John Doe #2

Position: Corrections officer

Place of Employment: FCI McDowell, P.O. Box 1029, Welch, WV, 24801

Name of Defendant: John Doe #3

Position: Supervisor, Dental

Place of Employment: FCI McDowell, P.O. Box 1029, Welch, WV, 24801

**II.     Place of Present Confinement**

Name of Prison/Institution: *FCI MᶜDowell*

A.     Is this where the events concerning your complaint took place?

Yes __✓__          No _____

If you answered "no," where did the events occur? _____

_____

B.     Is there a prisoner grievance procedure in this institution?

Yes __✓__          No _____

C.     Did you present the facts relating to your complaint in the prisoner grievance procedure?     Yes _____          No __✓__

If you answered "no," explain why not: *For 6 months I have asked everyone I see, and have been denied grievance forms. It is unwritten policy here.*

If you answered "yes," what was the result at level one, level two and level three (attach grievances and responses): _____

_____

**III.     Previous Lawsuits**

A.     Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise related to your imprisonments?

Yes __✓__          No _____

B.     If your answer to A is "yes," describe the lawsuit in the space below. If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.

1.     Parties to the previous lawsuit:

Plaintiff(s): *Timothy Scott Wise*

Defendant(s): *Harley Lappin et al.*

**6**

2. Court (if federal court, name the district; if state court, name the county);

    _EASTERN DISTRICT OF TEXAS, BEAUMONT_

3. Docket Number: _11-CV-148_

4. Name of judge to whom case was assigned: _UNKOWN TO Plaintiff_

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

    _Still pending_

6. Approximate date of filing lawsuit: _2009_

7. Approximate date of disposition: _Still pending._

## IV. Statement of Claim

State here, as briefly as possible, the <u>facts</u> of your case. Describe what each defendant did to violate your constitutional rights. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets of paper if necessary.)

_See Attachment pages for Statement of Claim._

# STATEMENT OF CLAIM

(1)   C. Maruka, Warden, FCI McDowell, Violated plaintiff's 5th, 8th and 14th amendment Constitutional rights while acting under color of law in his official capacity. By implementing, encouraging to be implented or allowing implementation of policies and procedures within FCI McDowell which Violated Stated Constitutional rights of Plaintiff Timothy S. Wise.

   Warden C. Maruka endorsed and encouraged the use of Special Housing Unit (SHU) as "Punnishment," for all inmates, even prior to any finding of guilt or sanctions by the Disciplinary Hearing officer (DHO) meaning inmates on Administrative Segregation (often, as in plaintiff's Case, inmates are placed in SHU, on Ad. Seg. due to no fault of their own and no wrong doing) are Suffering harsh deprevations intended as "punnishment," the Same as inmates on Disciplinary Segregation (D.S.) already found guilty of rule infractions. This is evidenced by FCI McDowell SHU Rules, which the Warden is well aware of, that show the exact Same "Authorized," items for Ad. Seg. as D.S.. This policy of treating Ad seg and D.S. the Same allows any Staff member to arbitrarily discriminate against and punnish an inmate without Due process, in Violation of the Constitution. These Punnishments include denying SHU inmates books, newspapers or Magazines either from the publisher (per National BOP policy,) or from institution book Cart.

Also denial of radios, creating a complete information black out, from the methodical punnishment policy, effecting the entire SHU in violation of the Code of Federal Regulations, National B.O.P. policies, and constituting cruel and unusual punnishment.

Warden C. Maruka encourages and endorses illegal mail procedures. The mail procedures enacted at FCI McDowell, violate the Code of Federal Regulations, National Bureau of prisons policies and the Law. Arbitrarily enacting these new rules, such as limiting length of correspondence to five pages, front only; rejecting letters based on the color of paper used, when the letters are to be photo copied anyway; the rejection and destruction of private citizens mail, photo's etc. without notice or appeal process. Thousands of parcels have already been destroyed in this manner, because Warden C. Maruka and the staff under his authority have decided to create their own rules without regard to the Law in this country.

When plaintiff stopped C. Maruka, (who was wearing a wind breaker covering his name tag, and as plaintiff had never previously seen him,) by asking as he walked by his door on E-Range of FCI McDowell SHU, "Are you the warden?" C. Maruka shook his head back and forth in the negative. Plaintiff then asked "You are not the warden?" C. Maruka replied assertively "No!" and kept walking down the range and out of sight. Since this

this time, between approximately mid September & mid October, Warden C. Maruka has not stopped at plaintiff's door when he's tried to address these issues to him. Warden C. Maruka's deliberate indifference has caused plaintiff to suffer wanton pain, denial of serious medical needs, discrimination, harrassment, denial of Due process, and cruel and unusual punnishment. Warden C. Maruka has allowed staff at FCI McDowell to retaliate against plaintiff, and they continue to do so, punnishing plaintiff for filing in this court. All "legal mail" from the court and lawyer of record is opened and photocopied, violating plaintiff's rights; to give the defendants an unfair advantage and early warning. Denying plaintiff Law librarry, which he has NEVER been allowed access to in approximately eight months, the entire time he's been at FCI McDowell. Plaintiff has been placed in SHU several times due to seizures, a documented pre existing medical condition and disability. The most recent time, was December 9th 2019, when plaintiff was sent to the outside hospital and prescribed anti seizure meds which he'd been trying to get back on since July 23rd, 2019. Despite several trips to outside hospital and three seperate prescriptions, the last of which on January 2nd 2020, after injuring himself, plaintiff did not recieve any anti seizure medication until February 5th 2020. Plaintiff's investigation to determine whether to transfer him, was

10

Concluded according to unit Manager D. Pilant and the
SIS head, Mrs. Stark, on January 22nd 2020,
determining to transfer plaintiff. It is now
March 16th, and the paperwork for plaintiff's
transfer is being deliberately held up, to prolong
plaintiff's suffering in the SHU, without any
disciplinary infraction or reason other than to
punnish in retaliation for filing in this court.
Plaintiff is still being denied medical treatment,
for a severe injury to his back, right shoulder and
neck caused during the seizures in January which
caused him to be taken to the outside hospital.
Plaintiff's incoming and outgoing mail, as well as phone
calls are scrutinized by many of the defendants, not
for security reasons, but to stay informed of plaintiff's
case and plans to prosecute it. Several defendant's have
made comments about this, and Warden C. Maruka Knows
from his participation in the weekly SHU meeting
where these issues are discussed, as well as E-Mails.
Warden C. Moruka has been informed of these
issues and has endorsed and encouraged these
violations of plaintiff's constitutional rights. On Approximately
March 20th, 2020, Warden C. Maruka recieved two ORDERS from
this Court, notifying him of illegal mail practices (i.g. opening, reading
and photo copying "Legal Mail," denial of grievance forms, and
other constitutional violations. Today, April 2nd, 2020, no effort
has been made to remedy or stop any of those violations.

11

(2)    R. Malone, Counselor Unit B4, FCI McDowell, Violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under color of law in his official Capacity. From July 23rd 2019, though September 2019, R. Malone Knowingly assigned plaintiff to a top bunk in defiance and disregard for medical bottom bunk restriction. Months of this deliberate discrimination resulted in severe stress and further harm.

    R. Malone refused to process properly submitted visitation forms. J. Fenn who had already been approved to visit in several other BOP institutions, submitted forms via united States postal Service. R. Malone claimed he had "never recieved the forms." J. Fenn then sent Several Sets Certified mail with return reciept. R. Malone refused to process the forms without Cause or explanation. R. Malone arbitrarily denied plaintiff visits for opprox 8 months, without Sanction by a DHO or memo from the warden.

    From early August 2019, when plaintiff began asking R. Malone for grievance forms, Malone Continually made excuses such as "not having any grievance forms at the time," or when he seen plaintiff in SHU he'd say "I did not bring any with me." The last time plaintiff seen R. Malone approximately ~~October~~ 2019, he had not and still has not provided any grievance forms, denying plaintiff remedy and Due process, Causing plaintiff to suffer prolonged denial of serious medical needs and foregoing violations.

③ D. Pilant, B-Unit Manager, FCI McDowell; Violated plaintiff's 5TH, 8TH and 14TH amendment Constitutional rights; while acting under color of law in his official capacity. D. Pilant listened to plaintiff's complaints repeatedly, yet failed to follow up or investigate while also denying grievance forms. Specifically plaintiff explained his "History of seizure," and the fact that all efforts to get the needed anti-seizure medication had not only failed but plaintiff could not even get medical to see him or respond to his requests. Plaintiff explained problems with R. Malone not processing visiting forms, ignoring medical restrictions and denying grievance forms. This went on from September 2019 through November 2019. (plaintiff is and has been denied access to his property and legal materials, personal records etc., so dates or exact dates are unavailable at this time.) D. Pilant, unit Manager and Department Head of Unit Team's in B-unit, told plaintiff "You have to get grievance forms from Counselor Malone." Even when plaintiff had not seen R. Malone for weeks, than months. Mr. Pilant continued to say "The forms have to come from Malone, I'll let him know to bring them to you." Plaintiff was never provided grievance forms. Plaintiff spoke to D. Pilant every time he seen him in SHU. Several times between September - November 2019, and 12-26-19, 12-30-19, 1-14-20, 1-23-20, 1-28-20 during none of these times did D. Pilant mention R. Malone being on "extended leave." As Department Head D. Pilant did not assign someone else, another Counselor, to take over R. Malone's duties, to help me or provide grievance forms. On January 30TH, 2020, MRS. Oxford, the B-unit 4 Case Manager come to my door on F-Range cell 243, to have my cell mate Eddie T. Ware sign his unit Team papers.

13

③ (cont.) MRS. Oxford apologized for not seeing him sooner, but said she had been on "Extended Medical Leave." I asked her "why have we not seen R. Malone?" She replied "He's been on "Extended Leave," and may be gone a while." I explained I'd not seen Malone in 4 months. She asked "what do you need?" I replied "I have needed grievance forms among a lot of other things, all of which has been unavailable." She said she would "be back to morrow and I'll bring you a grievance form." She also said "Someone was supposed to be assigned to take over Counselor Malone's duties." Plaintiff as of this writing 4-02-20, has not recieved grievance forms. On 2-11-20, plaintiff spoke to D. Pilant, he told Plaintiff "We are waiting for your investigation to close so we can put in your transfer." Plaintiff angrily inquired "where is counselor R. Malone? I've not seen him in 4 months. and still every time I've asked you for grievances or anything else, you told me "that's not your job, ask Malone."" D. Pilant stated "Malone has been on "extended leave," and is doing "light duty," in the mail room, he cannot come inside the rest of the prison." I railed at D. Pilant "I've not had a Counselor in months and have not been able to get anything I need." D. Pilant asked "What do you need?" I said "I need grievance forms, I've been needing them all this time and you kept putting it off on Malone." D. Pilant said "I'll have Officer Fields get you forms," and left. Plaintiff still has not recieved grievances. D. Pilant denied plaintiff Due process, failed to investigate discrimination due to disability, discrimination based on refusal to process visiting forms.

③ (cont.) D. Pilant knowing of plaintiff's "history of seizure," and medical issues, discriminated against plaintiff's disability. On 12-9-19, plaintiff was taken to an outside hospital due to a severe seizure. After the Doctor, R. Southerland prescribed Kepra anti seizure medication, plaintiff was returned to FCI McDowell and placed in the SHU. After more than three weeks in SHU, Approx. on 12-31-20, without medication or evaluation by McDowell medical staff, plaintiff was released to General population, where unit Manager D. Pilant placed him back in Unit B-4, with inmates already informed D. Pilant in October that certain inmates did not want plaintiff in Unit B-4 causing D. Pilant to twice reassign plaintiff to unit C-1. Not only did D. Pilant place plaintiff where he (Pilant) knew there'd be threats and potential danger, but also placed him on Top floor, Top bunk. D. Pilant then used the situation to allow an inmate (Known to plaintiff only as "Pipe Bomb,") to make threats against plaintiff "That if Pilant did not move plaintiff, it was going to get physical." D. Pilant used this to justify placing plaintiff back in SHU. Pilant did this without any punishment for the inmate making the threat, again discriminating against plaintiff. D. Pilant has been callously indifferent to plaintiff's complaints of constitutional violations, repeatedly denied plaintiff grievances or access to remedy and participated in placing plaintiff in SHU where he has been excessively punished the entire time though he committed no infraction. D. Pilant has participated in retaliating against plaintiff for filing in this court, deliberately hindering the processing of his transfer and through today 4-02-20, has denied plaintiff any grievance forms. D. Pilant caused plaintiff to continue suffering depravations through the Virus.

15

(4.) F. Saunders, Lieutenant, Special Housing Unit, FCI McDowell, violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under color of law in his official capacity. F. Saunders knowingly implemented and or enforced illegal policies and procedures in SHU, designed to torment inmates placed in SHU, which rise to Constitutional violations. Denying books, magazines and newspapers sent from publishers, and also not providing a book cart. Prisoners are left with nothing to read. From September 2019 - January 13th, 2020, no radios were allowed, effectively cutting inmates and plaintiff off from the world, in violation of the law, Code of Federal regulations and BOP policy. These illegal deprevations are enforced on all SHU inmates, those on Administrative segregation and disciplinary Segregation alike. In the SHU Rules, it shows that Administrative Segregation and disciplinary Segregation are allowed the same items and subject to the same blanket punnishments.

On 1-2-2020, F. Saunders knowingly subjected plaintiff to 3 days in a dry cell, then 2 days in a hard cell, with a serious injury to his back, and severe bruising on both hips and left leg, without having him evaluated or treated by medical staff. F. Saunders subjected plaintiff to these five days of torment as punnishment. F. Saunders discriminated against plaintiff due to his disability of seizures. Plaintiff's shoulder was also untreated.

④ (cont.) F. Saunders failed to have plaintiff seen or evaluated by FCI McDowell medical staff, despite obvious injuries and plaintiff's complaints while in physical durress. The 5 days on concrete slabs with an extremely thin Matt. While plaintiff was suffering injury to both hips and back + shoulder, specifically and deliberately to punnish and torment, rising to the level of violation of plaintiff's 8th amendment Constitutional right to be free from Cruel + unusual punnishment, while discriminating against plaintiff due to disability. The hardships and depravations in the Special Housing Unit, under the supervision of F. Saunders are shocking and illegal. These practices are routinely swept under the rug and kept quiet by a policy of denying grievance forms. If inmates complain or file paperwork they are put on "Nothing Coming status," meaning they are denied even more basic necessities. In retaliation for filing in this Court, plaintiff has been put on "Nothing Coming Status." The SHU LT. F. Saunders has even directed Mrs. Howell (in her words to plaintiff,) to "Not give him the phone." F. Saunders has subjected plaintiff repeatedly to extremely harsh conditions, such as three days in a "dry-cell" which is reserved for inmates suspected of introduction or possession of drugs and suicidal inmates. Plaintiff in no way fit that criteria. Then another two days in a "hard cell," reserved for disruptive inmates. Plaintiff was injured, and has never been disruptive at FCI McDowell. F. Saunders has insisted on a feces covered blocker in front of plaintiff's door.

(5.) W. Kendrick, Correction Officer FCI McDowell, Violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under color of law in his Official and Individual Capacity. On Approx. 1-2-2020, while escorting plaintiff to the outside, civilian hospital due to Severe Seizure, during which plaintiff injured himself, including a Serious and painfull injury to his back. Upon intake and while being Screened by Doctor R. Southerland, W. Kendrick, going outside the "Scope," of his duties began yelling and insistently interjecting while plaintiff, due to his back injury was whispering how he was hurt and where, but was drown out by W. Kendricks yelling "He's lying, he didn't have a Seizure, he's on drugs." The Doctor could not hear plaintiff over W. Kendrick's yelling and asked plaintiff to "repeat that?" When plaintiff tried to repeat that "Something felt broken in his back," that something, "a bone is moving around." W. Kendrick again was yelling insistently that "He's on drugs, you need to drug test him." etc.. This behavior, interfering with plaintiff's medical evaluation and keeping him from recieving treatment, went far outside the Scope of W. Kendrick's duty as a B.O.P. escort, and proximate cause being plaintiff Suffering Wanton pain. W. Kendrick, as the SHU #1 on day shift continued to tell anyone and everyone that plaintiff was "lying and there's nothing wrong with his back." On 1-6-2020, W. Kendrick is not a Doctor, and has no medical training. He has continually went outside the Scope of his duties as a correction Officer and interfered with plaintiff's medical treatment, in violation of the law.  18

⑥  A. Shrader, inmate Trust Fund Supervisor, FCI McDowell, violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under color of law in his official capacity. As Department Head over commissary, A. Shrader has repeatedly and arbitrarily denied plaintiff the ability or opportunity to purchase over the counter pain medications and ointments, as well as stamps for postage. These arbitrary denials have caused plaintiff to suffer wanton pain and suffering, as well as denial of due process or access to the Courts and family. Commissary is supposed to be delivered every 2 weeks, but often is not delivered for 3, or 4 weeks at a time or longer. Plaintiff has not been allowed to inventory his personal property, so has been denied legal materials and records. Examples of these routine and arbitrary denials are 12-18-19, 1-8-2020 (3 weeks.) 1-22-20 - 2-10-2020 (2 days less than 3 weeks.) and these are ample examples as plaintiff cannot buy enough Ibuprofen, ointments or stamps to last this long, causing routine deprevations, which taken altogether result in cruel and unusual punnishment. There are several longer periods of deprevation. During one of these resulting in Approx. 40 days, plaintiff voiced his complaints to A. Shrader. Mr. Shrader responded "If you don't like it, don't come to SHU." A. Shrader has implemented these policies and procedures in his Department, routinely violating plaintiff's rights, as part of the policy to punnish SHU inmates in every possible way, such as routinely denying needed pain medications and stamps to access the Courts.

19

⑦  R. Alexander, R.N. Medical Department FCI McDowell, violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under color of law in his official Capacity. R. Alexander performed plaintiff's "intake Screening," for the medical Department upon arrival to FCI McDowell on July 23rd, 2019. During the screening, plaintiff explained his "Seizure disorder," and that he'd been on Tegretol and Oxcarbazepine at different times, until his seizures had went into remission and he finally requested to get off the medication. He informed R. Alexander that for more than 18 months the Seizures had begun to recur and he requested to be put back on the medication. R. Alexander stated he was looking at plaintiff's "History of Seizure," in the computer file. He issued a bottom bunk medical restriction, one copy for the plaintiff and a copy for the B-4 unit office, for the on-duty unit corrections officer. R. Alexander then told plaintiff to "watch the call-out," for an appointment to see the P.A. C. Carothers, who he would inform of the Situation. After a couple weeks plaintiff had not been placed on the call-out he asked R. Alexander the first time he seen him outside the chow hall. Alexander said "Be patient, things are slow in McDowell.

        December 9th, 2019, Plaintiff was taken to an outside hospital due to a Seizure. Doctor R. Southerland prescribed KEPPRA anti seizure medication after evaluation and CT scan. Upon return to the prison plaintiff was placed in SHU without an incident report, without being seen by any McDowell medical staff and without any medication made available for seizures or terrible headaches.

20

(7)(cont.) On December 10th, 11th, 16th, 18th and 19th, plaintiff continued to inquire of R. Alexander why he was not recieving prescribed medication for seizure disorder nor anything for pain? Plaintiff repeatedly stated his fear of seizing and hurting himself. Plaintiff gave R. Alexander numerous detailed sick-call requests also. On 12-19-29 R. Alexander said he'd looked it up and "you were right, the Doctor in Welch prescribed KEppeA on 12-9-29, and Keppra is an antiseizure medication." Plaintiff then asked "Then why have I not recieved it then?" Alexander said he was "Working on it." On 1-6-20 plaintiff verbally detailed his seizure on 1-2-20, then stripped and showed R. Alexander the basketball size bruises on both hips, and left thigh. Then plaintiff explained the excruciatingly painfull back injury. R Alexander said "It sounds like an intercostal rib dislocation, unfortunately there's not much we can do for it, but give you some wraps and Ibuproffen." That evening plaintiff was given 9 ibuproffen, then 6 more on 1-8-20. No wraps or anything further was provided, nor was any follow up, evaluation or examination performed. Plaintiff spoke to R. Alexander every time he seen him, repeatedly gave him sick call slips begging for help to manage the pain and be looked at. R. Alexander repeatedly told plaintiff that he was "working on it." etc. R. Alexander failed in his duty to have plaintiff seen for serious injuries he was only guessing at, and allowed him to suffer seizures that R. Alexander was aware of and were preventable. Causing Wanton pain and suffering and further injuries.

(8) G. Wolters, R.N. Medical Dept. FCI McDowell, Violated plaintiff's 5th, 8th and 14th amendment constitutional rights while acting under color of law in his official capacity. Approximately between 12-20-19 and 12-26-20, plaintiff explained medical issues and fear of having more seizures, while giving G. Watters sick call requests and medical release forms. These forms and records

21

⑧ (cont.) Were never processed. On 1-11-20 plaintiff again stopped Nurse G. Walters at his door and explained the injury to his back caused during the seizure on 1-2-20, and the excruciating pain, coupled with the fact he'd never been evaluated by any McDowell medical staff. G. Walters responded with "put it on a sick call slip," which plaintiff gave him, detailing his issues of serious medical needs. There was no follow-up and Nurse G. Walters did nothing for plaintiff.

⑨ C. Carothers, P.A. medical Department FCI McDowell. Violated plaintiff's 5th, 8th and 14th amendment constitutional rights, while acting under color of law, in her official capacity. C. Carothers, despite numerous sick call requests addressing plaintiff's need to get back on anti-seizure medication, the need for pain relief, and need to be seen for back injury + Shoulder damaged during a seizure on 1-2-2020, none of these needs were met. Plaintiff has never been evaluated by McDowell medical staff since August 2019. Though plaintiff was prescribed Keppra anti-seizure meds three (3) times, no meds or follow up were done. Proximate cause of this deliberate indifference being further injuries and suffering of wanton pain, resulting in cruel and unusual punishment. Plaintiff's pain and suffering could and should have been shortened, had C. Carothers gave his requests the interest they deserved or any at all.

(9.)(cont.) plaintiff was seriously hurt, his back, shoulder and neck on 1-2-2020, during a violent seizure. Plaintiff submitted more than a dozen sick call requests, begging to be seen and evaluated by C. Carothers. On 2-26-20, plaintiff seen physicians assisstant C. Corothers talking to the inmate across the tier from his cell about a sick call request submitted regarding a rash. P.A. Carothers rarely comes down the tiers in SHU, and plaintiff stopped her at his door when she finished with the rash, and stated, "Mrs. Carothers I've submitted many sick call slips since 1-6-2020 regarding painfull injuries that are not healing, but no one has spoke to me." She replied "Yes, I know Wise, I'm going to have you pulled out so I can examine you." This was all said in front of my cell mate K. Braden. Plaintiff did not see C. Carothers again until 3-28-20. She had plaintiff put in a big cell where they had to yell back and forth through a door, neither able to hear well because of the noise in the SHU. She told plaintiff she'd have him X rayed for the nagging painfull injuries he'd been suffering almost three months. Plaintiff has heard nothing further this 2rd day of April 2020.

Plaintiff's history of seizure, his requests and continual efforts to be put back on the anti seizure medication were known by C. Carothers and ignored for many months, resulting in incredible hardship and further injuries sustained during preventable seizures, including chipped and broken teeth, injured back, right shoulder and neck, left untreated still, all due to C. Carothers deliberate indifference.

23

(10)   K. Thompson, Health Services Administrator, FCI McDowell, violated plaintiff's 5th, 8th and 14th amendment constitutional rights, while acting under color of law in his official capacity. As Department Head of the Medical Department, K. Thompson failed to follow up on written and verbal requests made by plaintiff regarding his need to be placed back on anti-seizure medication, failure of McDowell staff to follow medical restrictions, failure to provide oversight with orders from outside Doctors such as 3 seperate prescriptions by Doctor R. Southerland for Keppra anti seizure medication as well as an antibiotic for an abcessed tooth, failure to follow up on plaintiff's many sick call requests, verbal requests made to medical staff including K. Thompson. Failure to process medical file releases for attorney of record. All of these failures resulted in further injuries, pain, suffering and denial of serious medical needs amounting to cruel & unusual punnishment.

(11)   S. Cook, Correction Officer, FCI McDowell, violated plaintiff's 5th, 8th and 14th amendment constitutional rights, while acting under color of law in his official capacity. When S. Cook, responding to plaintiff's medical durress alarm in cell 229, B-unit 4, he (Cook,) was aware or should have been aware of plaintiff's disability and history of seizure. He was also told by another inmate (plaintiff's previous celly and neighbor,) that Plaintiff was "Having a seizure."

24

(11.) (cont.) S. Cook not only ignored and disregarded this information, he abused and caused other officers responding to abuse plaintiff, using innapropriate and excessive force on plaintiff during and after his seizure. Plaintiff at no time was resisting or capable of resistance. S. Cook, tried to cover his actions by pronouncing "He's on drugs." Cuffing plaintiff behind his back without double locking them, S. Cook and other unknown officers carried him outside, down stairs, flipping plaintiff in air and slamming him down, ratcheting the cuffs down on skin and bone crushingly, with hands and metal cuffs digging into plaintiff's lower back painfully, then strapping and padlocking plaintiff into this excruciatingly painfull position for Approx. 2 hours then placing plaintiff in SHU for weeks. Bruised all over, wrists cut where the cuffs clamped down, also on his lower back. This treatment was never necessary or appropriate, but was a result of S. Cook ignoring the medical sheet in his office showing "history of seizure," as well as another inmate informing him that plaintiff was in deed "having a seizure." S. Cook's misshandling of a medical issue resulted in Constitutional Violations 5th, 8th and 14th amendment rights. These Violations continued and were perpetrated on plaintiff further because of S. Cook's vocal proclamations that plaintiff was on drugs, to cover his own wrong doing. Cook also let it be known to inmates that he did not want plaintiff back in unit B-4. Plaintiff was never seen by McDowell medical staff

25

12.) John Doe #1, Corrections officer, FCI McDowell, violated plaintiff's 8th and 14th amendment Constitutional rights, while acting under Color of law in his Official Capacity when approximately October, 2019 he entered plaintiff's cell #110, C-1 unit after count while all the other cell doors were yet locked. Waking plaintiff from sleep on his bunk yelling at him for no apparent cause. John Doe #1 called plaintiff toward him with a finger, as plaintiff approached, John Doe #1 said "let me guess, you're having another seizure." He then pulled plaintiff by the arm to the Salliport where John Doe #2 and another C.O. were waiting to take plaintiff to SHU, for no apparent reason. John Doe #1 said "Cuff him up." When plaintiff put his arms behind him, John Doe #2 grabbed his hands and yanked his arms up and behind him until it felt like the shoulders would pop from their sockets. The pain caused plaintiff to lose control of his bladder. During this humiliating painfull experience John Doe #1 said "look he's pissing hisself." All three began to laugh. Then plaintiff was walked aggressively across the yard, being threatened by John Doe #2 the entire way, to the LT's office. Plaintiff was given a drug screen urinalysis, which was negative for drugs. Plaintiff was still placed back in SHU for approximately 30 days. This was not only excessive force, and discrimination of plaintiff's disability but also retaliation, there was no other reason for John Doe #1's comment "let me guess, you're having another seizure."

(13.) D. Rich, Associate Warden, FCI McDowell, violated plaintiff's 5th, 8th and 14th amendment constitutional rights, while acting under color of law in his official capacity. As a Department Head and member of the "Executive Staff," plaintiff raised valid constitutional violations to D. Rich, during "Walk through's." Such as denial of serious medical needs, denial of Due process issues, including denial of grievance forms. Plaintiff made these verbal protests to D. Rich many times between October 2019 through February 2020. Rather than looking into plaintiff's medical history, he commented several times "Quit smoking K-2," when the plaintiff had not and which had nothing to do with plaintiff's pre existing medical condition and disability. About the grievances, D. Rich replied "you have to get them from Counselor Malone," when Associate Warden D. Rich, knew R. Malone was on extended leave, thus making plaintiff's grievances unavailable and denying him Due process. When plaintiff brought up the use of SHU as punnishment and denial of books, newspapers, magazines and radios, D. Rich responded. "We want this Special Housing Unit to be as miserable as we can make it, if you don't like it quit getting in trouble." On arbitrary denial of Visiting without sanction, D. Rich said "That's not my Job, talk to your unit team." Plaintiff had already brought all these issues to Unit Team to no result. Being locked behind a steel door 24 hours a day 7 days a week, Plaintiff could only explain to Executive Staff he could get to stop at his door, his serious issues. AW D. Rich refused to

27

13. (Cont.) address or investigate any of plaintiff's shocking claims and his callous dismissal of all such claims resulted in continued violations, further injuries, suffering and loss. Furthermore, D. Rich is aware of staff retaliating against plaintiff for filing in this court.

It is plaintiff's belief that D. Rich was "Acting Warden," for some of the time plaintiff was in the SHU. Plaintiff repeatedly explained his issues to D. Rich, but the acting Warden let it be known he could not care less. Once S. Cook pronounced plaintiff was "on drugs," D. Rich treated plaintiff like a personal enemy who brought all his problems on himself. Even though plaintiff patiently explained that he could "not control seizures without the needed anti seizure medication," D. Rich just replied "If you'd quit smoking K-2 you'd be O.K." No matter what plaintiff said he could not get D. Rich to just inquire into his medical history. When told that plaintiff was being denied grievance forms, D. Rich said "You have to get with your unit team," and would not listen past his statement but would just keep repeating it. D. Rich has made the use of K-2 his personal "mission." He has enacted or supported/encouraged and participated in policies which violate constitutional protections to show he is "Tough on K-2." Due to improper assumptions of "drug use," made by corrections staff with no medical training and the failure of medical staff to examine plaintiff, he became the target of D. Rich's misguided wrath.

28

(14.) V. phillips, Counselor Unit C-1, FCI McDowell.
Violated plaintiff's 5th, 8th and 14th amendment Constitutional
rights, while acting under color of law. In October 2019,
plaintiff was moved to unit C-1 to accomodate bottom unit,
bottom floor, bottom bunk, by mrs. Oxford in consideration
of plaintiff's seizures. V. phillips refused to give plaintiff
grievance forms saying "you must get the forms from
Malone, as you are still on his case load." When plaintiff
told V. phillips he had not been able to see R. Malone
in weeks, then months, V. phillips said the same thing,
when he knew R. Malone was on "Extended Leave."
V. phillips took part in retaliating against plaintiff
in discrimination of his disability, by placing him
back in SHU on Approximately December 31st 2019.
This was unjustified. As V. phillips allowed the practice
of inmates packing their cell mates property rather than
staff, often resulting in theft of property. Several
inmates has stolen plaintiff's property when he was
placed in SHU in October and did not want plaintiff
back in the unit for fear of exposure. V. phillips
Knew of this, yet still allowed them to persuade him
to place plaintiff back in SHU though he'd done nothing
wrong. This resulted in further illegal deprevations,
injury, pain, suffering and loss.

(15)   S. Wyatt, R.N. Medical Dept. FCI McDowell, Violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under Color of law in his official Capacity. S. Wyatt failed to process written and Verbal requests for serious medical needs, regarding the need for anti seizure medication, follow up requests by officer W. Jackson for plaintiff to be seen for painfull serious injuries sustained during preventable seizure, on 1-2-20. S. Wyatt told W. Jackson he would come to check on plaintiff, after he was made aware of the issue. He failed to do so, leaving plaintiff in a torturously painfull dry cell for three days, then 2 more in a hard cell without being looked at or evaluated or given any Medication. Further S. Wyatt failed to have someone qualified above him to evaluate or try to help plaintiff at all.

   Plaintiff was treated worse than an animal and suffered horribly because of S. Wyatt, R. Alexander, and G. Walters, C. Carothers and K. Thompsons deliberate indifference to these events. Every one of them were aware of plaintiff's medical needs, first for the anti seizure drugs, then for treatment of injuries sustained during preventable seizures. These McDowell FCI Medical Staff ignored the Qualified Expert, Doctor R. Southerland who prescribed medication three (3) times, then swept plaintiff under the rug, by keeping him locked in a cell with painfull untreated injuries, Violating his right to be free of cruel & unusual punnishment.

(16.) D. Munn, Captain, FCI McDowell, Violated plaintiff's 5th, 8th and 14th amendment Constitutional rights, while acting under color of law in his official capacity. Captain D. Munn has implemented and enforced illegal practices and procedures in FCI McDowell. These include denying plaintiff books, newspapers, magazines and radios in SHU. This depravation includes books, newspapers or magazines either from the publishers (as is allowed in SHU per Code of Federal regulations and B.o.p. policy statements.) or from an institution book cart.

As Captain, and as a member of Executive Staff, as well as Department Head over Custody, D. Munn has an obligation and duty to implement lawfull policies and procedures, as well as to provide "oversight," and ensure staff are following the law and policies established by CFR and BOP Policy Statements. D. Munns failure and disregard of these duties has resulted in Constitutional Violations to plaintiff and his suffering Cruel and Unusual punnishment.

D. Munn implemented and signed off on the SHU RULES, dispensing "punnishment," upon intake to the SHU for Administrative Segregation inmates the same as disciplinary Segregation. Meaning inmates placed in SHU for non-disciplinarry reasons are automatically being punnished the same as inmates found guilty of serious rule infractions. D. Munn stated to plaintiff that all his policies were to "deter rule breaking." When asked "what about if they are illegal?" he said "Then don't come to SHU."

31

(17)   J. Green, mail room Supervisor, FCI McDowell, violated plaintiff's Constitutional rights while acting under color of law in his official capacity, when illegally opening plaintiff's clearly marked "Legal mail, open only in the presence of inmate," parcels from the Federal Courts as well as attorney of record, when all senders were clearly identified. Not only did J. Green open or direct staff under him to open said mail, not in plaintiff's presence, but also copied on a photocopier or directed staff under him to photocopy plaintiff's legal mail and disseminate information from those documents to defendants.

   Plaintiff sent written notifications to J. Green regarding the opening and photocopying of his legal mail. Sent messages via K. Thompson acting as IDO on 1-25-20, Officer Kelly on 1-28-20. Spoke to J. Green face to face on 2-11-20. Plaintiff said "There is no procedure for sending legal mail in this institution and I am being hindered from sending out legal mail." He said "Just give it to your Counselor." Plaintiff replied "My counselor R. Malone has been on "Extended Leave" for months." J. Green said "I'm aware that Malone is on leave." Of course R. Malone was working "light duty," in the mail room at the time, and J. Green knew he was opening my legal mail. When plaintiff raised the issue of the "ILLEGAL" opening of legal mail, J. Green tried to make the excuse that "policy states there must be a name." Plaintiff stated

32

(17)(Cont.) "Policy Says" staff will open incoming inmate special legal mail in the inmates presence." Furthermore my legal mail has been properly marked and identifiable. J. Green replied he would "look into it." Plaintiff spoke to J. Green multiple times, after having his legal mail from the Court opened approximately a dozen times. J. Green maintained that it was "plaintiff's fault because there has to be a name on the envelope." The last legal mail opened and photo copied was recieved on 3-20-20, two orders from the Court, one ordering C. Moruka to respond to the proven allegation of legal mail being opened and photocopied not in inmates presence.

   Plaintiff not being trained in the law, acting pro se, must admit ignorrance of WHICH Constitutional right is breached when clearly marked legal mail is tampered with, read and photocopied by those named in a civil action as defendants. Plaintiff is certain this is covered by the Constitution, but unable to get time in the law librory, does not know which amendment to cite, so asks the Court to construe this under the appropriate section. of the Constitution.
   Furthermore, as Supervisor of the mail room, J. Green has participated in retaliation against plaintiff, for exorcising his Constitutional right to file in this Court. Opening legal mail, hindering incoming and outgoing mail, all in Violation of Plaintiffs rights.

33

(18) John Doe #3, Dental Supervisor, FCI McDowell, has violated plaintiffs 5th, 8th and 14th amendment constitutional rights, while acting under color of law in his/her official capacity. Plaintiff has never been screened or seen by dental in over eight months, despite multiple requests sent via electronic Email and written requests addressing chipped and broken teeth, painfull and sensitive to temperatures, as well as an abcess, which Doctor Southerland in Welch, WV hospital prescribed an antibiotic which plaintiff never recieved.

The Dental Supervisor was aware or should have been aware of the fact I was never screened as well as my many requests to be seen for damaged painfull teeth.

The Dental Supervisor's deliberate indifference has caused plaintiff wanton pain and suffering and further damage to his teeth, resulting in cruel and unusual punnishment.

(19)  K. Marsh, Human Resources officer, while acting institution Duty officer on two separate occasions violated plaintiff's 5th, 8th and 14th amendment constitutional rights, while acting under color of law in her official capacity.

Approximately mid December 2019, plaintiff stopped K. Marsh and asked if she was the institution Duty officer? K. Marsh replied "yes." Plaintiff began to address his attempts to get grievance forms for months and his inability to get them. K. Marsh said "Talk to your counselor, I'm HR I don't deal with that stuff." Plaintiff said "Lady, I've not seen my counselor in months and you are the institution Duty officer. I have tried my "chain of command," and got no where, I want you to document my issues and kick them up the "chain." K. Marsh said "Just tell your counselor." Plaintiff now flabbergasted said "Maam, did you not hear me tell you I've not seen my counselor in months?" She replied "I'm sure he will be around, I'm sure of it." and she left without writing anything down.

On 1-30-20 plaintiff spoke to K. Marsh the institution Duty officer again. He told her he had still not seen his counselor, nor had he been able to get grievance forms. K. Marsh finally, reluctantly took down plaintiff's name and #. Later that night unit B4 Case Manager came to my cell for the first time in SHU. She stated she had been on medical maternity leave, and came

(19)(Cont.) to get my cellmate Eddie T. Ware to sign for his August Unit Team papers. When she finished that she said she would be back to do plaintiff's Team papers the following week. Plaintiff asked her to take his legal mail, outgoing, and if she could bring back grievance forms? She took his legal mail and said "Counselor Malone is out on "Extended Leave" and may be gone a lot longer. I'll bring you the grievance forms next week."

On Friday January 31st 2020, K. Marsh the acting Institution Duty Officer came to plaintiff's door and woke him up in the morning yelling at him that "You lied to me. You don't do that." Plaintiff asked "What are you talking about?" K. Marsh said "I made inquiries about the grievances and legal mail, and you lied, it was already in the works." Plaintiff stated "Ma'am, Mrs. Oxford came around 8pm in the evening and as I had never seen or spoke to her in SHU before I could not have known she was coming. It does not change the fact that I need you to document and follow up on my complaints and requests as the institution Duty Officer." She said "You're a liar don't ask me for anything else."

This blatant disregard of her duty and callous indifference to the issues plaintiff raised to her, rise to the level of constitutional violations.

36

(20)    C. Horton, SIS Lieutennant violated plaintiff's constitutional rights while acting under color of law in his official capacity. The first time plaintiff had a seizure at FCI McDowell and was placed in the SHU, C. Horton pulled plaintiff out of his cell to interview him. Plaintiff stated that he was not on drugs but had a legitimate seizure. C. Horton was disbelieving so plaintiff told him, if he checked with medical he would find the truth of plaintiff's condition. C. Horton was more interested in plaintiff becoming an informant. Basically stating that he would check the medical record and if plaintiff was telling the truth, he would have him kicked out of SHU, but he expected plaintiff to provide information. C. Horton did not have plaintiff kicked out of SHU. Instead, plaintiff went through DHO weeks later and the incident report was expunged.

The second time plaintiff was placed in SHU, his cell mate stole approximately $900 worth of personal property. The cell mate did not want plaintiff back out of the SHU and repeatedly told SIS staff and C. Horton that "if plaintiff was released back to the compound, (general population,) he would be jumped and assaulted. As plaintiff never informed on anyone to C. Horton, he let it be known to compound staff that when they released from SHU on 11-24-19, there was going to be an assault on plaintiff.

20 (cont.) Inmates in unit B-3, B-4 and C-1 were told by unit officers "If ya'll are going to jump on that guy, be sure you do it on the yard, not in the unit." The inmate in Unit B-3 asked "who are you talking about?" The officer responded "Wise." Plaintiff was released from SHU and the cellmate who'd stole his property "checked-in" to protective custody. Several other inmates were part of the property theft and also did not want plaintiff on the compound, but C. Horton did not get his wish to have plaintiff assaulted, or have to hurt someone in self defense and justify sending him to the penitentiary.

C. Horton continually pushed the narrative that plaintiff was a drug addict, ignoring the medical records confirming seizure disorder. Several times plaintiff told C. Horton that if they (medical) would just give him the medication (anti seizure), there would be no more seizures and no more problems. For other than seizures, plaintiff caused no problems in FCI McDowell. C. Horton took a personal interest in trying to harm plaintiff, and when he could not accomplish it physically he resorted to assassinating plaintiff's character in SHU meetings and reports, causing months & months of unjustified placement in special housing unit, suffering extreme depravations.

Plaintiff asks the court to construe which constitutional amendments have been violated, including Equal protection Act and Cruel & unusual punnishment.

## V.    Relief

State briefly and exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.

$500,000.00 Compensatory damages and $500,000.00 punative. Transfer to a low security prison close to plaintiff's release address. Mandatory Staff training on how to respond to potential medical situations (i.g. seizures,) and how to recognize such. Reassert legal mail handling policies and procedures. Provide plaintiff with all needed medical and dental care. Stop all illegal practices and policies in SHU.

Signed this 2nd day of _____April_____, 20 20 .

_____

_____

Timothy Scott Wise
Signature of Plaintiff or Plaintiffs


**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on _A p r i l   2 n d ,   2 0 2 0_ .
(Date)

Timothy Scott Wise
Signature of Plaintiff

39