# Exhibit

# 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**TIMOTHY WISE,**

        **Plaintiff,**

**v.**                                          **Civil Action No. 1:20-cv-00056**

**C. MARUKA, et al.,**

        **Defendants.**

## DECLARATION OF RICHARD SMITH

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, Richard Smith, do hereby make the following declaration:

1. I am the Special Investigative Services ("SIS") Lieutenant at the Federal Correctional Institution ("FCI") McDowell, West Virginia.

2. As the SIS Lieutenant, I supervise the SIS Department, which is responsible for conducting investigations into potential safety and security issues relating to staff and inmates at FCI McDowell.

3. I understand inmate Timothy Wise ("Plaintiff"), Register Number 03540-063 has filed a law suit challenging, among other things, his placement in the Special Housing Unit ("SHU") at FCI McDowell.

4. The SHU at FCI McDowell, like SHUs throughout the Bureau of Prisons, is a housing unit where inmates are securely separated from the general inmate population.

5. SHUs are designed to "help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population."

6. When an inmate first arrives in SHU, they are placed in either administrative detention status or disciplinary segregation status.

7. Administrative detention status is simply to remove an inmate from the general population when necessary to meet the safety and security needs of the facility or the public.

1

8. This status is non-punitive and can occur for a variety of reasons such as if an inmate is pending classification or reclassification or if an inmate is in holdover status during transfer to another institution or destination.

9. This status also applies to inmates who are under investigation for disciplinary or criminal actions.

10. Inmates can be placed in administrative detention status in SHU for protective custody if they are the victim of an inmate assault or threat, if they provided or are perceived as having provided information to staff or outside law enforcement regarding other inmates or persons, if staff has reason to be concerned for an inmate's safety in general population, or if an inmate refuses to enter general population but does not provide specific details regarding any threats against them.

11. When an inmate enters SHU for protective custody, an investigation into the threat is conducted by BOP staff.

12. If, at the close of the investigation, there is a verified need for protection, the inmate will remain in SHU or be transferred to another institution where the inmate may be able to return to general population.

13. If the staff investigation fails to verify the need for protective custody, the inmate will be instructed to return to general population.

14. Review of Plaintiff's housing assignment history reveals he has been in SHU at FCI McDowell from September 23 through October 9, 2019, October 28 through November 27, 2019, December 9 through December 31, 2019, and December 31, 2019 through the date of the signing of this declaration.

15. During these times, he has been in SHU in administrative detention status.

16. As stated above, this status is non-punitive, and an inmate may be placed in this status while there is a pending investigation into disciplinary issues or security issues.

17. The decision for an inmate to remain in administrative detention pending the outcome of an investigation is made based on factors that take into account the safety and security of the inmate, staff, and the institution.

18. Plaintiff was placed in SHU in administrative detention status on September 23, 2019, October 28, 2019, and December 9, 2019 for investigation into suspected use of illicit substances.

2

19. Plaintiff was placed in Special Housing on December 31, 2019 after Unit Manager Pilant received information from other inmates that, due to Plaintiff's frequent drug use, the inmates were going to assault Plaintiff if he was not removed from general population.

20. Unit Manager Pilant reported the threat, and the decision was made to place Plaintiff back in SHU for his safety

21. SIS conducted an investigation to determine if Plaintiff could safely return to general population.

22. The subsequent threat assessment investigation involved the interview of several inmates incarcerated in general population at FCI McDowell.

23. It was discovered through interviewing other inmates that Plaintiff purchased K2 (an illicit substance) from inmates with the Security Threat Group assignment of Black Gangster Disciples in large quantities.

24. It was further learned that Plaintiff "smoked K2 every day," and that other inmates were "always trying to keep Plaintiff out of the way so that staff didn't see him." The inmates interviewed stated Plaintiff gets aggressive while high on K2 and eventually could hurt another inmate or staff.

25. One inmate that was interviewed stated that Plaintiff should not be released to general population because "the White inmates don't want him out due to his drug use."

26. The inmate stated further that "we all came together and decided it's best he doesn't come back out here. No one wants to share a cell with him because he's always bringing the cops in because they know he uses."

27. When asked what would happen if Plaintiff returns to general population, the inmate stated, "someone will take care of that situation because we don't want to deal with it anymore."

28. The inmate was asked if Plaintiff would be assaulted, and the inmate responded, "yes by someone no doubt."

29. The investigator also reviewed documents related to Plaintiff from the time he was incarcerated at FCI McDowell.

30. Specifically, it was noted that Plaintiff arrived at FCI McDowell on July 23, 2019 and was placed in B4 Housing Unit.

3

31. On September 23, 2019, Plaintiff was placed in SHU due to possible use of narcotics.

32. Plaintiff was released to General Population and placed in C1 Housing Unit on October 9, 2019.

33. On October 28, 2019, an inmate acting as a confidential informant informed SIS staff that Plaintiff had been smoking all day and was in his cell barely able to stand.

34. The housing unit officer checked on him and found him unsteady in his stance and his speech was slurred.

35. Plaintiff was placed back in SHU.

36. Plaintiff was released back to General Population again on November 27, 2019.

37. On December 9, 2019, a medical emergency was called in C1 Housing Unit due to Plaintiff being unresponsive in his cell.

38. This resulted in Plaintiff being sent on an outside medical trip to a local hospital.

39. While in SHU on January 1, 2020, the SHU Lieutenant was conducting rounds and observed Plaintiff standing next to the toilet shaking and swaying from side to side.

40. When he attempted to get Plaintiff to acknowledge him, Plaintiff ignored the request.

41. When Plaintiff was directed to submit to hand restraints, Plaintiff fell to the floor.

42. At that time, a medical emergency was called, the cell door was opened, and Plaintiff was transported to a local hospital.

43. Plaintiff's cell mate at that time was removed from the cell, and it was observed he was also slurring his words and had a cut on the top of his head.

44. The cell smelled of smoke, and due to the possibility of staff harm, the cell was secured and searched the next day.

45. On January 2, 2020, the cell was searched, and a homemade smoking pipe

4

was found with several strips of paper in an envelope on the table. The items were tested and produced a positive result for Amphetamines.

46. Both inmates received an incident report for Code 113 Possession of any narcotic.

47. After reviewing the incidents of Plaintiff's narcotics use, the investigator also addressed the reasons Plaintiff's behavior was not sanctioned.

48. Regarding the January 1, 2020 incident, Plaintiff's cellmate took responsibility for incident report, and Plaintiff's own incident report was expunged.

49. Plaintiff had also been issued an incident report for the October 28, 2019 and September 23, 2019 incidents, but he was able to get them expunged by the Discipline Hearing Officer by citing to his history of seizures.

50. Plaintiff was drug tested in connection with each suspected substance abuse incident with negative results. However, it had been found that a new K2 white powder substance had been introduced to the prison that might not result in a positive test due to the way it was being made and broken down inside the prison.

51. Plaintiff also had a medical history of seizures. Therefore, his use of drugs was masked by this condition.

52. However, medical staff inside the institution have stated Plaintiff was clearly under the influence of an illicit substance during the instances where he has been seen in health services for evaluation.

53. At the conclusion of the investigation, the investigator concluded there was a verified threat against Plaintiff.

54. Specifically, it was determined that the White inmates had a plan to assault Plaintiff if he returned to general population due to his frequent drug use.

55. Because of the results of the investigation, it was recommended that Plaintiff receive a transfer to a facility commensurate with his security and programming needs.

56. Plaintiff will remain in SHU until he is transferred or until new information is received that the threat to Plaintiff's safety no longer exists.

57. Attached are true and accurate copies of the following documents:

5

| | |
|---|---|
| Attachment A: | BOP Program Statement 5270.11, Special Housing Units |
| Attachment B: | Inmate History-Quarters |
| Attachment C: | Staff Memos |
| Attachment D: | Threat Assessment |
| Attachment E: | Inmate Disciplinary History-Expunged Incident Reports |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 14 day of April, 2020.

Richard Smith
SIS Lieutenant
FCI McDowell

6

# Attachment A



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

OPI:             CPD/CSB
NUMBER:     5270.11
DATE:           November  23, 2016

# Special Housing Units

/s/
*Approved*:  Thomas R. Kane
Acting Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE**

**§ 541.20  Purpose.**

**This subpart describes the Federal Bureau of Prisons' (Bureau) operation of special housing units (SHU) at Bureau institutions.  The Bureau's operation of SHUs is authorized by 18 U.S.C. 4042(a)(2) and (3).**

a. **Program Objectives**.  The expected results of this program are:

■   Special Housing Unit placement should always serve a specific penological purpose.
■   Inmates are housed in the least restrictive setting necessary to ensure their own safety, as well as the safety of staff, other inmates, and the public.
■   A safe and orderly environment will be provided for staff and inmates.
■   Living conditions for inmates in disciplinary segregation and administrative detention will meet or exceed applicable standards.
■   Accurate and complete records will be maintained on conditions and events in special housing units.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

b.  **Summary of Changes**

*Policy Rescinded*
P5270.10        Special Housing Units (7/29/11)
Memorandum from Assistant Director Scott Dodrill, Secure Housing Unit Operations, dated 3/2/10
Memorandum from Assistant Director Frank Strada, Special Housing Unit Training, dated 4/17/2015

The following changes have been incorporated into the policy:

■  Several changes have been implemented to adhere to Department of Justice recommendations regarding guiding principles.

■  Training standards have been updated.

■  Alternate Clothing guidance is provided.

■  Objectives were defined.

■  Forms have been updated.

■  Circumstances under which pregnant inmates can be placed in SHU have been defined.

■  Psychological concerns regarding SHU placements have been addressed.

c.  **Institution Supplement**.  None required.  Should local facilities make any changes outside the required changes in the national policy or establish any additional local procedures to implement the national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

2.   **SPECIAL HOUSING UNITS (SHUS)**

**§ 541.21  Special Housing Units (SHUs).**

**Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates.  Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population.**

For inmates with suspected or confirmed contagious diseases, refer to the Program Statements **Intake Screening**, **Infectious Disease Management**, and **Patient Care**, and, when applicable, the Pandemic Influenza Plan**.**

Alternative segregation housing arrangements outside the Special Housing Unit itself must be proposed by the Warden to the Regional Director, and ultimately approved by the Assistant Director, Correctional Programs Division, before activation.  Alternative segregation housing of this type will only be approved as SHU overflow for inmates in administrative detention or disciplinary segregation status.  Operation of such alternative segregation housing requires compliance with all Bureau rules, policies, staffing, and post orders for operating Special Housing Units.

General population inmates are not permitted to enter a secure housing unit to interact with inmates for dispute resolutions, intelligence gathering, or security threat group/disruptive group meetings.  This also applies to removing inmates from a secure housing unit to meet with  inmates in general population.  Institution staff must rely on trained investigative techniques, link analysis, and other means of gathering information without allowing inmates into a secure housing setting to conduct face-to-face meetings with one another.

Inmates who are pregnant, who are post-partum (up to 8 weeks), who recently had a miscarriage (up to 4 weeks), or  who recently had a terminated pregnancy (up to 4 weeks) should not be placed in restrictive housing.  In   rare situations, these inmates may be placed in restrictive housing as a temporary  response to behavior that poses a serious and immediate risk of physical harm or to ensure the  safety, security, and orderly running of a BOP facility.

3.   **STATUS WHEN PLACED IN THE SHU**

**§ 541.22  Status when placed in the SHU.**

**When placed in the SHU, you are either in administrative detention status or disciplinary segregation status.**

**(a)   *Administrative detention status.*  Administrative detention status is an administrative status which removes you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public.  Administrative detention status is non-punitive, and can occur for a variety of reasons.**

The Warden may impose temporarily more restrictive conditions on an inmate (which may be in an area ordinarily set aside for disciplinary segregation and therefore requires the withdrawal of privileges ordinarily afforded in administrative detention status, until a hearing before the DHO can be held) who:

- Is causing a serious disruption (threatening life, serious bodily harm, or property) in administrative detention.
- Cannot be controlled within the physical confines of administrative detention.
- Upon advice of qualified health personnel, does not require confinement in the institution hospital if the institution has one for mental or physical treatment, or who would ordinarily be housed in the institution hospital for mental or physical treatment, but who cannot safely be housed there because the hospital does not have a room or cell with adequate security provisions.

Inmate confined under these more restrictive conditions must have their status reviewed and fully documented on a new BP-A0321 every 5 days.

The Warden may delegate this authority no further than to the official in charge of the institution when the move is necessary.

A fully documented report Special Housing Unit − Temporary Restrictive Housing Order (BP-A0321) is maintained in the Inmate Central File.

**(b)  *Disciplinary segregation status.*  Disciplinary segregation status is a punitive status imposed only by a Discipline Hearing Officer (DHO) as a sanction for committing a prohibited act(s).**

4.  **ADMINISTRATIVE DETENTION STATUS**

**§ 541.23  Administrative detention status.**

**You may be placed in administrative detention status for the following reasons:**

**(a)  *Pending Classification or Reclassification.*  You are a new commitment pending classification or under review for Reclassification.**

This includes newly arrived inmates from the Bus, Airlift, and U.S. Marshals Service.

**(b)  *Holdover Status.*  You are in holdover status during transfer to a designated institution or other destination.**

**(c)  *Removal from general population.*  Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:**

**(1)  *Investigation.*  You are under investigation or awaiting a hearing for possibly violating a Bureau regulation or criminal law;**

**(2)  *Transfer.*  You are pending transfer to another institution or location;**

**(3)  *Protection cases.*  You requested, or staff determined you need, administrative detention status for your own protection; or**

**(4)  *Post-disciplinary detention.*  You are ending confinement in disciplinary segregation status, and your return to the general population would threaten the safety, security, and orderly operation of a correctional facility, or public safety.**

Staff must obtain approval from a Lieutenant or the Captain before placing an inmate in Administrative Detention status pending investigation of a disciplinary violation.  When considering approval for Administrative Detention, the seriousness of the violation should be reviewed.

In making Special Housing determination, officials should consider the seriousness of the alleged offense, including whether the offense involved violence, involved escape, or posed a threat to institutional safety or the orderly running of the institution.

If an inmate is terminating confinement in disciplinary segregation and staff determine placement in the general population is not prudent, the inmate may be placed in administrative detention status if warranted by the conditions established above.  The decision for post-disciplinary detention must be based on a separate review, not solely on the initial hearing before the DHO that resulted in the inmate's placement in disciplinary segregation.

The Segregation Review Official (SRO) advises the inmate of this determination and the reason for the action via an Administrative Detention Order (ADO; BP-A0308). The Warden or shift supervisor can order immediate segregation.  Ordinarily, within 24 hours of an inmate's placement in Administrative Detention, a supervisory official not involved in the initial placement will review and approve the placement decision.

Except for pretrial inmates or inmates in a control unit program, staff ordinarily, within 90 days of an inmate's placement in post-disciplinary detention, must either return the inmate to the general inmate population or request a transfer of the inmate to a more suitable institution using Form EMS-A409, Request for Transfer/Application of Management Variable.  The Regional Correctional Programs Administrator will be copied on the completed form.

The institution must generate a regional referral for each inmate in post-disciplinary detention in excess of 90 days that includes case-specific information stating why the inmate is not appropriate for return to general population or immediate transfer. The Regional Director must submit a recommendation for post-disciplinary detention in excess of 90 days and every additional 60 days thereafter to the Assistant Director, Correctional Programs Division (CPD) for concurrence. Distribution includes a copy to the GroupWise mailbox BOP-CPD/DHO~.

The institution generates an ADO that cites the same case-specific information and includes documentation indicating that the SRO has advised the inmate of the basis for the extended stay.

5. **DISCIPLINARY SEGREGATION STATUS**

**§ 541.24  Disciplinary segregation status.**

**You may be placed in disciplinary segregation status only by the DHO as a disciplinary sanction.**

6. **NOTICE RECEIVED WHEN PLACED IN THE SHU**

**§ 541.25  Notice received when placed in the SHU.**

**You will be notified of the reason(s) you are placed in the SHU as follows:**

The Lieutenant or other correctional supervisor prepares an Administrative Detention Order (ADO; BP-A0308). The specific reason for placement in SHU must be supported by objective evidence and clearly articulated in the narrative section of the ADO. A new ADO is required if an inmate's status in administrative detention changes. Inmates will remain in SHU for no longer than necessary to address the specific reason for placement. Distribution of copies is indicated on the ADO.

**(a)  *Administrative detention status.*  When placed in administrative detention status, you will receive a copy of the administrative detention order, ordinarily within 24 hours, detailing the reason(s) for your placement. However, when placed in administrative detention status pending classification or while in holdover status, you will not receive an administrative detention order.**

Pending classification refers to newly arrived inmates.

**(b)  *Disciplinary segregation status.*  When you are to be placed in disciplinary segregation status as a sanction for violating Bureau regulations, you will be informed by the DHO at the end of your discipline hearing.**

7.  **REVIEW OF PLACEMENT IN THE SHU**

**§ 541.26  Review of placement in the SHU.**

**Your placement in the SHU will be reviewed by the Segregation Review Official (SRO) as follows:**

**(a)    *Three day review.*  Within three work days of your placement in administrative detention status, not counting the day you were admitted, weekends, and holidays, the SRO will review the supporting records.  If you are in disciplinary segregation status, this review will not occur.**

For reviews of Protection Cases see section 9.

**(b)    *Seven day reviews.*  Within seven continuous calendar days of your placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend.  Subsequent reviews of your records will be performed in your absence by the SRO every seven continuous calendar days thereafter.**

**(c)    *Thirty day reviews.*  After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend.**

**(d)    *Administrative remedy program.*  You can submit a formal grievance challenging your placement in the SHU through the Administrative Remedy Program, 28 CFR part 542, subpart B.**

28 CFR Part 542, Subpart B, refers to the Program Statement **Administrative Remedy Program.**

The SRO refers to the individual at each Bureau institution assigned to review the status of each inmate housed in disciplinary segregation and administrative detention.  The SRO must conduct the required reviews.  The SRO does not have to be a DHO.  Ordinarily, the SRO is the Captain (may be delegated to a Lieutenant responsible for supervision of the SHU).  This review must include:

■    A review of the inmate's records while in the SHU (Special Housing Unit Record, BP-A0292).

■    All available memoranda from staff (including psychology staff).

■ All available investigatory memoranda.
■ The SRO completes a Special Housing Review (BP-A0295) after review of the Special Housing Unit Record and other relevant documentation.  Maintain permanent logs.

A multidisciplinary team that includes, at a minimum, institution executive staff, Correctional Services, unit staff, Health Services, and psychology staff reviews the inmate's initial and ongoing  placement in SHU.  This committee meets on a regular basis, ordinarily weekly.

8. **PROTECTION CASE − PLACEMENT IN ADMINISTRATIVE DETENTION STATUS**

**§ 541.27  Protection case − placement in Administrative Detention status.**

**You may be placed in administrative detention status as a protection case in the following circumstances.**

**(a)   *Victim of inmate assault or threats*.  You were the victim of an inmate assault,  or are being threatened by other inmates, including threats of harm if you do not  act in a certain way, for example, threats of harm unless you engage in sexual  activity.**

**(b)   *Inmate informant*.  Your safety is threatened because you provided, or are perceived as having provided, information to staff or law enforcement authorities regarding other inmates or persons in the community.**

**(c)   *Inmate refusal to enter general population*.  You refuse to enter the general population because of alleged pressures or threats from unidentified inmates, or for no expressed reason.**

**(d)   *Staff concern*.  Based on evidence, staff believe your safety may be seriously  jeopardized by placement in the general population.**

When an inmate is placed in Administrative Detention for an investigative period and the threat is verified, correctional officials should seek alternative housing, by transferring the threatened inmate either to the general population of another institution or to a special-purpose housing unit for inmates who face similar threats, with conditions comparable to those of the general population.

When the inmate poses such security risk that even a special-purpose housing unit is insufficient to ensure the inmate's safety and the safety of staff, other inmates, and the public, the inmate

may be housed in more restrictive conditions.  The inmate's placement should be regularly reviewed to monitor any medical or mental health deterioration and to determine whether the security risks have subsided.

9.  **PROTECTION CASE − REVIEW OF PLACEMENT IN THE SHU**

**§ 541.28  Protection case − review of placement in the SHU.**

**(a)  *Staff investigation.*  Whenever you are placed in the SHU as a protection case, whether requested by you or staff, an investigation will occur to verify the reasons for your placement.**

**(b)  *Hearing.*  You will receive a hearing according to the procedural requirements of § 541.26(b) within seven calendar days of your placement.  Additionally, if you feel at any time your placement in the SHU as a protection case is unnecessary, you may request a hearing under this section.**

**(c)  *Periodic review.* If you remain in administrative detention status following such a hearing, you will be periodically reviewed as an ordinary administrative detention case under § 541.26.**

When an inmate is placed in administrative detention for protection, the Warden or designee (ordinarily the Captain), must review the placement within two work days of the placement to determine if continued protective custody is necessary.  This review includes documents that led to the inmate being placed in protective custody status and any other documents pertinent to the inmate's protection.

10.  **STAFF VERIFICATION OF NEED FOR PROTECTION**

**§ 541.29  Staff verification of need for protection.**

**If a staff investigation verifies your need for placement in the SHU as a protection case, you may remain in the SHU or be transferred to another institution where your status as a protection case may not be necessary, at the Warden's discretion.**

11.  **LACK OF VERIFICATION OF NEED FOR PROTECTION**

**§ 541.30  Lack of verification of need for protection.**

**If a staff investigation fails to verify your need for placement in the SHU as a protection case, you will be instructed to return to the general population.  If you refuse to return to the general population under these circumstances, you may be subject to disciplinary action.**

Inmates refusing placement in general population should be maintained in Administrative Detention status and, if appropriate, initiate disciplinary action.

12.  **CONDITIONS OF CONFINEMENT IN THE SHU**

**§ 541.31  Conditions of confinement in the SHU.**

**Your living conditions in the SHU will meet or exceed standards for healthy and humane treatment, including, but not limited to, the following specific conditions:**

**(a)  *Environment.*  Your living quarters will be well-ventilated, adequately lighted,  appropriately heated, and maintained in a sanitary condition.**

**(b)  *Cell Occupancy.*  Your living quarters will ordinarily house only the amount of  occupants for which it is designed.  The Warden, however, may authorize more occupants so long as adequate standards can be maintained.**

**(c)  *Clothing.*  You will receive adequate institution clothing, including footwear,  while housed in the SHU.  You will be provided necessary opportunities to  exchange clothing and/or have it washed.**

The Warden's written approval is required prior to placing an inmate on alternate clothing/linen status. The Warden or Acting Warden may not delegate the authority to place an inmate in alternate  clothing/linen (e.g., paper).  The memorandum must include, at a minimum, the signature of the Warden, Health Services Administrator, and a psychologist.  A written explanation of the reason(s) for alternate clothing/linen status must be included in the Warden's authorization.  This status will be reviewed every 3 days.  Inmates will not be authorized to remain in alternate clothing/linen for more than 6 days.  After 6 days, the inmate is removed from the alternate clothing/linen status, or, if necessary, a new authorization is generated.  Inmates must be offered a change of clothing daily and the clothing must be adequate to the temperature in the SHU.

Alternate clothing/linen is authorized when an inmate alters, destroys, or uses a clothing/linen issued article in a manner that poses a threat to safety, security, or good order of the SHU or to herself/himself, other inmates, or staff.

Alternate clothing/linen will not be used as punishment or during external transportation (i.e., outside the secure perimeter). Inmates that originate from BOP facilities will not be transported in alternate clothing for any reason. Ordinarily, inmates with serious mental illness and those with identified chronic or acute suicide risk are not placed in paper clothing. Paper clothing is not used on suicide watch.

**(d)   *Bedding.*  You will receive a mattress, blankets, a pillow, and linens for  sleeping.  You will receive necessary opportunities to exchange linens.**

If the institution issues the combination mattress with a pillow incorporated, a separate pillow will not be issued. Staff may remove an inmate's mattress during non-sleeping daytime hours as a "loss of privilege" sanction imposed by the Unit Discipline Committee (UDC)/DHO. Removal of an inmate's mattress is  otherwise prohibited, absent life or safety concerns as specifically documented and authorized by  the Warden, or his/her designee.

**(e)   *Food.*  You will receive nutritionally adequate meals.**

Refer to the Program Statement **Food Service Manual** for standards and guidelines for feeding inmates in Special Housing Units. When an inmate uses food products, Food Service items, or the feeding process itself in a manner that poses a threat to the safety, security, or good order of the institution, or to the inmate him-/herself, other inmates, or staff, a written explanation of the reason(s) for alternate meal status must be included in the CEO's authorization and approved by Health Services. The Warden's written approval is required prior to placing an  inmate on alternative meal status.   After 7 days, the  inmate is removed from the alternative meal service or, if necessary, a new authorization is  generated.

**(f)   *Personal hygiene.*  You will have access to a wash basin and toilet.  You will receive personal items necessary to maintain an acceptable level of personal hygiene, for example, toilet tissue, soap, toothbrush and cleanser, shaving utensils, *etc.*  You will ordinarily have an opportunity to shower and shave at least three times per week.  You will have access to hair care services as necessary.**

**(g)   *Exercise.*  You will receive the opportunity to exercise outside your individual  quarters at least five hours per week, ordinarily on different days in**

**one-hour periods.    You can be denied these exercise periods for a week at a time by order of the Warden if it is determined that your use of exercise privileges threatens  safety, security, and orderly operation of a correctional facility, or public safety.**

If weather, resources, and staffing permit, the inmate shall receive outdoor exercise periods. "Week" means one calendar week.

Plans for increasing recreation time are developed locally for each institution in an effort to provide additional out of cell time.  These plans will be developed considering the views and input from the local union.

The following factors must be considered when developing plans to increase out of cell time for recreation:

- Inmate to correctional services staff ratio in SHU.
- Total number of inmates in SHU.
- Limitations of the physical plant and infrastructure, especially regarding spaces used for recreation.

When an institution possesses the resources identified within the three factors listed above to implement these plans, it should do so.

A memorandum for the plan will be generated.  The Warden will review the plan at least annually and make adjustments as necessary.

Restriction or denial of exercise is not used as punishment.  The Warden or Acting Warden may not delegate the authority to restrict or deny exercise.  Exercise periods are only restricted or denied when the inmate's activities pose a threat to the safety, security, and orderly operation of a correctional facility, or health conditions of the unit.

The appropriate staff member recommends recreation restrictions to a supervisor who then makes the recommendation to the Warden in writing.  The recommending staff member describes briefly the reason for recommending a restriction and its proposed extent.  The Warden reviews the recommendation and approves, modifies, or denies the restriction.  If the Warden approves a restriction, it must be based on the conclusion that the inmate's actions pose a threat to the safety, security, and orderly operation of a correctional facility or health conditions of the unit.

**(h)   *Personal property.*  In either status, your amount of personal property may be  limited for reasons of fire safety or sanitation.**

**(1)   In administrative detention status you are ordinarily allowed a reasonable amount of personal property and reasonable access to the commissary.**

**(2)   In disciplinary segregation status your personal property will be impounded, with the exception of limited reading/writing materials, and religious articles. Also, your commissary privileges may be limited.**

(3)   Personal property ordinarily allowed in administrative detention (if not otherwise a threat to institution security) includes:

- Bible, Koran, or other scriptures (1).
- Books, paperback (5).
- Eyeglasses, prescription (2).
- Legal material (see the Program Statement **Inmate Legal Activities**).
- Magazine (3).
- Mail (10).
- Newspaper (1).
- Personal hygiene items (1 of each type) (no dental floss or razors*).
- Photographs (25).
- Authorized religious medals/headgear (e.g., kufi).
- Shoes, shower (1).
- Shoes, other (1).
- Snack foods without aluminum foil wrappers (5 individual packs).
- Soft drinks, powdered (1 container).
- Stationery/stamps (20 each).
- Wedding band (1).
- Radio with ear plugs (1).
- Watch (must not have metal backing) (1).

*Razors are controlled by SHU staff.  Only disposable razors are used.

The Warden may modify the quantity and type of personal property allowed.  Personal property may be limited or withheld for reasons of security, fire safety, or housekeeping.

Unauthorized use of any authorized item may result in the restriction of the item. If there are numerous misuses of an authorized item, the Warden may determine that the item will not be issued in the SHU.

**Reading Material**.  The inmate will receive a reasonable amount of non-legal reading material, not to exceed five books per inmate at any one time, on a circulating basis.  Staff shall provide the inmate the opportunity to possess religious scriptures of the inmate's faith.

**(i)   *Correspondence*.  You will receive correspondence privileges according to part 540, subpart B.**

Part 540, Subpart B, refers to the Program Statement **Correspondence**.

**(j)   *Telephone*.  You will receive telephone privileges according to part 540, subpart I.**

Part 540, Subpart I, refers to the Program Statement **Inmate Telephone Regulations**.

If the inmate has not been restricted from telephone use as the result of a specific disciplinary sanction, he/she is allowed to make one telephone call per month.  Meaning, the inmate should receive a phone call within the first 30 calendar days of placement in the Special Housing Unit and within every 30 calendar days thereafter.

**(k)   *Visiting*.  You will receive visiting privileges according to part 540, subpart D.**

Part 540, Subpart D, refers to the Program Statement **Visiting Regulations**.

**(l)   *Legal activities*.  You will receive an opportunity to perform personal legal activities according to part 543, subpart B.**

Part 543, Subpart B, refers to the Program Statement **Inmate Legal Activities**.

**(m)   *Staff monitoring*.  You will be monitored by staff assigned to the SHU, including program and unit team staff.**

Program staff, including unit staff, arrange to visit inmates in a SHU within a reasonable time after receiving the inmate's request.

In addition to direct supervision by the unit officer, qualified health personnel and one or more responsible officers the Warden designates (ordinarily the Institution Duty Officer) visit each segregated inmate daily, including weekends and holidays.  A Lieutenant must visit the SHU during each shift to ensure all procedures are followed.

Duress buttons, if present, will be utilized only for emergency and/or life-threatening situations, to include health-related issues. The use of the duress button for anything other than an emergency and/or life-threatening situation is subject to disciplinary action.

**(n)  *Programming activities.*  In administrative detention status, you will have access to programming activities to the extent safety, security, orderly operation of a correctional facility, or public safety are not jeopardized.  In disciplinary segregation status, your participation in programming activities, *e.g.*, educational programs, may be suspended.**

All out of cell time will be recorded in BP-A0292, Special Housing Unit Record.

**(o)  *Administrative Remedy Program.*  You can submit a formal grievance challenging any aspect of your confinement in the SHU through the Administrative Remedy Program, 28 CFR part 542, subpart B.**

28 CFR Part 542, Subpart B, refers to the Program Statement **Administrative Remedy Program**.

13.  **MEDICAL AND MENTAL HEALTH CARE IN THE SHU**

**§ 541.32  Medical and mental health care in the SHU.**

**(a)  *Medical care.*  A health services staff member will visit you daily to provide necessary medical care.  Emergency medical care is always available.**

While in a SHU, inmates may continue taking their prescribed medications.

**(b)  *Mental health care.*  After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, mental health staff will examine you, including a personal interview.  Emergency mental health care is always available.**

Generally, an inmate who has been identified by Psychology/Health Services as a Care-3 (MH), Care-4 (MH), psychology alert in SENTRY, or identified on the monthly SHU advisory should not be placed in Special Housing unless he/she presents an immediate and/or serious danger to self, staff, or the orderly running of a facility.

If an inmate who has been identified by Psychology/Health Services as a Care-3 (MH), Care-4 (MH), psychology alert in SENTRY, or identified on the monthly SHU advisory (Hot List), is placed in Special Housing, psychology services should be notified and conduct a mental health

evaluation within 24 hours of placement.  Staff should conduct a psychiatric or psychological assessment, including a personal interview,   when administrative detention continues beyond 30 days.  The assessment, submitted to the SRO  in a written report with a copy to the inmate's central file, addresses:

- The inmate's adjustment to surroundings.
- The threat the inmate poses to self, staff, and other inmates.

Staff conduct a similar psychiatric or psychological assessment and report at 30-day intervals should detention continue for an extended period.

14.   **RELEASE FROM THE SHU**

**§ 541.33  Release from the SHU.**

**(a)   *Administrative detention status.*  You will be released from administrative detention status when the reasons for your placement no longer exist.**

**(b)   *Disciplinary segregation status.*  You will be released from disciplinary segregation status after satisfying the sanction imposed by the DHO.  The SRO may release you earlier if it is determined you no longer require disciplinary segregation status.**

Ordinarily, inmates nearing the end of their term of incarceration will not be placed in SHU, except when their presence in General Population threatens the safety, security, or the orderly running of a BOP facility.

Every effort should be made to avoid releasing an inmate directly from SHU to the community.  If the inmate remains in SHU within 180 days of release, options to release the inmate to less restrictive settings should be considered.  If a less restrictive setting is not possible, the inmate will receive targeted reentry programming to prepare for return to the community.

A clear plan for returning the inmate to less restrictive conditions will be developed and is ordinarily shared with the inmate.

The SRO may not increase any previously imposed sanction(s). When considering release from disciplinary segregation, the SRO first consults with the Captain and must notify the Discipline Hearing Officer (DHO) of the  inmate's release from disciplinary segregation before satisfying the imposed sanction.

15.  **TRAINING**

Completion of quarterly training will be required for staff assigned to SHU prior to the start of each new quarter, regardless of how many times a staff member has completed the training.  When assignment to a SHU post is known sufficiently in advance, each staff member should be afforded a reasonable amount of duty time to complete the training.  For instances when last-minute assignments to the SHU occur, the employer must advise the staff of the general requirements of a SHU post and answer any questions.

This training session may include, but is not limited to, search procedures, escort procedures, application of restraints, use of force, orderly supervision, cell/unit sanitation, emergency response, suicide prevention, and dealing with mentally ill inmates, as well as other security procedures related to the unit.  If this in-person training is completed, a training sheet will be completed documenting the training, and will be routed to the Captain and Human Resources Department for retention.

16.  **AGENCY'S ACA ACCREDITATION PROVISIONS**

- 4th Edition Standards for Adult Correctional Institutions: 4-4133, 4-4235, 4-4249, 4-4250, 4-4251, 4-4252, 4-4253, 4-4254, 4-4255, 4-4256, 4-4258, 4-4260, 4-4261, 4-4262, 4-4263, 4-4264, 4-4265, 4-4266, 4-4267, 4-4268, 4-4269, 4-4270, 4-4271, 4-4272, and 4-4273.
- 4th Edition Performance-Based Standards for Adult Local Detention Facilities: 4-ALDF-2A-44, 4-ALDF-2A-45, 4-ALDF-2A-46, 4-ALDF-2A-47, 4-ALDF-2A-48, 4-ALDF-2A-49, 4-ALDF-2A-50, 4-ALDF-2A-51, 4-ALDF-2A-53, 4-ALDF-2A-55, 4-ALDF-2A-56, 4-ALDF-2A-57, 4-ALDF-2A-58, 4-ALDF-2A-59, 4-ALDF-2A-60, 4-ALDF-2A-61, 4-ALDF-2A-62, 4-ALDF-2A-63, 4-ALDF-2A-64, 4-ALDF-2A-65, and 4-ALDF-2A □66.

**REFERENCES**

*Program Statements*
P1315.07      Inmate Legal Activities (11/5/99)
P1330.18      Administrative Remedy Program (1/6/14)
P4700.06      Food Service Manual (9/3/11)
P5100.08      Inmate Security Designation and Custody Classification (9/12/06)
P5212.07      Control Unit Programs (2/20/01)
P5264.08      Inmate Telephone Regulations (1/24/08)
P5265.14      Correspondence (4/5/11)
P5267.09      Visiting Regulations (12/10/15)
P5270.09      Inmate Discipline Program (7/8/11)
P6031.04      Patient Care (6/3/14)

P6340.04        Psychiatric Services (1/15/05)
P6360.01        Pharmacy Services (1/15/05)

*BOP Forms*
BP-A0292        Special Housing Unit Record
BP-A0295        Special Housing Review
BP-A0308        Administrative Detention Order
BP-A0321        Special Housing Unit − Temporary Restrictive Housing Order

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

# Attachment B

```
BECHE  531.01 *                INMATE HISTORY        *      03-20-2020
PAGE 001       *                  QUARTERS           *      06:51:28


  REG NO..: 03540-063 NAME....: WISE, TIMOTHY S
  CATEGORY: QTR        FUNCTION: PRT        FORMAT:


FCL    ASSIGNMENT DESCRIPTION                      START DATE/TIME STOP   DATE/TIME
MCD    Z06-240LAD HOUSE Z/RANGE 06/BED 240L AD     03-08-2020 1118 CURRENT
MCD    Z06-241LAD HOUSE Z/RANGE 06/BED 241L AD     02-18-2020 1301 03-08-2020 1118
MCD    Z06-242LAD HOUSE Z/RANGE 06/BED 242L AD     02-01-2020 1529 02-18-2020 1301
MCD    Z06-243LAD HOUSE Z/RANGE 06/BED 243L AD     01-13-2020 1500 02-01-2020 1529
MCD    Z04-201LAD HOUSE Z/RANGE 04/BED 201L AD     01-06-2020 1456 01-13-2020 1500
MCD    Z01-102LAD HOUSE Z/RANGE 01/BED 102L AD     01-05-2020 1039 01-06-2020 1456
MCD    Z01-101LAD HOUSE Z/RANGE 01/BED 101L AD     01-05-2020 1006 01-05-2020 1039
MCD    H01-001L   HOUSE H/RANGE 01/BED 001L        01-02-2020 1505 01-05-2020 1006
MCD    Z06-238LAD HOUSE Z/RANGE 06/BED 238L AD     01-01-2020 1957 01-02-2020 1505
MCD    Z02-123LAD HOUSE Z/RANGE 02/BED 123L AD     01-01-2020 1852 01-01-2020 1957
MCD    Z02-123LAD HOUSE Z/RANGE 02/BED 123L AD     12-31-2019 1956 01-01-2020 1432
MCD    Z01-101LAD HOUSE Z/RANGE 01/BED 101L AD     12-31-2019 1911 12-31-2019 1956
MCD    B08-228U   HOUSE B/RANGE 08/BED 228U        12-31-2019 1458 12-31-2019 1911
MCD    Z02-123LAD HOUSE Z/RANGE 02/BED 123L AD     12-28-2019 1417 12-31-2019 1458
MCD    Z02-124LAD HOUSE Z/RANGE 02/BED 124L AD     12-11-2019 1922 12-28-2019 1417
MCD    Z01-102LAD HOUSE Z/RANGE 01/BED 102L AD     12-09-2019 1629 12-11-2019 1922
MCD    Z01-101LAD HOUSE Z/RANGE 01/BED 101L AD     12-09-2019 1553 12-09-2019 1629
MCD    C01-110L   HOUSE C/RANGE 01/BED 110L        11-27-2019 1748 12-09-2019 1100
MCD    B08-228U   HOUSE B/RANGE 08/BED 228U        11-27-2019 1325 11-27-2019 1748
MCD    B08-210L   HOUSE B/RANGE 08/BED 210L        11-27-2019 1324 11-27-2019 1325
MCD    C02-213L   HOUSE C/RANGE 02/BED 213L        11-27-2019 1144 11-27-2019 1324
MCD    Z05-225LAD HOUSE Z/RANGE 05/BED 225L AD     11-21-2019 2149 11-27-2019 1144
MCD    Z05-226LAD HOUSE Z/RANGE 05/BED 226L AD     11-04-2019 0737 11-21-2019 2149
MCD    Z05-225UAD HOUSE Z/RANGE 05/BED 225U AD     10-28-2019 2334 11-04-2019 0737
MCD    Z01-101LAD HOUSE Z/RANGE 01/BED 101L AD     10-28-2019 1647 10-28-2019 2334
MCD    C01-110U   HOUSE C/RANGE 01/BED 110U        10-09-2019 1342 10-28-2019 1647
MCD    C01-108U   HOUSE C/RANGE 01/BED 108U        10-09-2019 1317 10-09-2019 1342
MCD    Z05-224UAD HOUSE Z/RANGE 05/BED 224U AD     09-27-2019 1340 10-09-2019 1317
MCD    Z05-225UAD HOUSE Z/RANGE 05/BED 225U AD     09-23-2019 2144 09-27-2019 1340
MCD    Z01-101LAD HOUSE Z/RANGE 01/BED 101L AD     09-23-2019 1932 09-23-2019 2144
MCD    B08-229L   HOUSE B/RANGE 08/BED 229L        09-17-2019 0927 09-23-2019 1932
MCD    B08-228U   HOUSE B/RANGE 08/BED 228U        09-17-2019 0810 09-17-2019 0927
MCD    B08-216U   HOUSE B/RANGE 08/BED 216U        08-23-2019 1503 09-17-2019 0810
MCD    B07-130U   HOUSE B/RANGE 07/BED 130U        07-23-2019 1707 08-23-2019 1503
MCD    R01-001L   HOUSE R/RANGE 01/BED 001L        07-23-2019 1449 07-23-2019 1707
OKL    C04-408L   HOUSE C/RANGE 04/BED 408L        07-10-2019 1246 07-23-2019 0730
OKL    C04-417U   HOUSE C/RANGE 04/BED 417U        07-09-2019 2149 07-10-2019 1246
OKL    C03-901L   HOUSE C/RANGE 03/BED 901L        07-09-2019 1730 07-09-2019 2149
ATL    J04-431U   HOUSE J/RANGE 04/BED 431U        06-24-2019 2019 07-09-2019 1330
ATL    R01-001L   HOUSE R/RANGE 01/BED 001L        06-24-2019 1802 06-24-2019 2019
ATL    R01-001L   HOUSE R/RANGE 01/BED 001L        06-24-2019 1206 06-24-2019 1227


  G0002       MORE PAGES TO FOLLOW . . .
```

# Attachment C



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

---

P.O. Box 1029
Welch, West Virginia  24801

10-28-2019

**MEMORANDUM FOR:** CASE FILE

**FROM:** ██████████████████████████

**SUBJECT:**        Wise, Timothy #03540-063

On 10/28/2019 at approximately 4:30 I Officer ███████ went to unit
C-1 to assist in bringing inmate Wise, Timothy #03540-063 to the
Lieutenants office because he was suspected to be high on an
unknown drug. When arriving to C1 I went to cell 110 where inmate
Wise was housed and he was leaning over in his bed. I instructed
inmate Wise to stand up and come to his door to be placed in hand
restraints. Inmate Wise had trouble standing up and when he got up
he had trouble walking and he was swaying back and forth. Inmate
Wise was ordered again to submit to hand restraints and he seemed
confused and had slurred speech. Inmate Wise then came to the tray
slot and when hand restraints were applied he bent over and
started screaming and crying. Inmate Wise was then taken out of
the cell and I assisted in escorting him. Inmate Wise was taken to
the Lieutenants office with no further incidents.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

---

P.O. Box 1029
Welch, West Virginia 24801

October 28, 2019

**MEMORANDUM FOR: Case File**

FROM: Senior Officer ██████████████████████████

SUBJECT: **Inmate under the Influence**

During the 4 pm count the C1 housing unit officer observed I/M
Wise, Timothy Reg. No. 03540-063 in an altered state in their cell
C1-110. Specifically he was slow to respond to commands, had slow
and slurred speech and an unsteady gait. I observed the same
symptoms in I/M Wise while escorting him to the Lt's Office who
was screaming without reason. It was also noted his eyes were red
and glazed and his pupils were fixed pinpoints and did not react
to light. I/M Wise was placed in the Special Housing Unit.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

P.O. Box 1029
Welch, West Virginia 24801

January 1, 2020

**MEMORANDUM FOR: CASE FILE**

FROM:        Fredrick Saunders, Lieutenant

SUBJECT:     Inmate Timothy Wise, Reg. No. 03540-063
             Inmate ████████████████████

On January 1, 2020, at approximately 2:00 p.m., while conducting
rounds in the Special Housing Unit (SHU), I approached cell B-123
occupied by inmates Timothy Wise, Reg. No. 03540-063 and ██████
████████████████████ and seen inmate Wise standing next to
the toilet of the cell shaking and swaying from side to side.  I
attempted to get Wise to acknowledge me with negative results.  I
ordered inmate ████████to submit to hand-restraints in which he
complied.  I then instructed inmate Wise to come to the cell door
and submit to restraints.  Inmate Wise approached the cell door
and was slurring words with his response, in which couldn't be
understood.  Wise then fell to the floor at which time I contacted
medical, and instructed Officers to open the cell door.  Inmate
Wise was restrained and placed on an emergency stretcher and
removed from the SHU to medical where he was transported to local
hospital via ambulance.  Inmate ████████ was removed from the cell
were it was discovered he was also slurring words and had a cut on
the top of his head.  Medical Assessment was conducted of inmate
Russell and medical documentation can be obtained at a later date
on inmate Wise.  The cell smelled of smoke, due to the possibility
of staff harm the cell was secured in order to be searched at a
later time.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

---

P.O. Box 1029
Welch, West Virginia  24801

1-1 -2020

**MEMORANDUM FOR:** CASE FILE

**FROM:** ███████████████████

**SUBJECT:**        Wise, Timothy reg # 03540-063

On 1/1/2020 while working in SHU I was asked to come to B range
cell 223 with another staff member to restrain an inmate that
appeared to be overdosed on suspected narcotics. I placed hand
restraints on inmate ███████████████ who was also
housed in cell 123 and once restrained we entered the cell to put
hand restraints on inmate Wise who was laying on the cell floor. I
assisted in placing hand and leg restraints on inmate Wise and
then helped place him on the medical stretcher and then escorted
him to medical.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

P.O. Box 1029
Welch, West Virginia 24801

1-1-2020

**MEMORANDUM FOR:** CASE FILE

**FROM:**

**SUBJECT:**    Wise, Timothy reg # 03540-063

On 1/1/2020 while working in SHU I was asked to come to B range
cell 223 with another staff member to restrain an inmate that
appeared to be overdosed on suspected narcotics. I assisted in
placing leg restraints on inmate Wise and then helped place him on
the medical stretcher.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

P.O. Box 1029
Welch, West Virginia 24801

January 1, 2020

**MEMORANDUM FOR: Case File**

**FROM: Senior Officer** ████████████

**SUBJECT: Medical Emergency**

On 01/01/2020 while working my assigned post as the SHU# 3
Officer A medical emergency was called on B range by the SHU LT.
The Medical Emergency was called for Inmate Wise, Timothy REG#
03540-063. Upon arrival to the cell I could see that Inmate Wise
was laying in the floor and appeared to be unresponsive. At that
time the SHU LT ordered me to open the door and to place hand
restraints on Inmate wise. As I opened the door and stepped into
the cell there was a strong smell of smoke in the air. I then
placed hand restraints on Inmate Wise without incident. At that
time myself and other SHU staff lifted Inmate Wise to a
stretcher and escorted Inmate Wise off of the range without
incident.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

---

P.O. Box 1029
Welch, West Virginia 24801

January 1, 2020

**MEMORANDUM FOR: Case File**

**FROM: Senior Officer S.Cook** *S. Cook*

**SUBJECT: Medical Emergency**

On 01/01/2020 while working my assigned post as the SHU# 4
Officer A medical emergency was called on B range by the SHU LT.
The Medical Emergency was called for Inmate Wise, Timothy REG#
03540-063. Upon arrival to the cell I could see that Inmate Wise
was laying in the floor and appeared to be unresponsive. At that
time the SHU LT ordered the door to be opened and myself and
other SHU staff entered the cell. At that time I assisted in
placing the mechanical hand and leg restraints on Inmate Wise.
At that time Inmate Wise was placed on the stretcher by other
responding SHU staff without further incident.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

P.O. Box 1029
Welch, West Virginia 24801

January 2, 2020

**MEMORANDUM FOR: Case File**

**FROM: Senior Officer** ███████████████

**SUBJECT: Case File**

On 01/01/2020 While working my assigned post as the SHU# 3 Officer at approximately 3:40 PM I went and searched cell 123 that at the time housed Inmates Wise, Timothy REG# 03540-063 and Inmate ███████████████████ fallowing a medical emergency that had occurred earlier that day. While conducting the search of cell 123 I found what appeared to be a smoking pipe laying on the table that appeared to be made from a milk carton. I also found several small while squares of paper in an envelope that was also laying on the table. The contraband was confiscated and sent to the LT office for testing. The small squares of paper tested positive for amphetamines.



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

P.O. Box 1029
Welch, West Virginia  24801

December 31, 2019

**MEMORANDUM FOR G. PROUT, OPERATIONS LIEUTENANT**

FROM:          D. Pilant, B Unit Manager

SUBJECT:       Wise, Timothy, Reg. No. 03540-063

On December 31, 2019, I was informed by inmate ███████████
█████████████████ inmate Wise, Timothy, Reg. No. 03540-063
would likely be assaulted if he remained in general population.
This is due to the fact inmate Wise is a drug user and causes
problems for the White inmates in general population by using
drugs and frequently falling out due to the drug use.

# Attachment D



U.S. Department of Justice

Federal Bureau of Prisons

Inmate Investigative Report

Institution: McDowell FCI

Case Number: MCD-20-0078

Investigation Type: Investigative / Threat Assessment

Inmates Involved:

| Register Number | Name | Role |
|---|---|---|
| 03540063 | WISE, TIMOTHY | Suspect |

Staff Involved:

| Name | Title |
|---|---|
| **No information was found for the given criteria.** | |

Others Involved:

| Name | Title |
|---|---|
| **No information was found for the given criteria.** | |

Investigator: Stark, Kelli                    Date: 1/22/2020 8:22:06 AM CST

Captain: MUNN, DANIEL                    Date: 2/19/2020 9:17:05 AM CST

Associate Warden: RICH, DAVID         Date: 2/25/2020 11:52:47 AM CST

Warden: MARUKA, CRISTOPHER          Date: 2/25/2020 12:11:36 PM CST

Summary:

    Inmate Timothy Wise, Reg. No. 03540-063, was placed in Special Housing on December 31, 2019 due to Unit Manager Pilant recieving information from other White inmates that due to inmate Wise's frequent drug use there are other inmates that may assault him.  Mr. Pilant provided a memo and Wise was placed in special housing for his safety.

Inmate Data:



Name:  03540063 - WISE, TIMOTHY

Role:  Suspect                                           Age:  47     Race:  WHITE

Security Level:  MEDIUM                           Custody Level:  IN

Facility Arrival Date: 7/24/2019              Projected Release Date: 8/23/2043

Charges:

| Description | Sentencing District |
| --- | --- |
| 18:2113(A)(D) & 2 A&A/ARMED BANK ROBBERY | OHIO, NORTHERN DISTRICT |
| 18:924(C)(1)&2 USE OF F/A IN CONNECTION W/A CRIME OF VIOLENCE | OHIO, NORTHERN DISTRICT |
| 18:924(C)(1)&2 USE OF F/A IN CONNECTION W/A CRIME OF VIOLENCE | OHIO, NORTHERN DISTRICT |
| 18:924(C)(1)&2 USE OF F/A IN CONNECTION W/A CRIME OF VIOLENCE | OHIO, NORTHERN DISTRICT |

Victim Statements:

    **No information was found for the given criteria.**

Assailant Statements:

    **No information was found for the given criteria.**

Other Statements:

Date:  12/4/2019 10:00 AM                              Location: Housing Unit, Special (SHU)

Interviewer:  Stark, Kelli                               Title: SIS Technician

Interviewee:  ██████

██████ stated that while he and inmate Wise were in General Population inmate Wise purchased K2 from inmates with the STG assignment of Black Gangster Disciples in large quantities and smoked K2 everyday. ██████ stated the white inmates were always trying to keep him out of the way so that staff didn't see him. ██████ stated inmate Wise gets aggressive while high on K2 and eventually could hurt another inmate or staff.

Date:  1/16/2020 10:45 AM                              Location: Housing Unit, Special (SHU)

Interviewer:  Stark, Kelli                               Title: SIS Technician

Interviewee:  03540063 - WISE, TIMOTHY

Inmate Wise refused to comment on his behavior.

Date:  1/16/2020 11:00 AM                              Location: Lieutenant's Office

Interviewer:  Stark, Kelli                               Title: SIS Technician

Interviewee:  ████████████████

Inmate ██████ approached Unit Manager Pilant as a White inmate speaker. He stated that inmate Wise should not be released to General Population because the White inmates don't want him out due to his drug use. Inmate ██████ was interviewed and stated we all came together and decided it's best he doesn't come back out here. No one wants to share a cell with him because he's always bringing the cops in because they know he uses. When asked what will happen if Wise comes out ██████ stated "someone will take care of that situation because we don't want to deal with it anymore". ██████ was asked if he would be assaulted and he stated "yes by someone no doubt"


Factual Findings:

**No item information was found for the given criteria.**

| Type | Subtype | File Name | Original Entered By |
|---|---|---|---|
| Inmate Discipline | Incident Report | Wise Incident Report.pdf | TF53308 |
| Incident Report for Possession of Narcotics Code 112 | | | |
| Statements & Written Memorandums | Staff Provided | Wise Meemo October.pdf | TF53308 |
| Staff Memos describing inmate Wise behavior while being under the influence | | | |
| Statements & Written Memorandums | Staff Provided | Wise Memo Staff SHU.pdf | TF53308 |
| Memo's from staff assigned to Special Housing during medical emergency of inmate Wise which resulted in outside medical care. | | | |
| Photographs | Photo Spread | Wise photo sheet .pdf | TF53308 |
| Photo sheet of NIK Test Positive result for Amphetamines. Chain of Custody for smoking pipe and strips of paper with positive test results. Memo from staff that discovered the contraband. | | | |
| Statements & Written Memorandums | Staff Provided | Wise1.pdf | TF53308 |
| Memo from Unit Manager Pilant stating white inmates stated inmate Wise will likely be assaulted if he returns to General Population due to his drug use. | | | |


Conclusion:

Inmate Timothy Wise, Reg. No. 03540-063, arrived at FCI McDowell on July 23, 2019 and was placed in B4 Housing

Unit. On September 23, 2019 inmate Wise was placed in Special Housing due to possible use of narcotics. The White inmates in B4 requested that inmate Wise not be allowed back on the Compound due to his drug use and the issues it has been causing, for the entire inmate population, when other inmates get high and cause the institution to go on lockdown. Wise was released to General Population and placed in C1 Housing Unit on October 9, 2019.

On October 28, 2019 ▮▮▮▮▮▮ informed SIS staff that inmate Wise had been smoking all day and was in his cell barely able to stand. The housing unit officer checked on him and found him unsteady in his stance and he speech was slurred. Wise was written an Incident Report for code 112 Use of Narcotics, but was able to get it expunged due to his medical condition argument. Wise has been drug tested with every instance with negative results. It has been found that a new K2 white powder substance has been introduced to the prison and may not result in a positive test due to the way it is being made and broken down inside the prison.

Wise has a medical condition of Seizures, therefore his use of drugs have been masked by this condition. Medical staff inside the institution has stated inmate Wise is clearly under the influence when this happens. Inmate Wise was released back to General Population again on November 27, 2019, on December 9, 2019 a medical emergency was called in C1 Housing Unit due to inmate wise being unresponsive resulting in an outside medical trip to a local hospital, while in Special Housing upon his return to the institution on January 1, 2020 the SHU Lieutenant was conducting rounds and observed inmate Wise standing next to the toilet shaking and swaying from side to side. When he attempted to get Wise to acknowledge him, inmate Wise ignored the request.  Wise was directed to submit to hand restraints, Wise fell to the floor at which time a Medical Emergency was called, the cell door was opened, and Wise was placed on an emergency stretcher and again transported to a local hospital. His cellmate ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was removed from the cell where it was discovered he was also slurring his words and had a cut on the top of his head.  The cell smelled of smoke, due to the possibility of staff harm the cell was secured and searched at a later time. On January 2, 2020 the cell was searched and a homemade smoking pipe was found with several strips of paper in an envelop on the table. The items were tested and produced a positive result for Amphetamines. Both inmates received an incident report for Code 113 Possession of any narcotic. Inmate ▮▮▮▮ took the charge for the incident report. Due to inmate Wise's repetitive behavior, the White inmates approached Unit Manager D. Pilant stating inmate Wise will likely be assaulted if he returns to general population due to his frequent drug use.

Inmate interview was conducted with the inmate approaching Unit Team staff which revealed the White inmates will plan to assault inmate Wise to get him off of he compound if he returns to General Population.

Recommendation:

It is recommended that inmate Timothy Wise, reg. no. 03540-063, receive a transfer to a facility commensurate with his security and programming needs.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮

# Attachment E

```
MXRAV            *       INMATE DISCIPLINE DATA       *      03-23-2020
PAGE 001         *    CHRONOLOGICAL DISCIPLINARY RECORD  *    07:16:01
```

REGISTER NO: ⌈03540-063⌉ NAME..: WISE, TIMOTHY S
FUNCTION...: ⌈DIS⌉    FORMAT: ⌈SPECIAL⌉ LIMIT TO ⌈___⌉ MOS PRIOR TO ⌈03-23-2020⌉
                      RSP OF: MCD-MCDOWELL FCI


****************** INCIDENT REPORT 1324628 IS FOR RESTRICTED USE ONLY *********
REPORT NUMBER/STATUS.: 1324628 - EXPUNGED
REPORT DATE/TIME.....: 03-23-2005 1200
FACL/STAT UPDATED BY.: ██████████
REPORT REMARKS.......: INMATES EXCHANGED LINEN AFTER OFFICER LEFT TIER
   CHARGES: 317  FAILING TO FOLLOW SAFETY REGS
           404  USING ABUSIVE/OBSCENE LANGUAGE
*************************** END OF RESTRICTED ENTRY ***************************
****************** INCIDENT REPORT 3347485 IS FOR RESTRICTED USE ONLY *********
REPORT NUMBER/STATUS.: 3347485 - EXPUNGED   INCIDENT DATE/TIME: 01-01-2020 1357
DHO HEARING DATE/TIME: 01-13-2020 1115
FACL/CHAIRPERSON.....: ██████████
REPORT REMARKS.......: CELLIE ADMITTED TO POSSESSING THE DRUGS
   CHARGES: 113  POSSESSING DRUGS/ALCOHOL
*************************** END OF RESTRICTED ENTRY ***************************


G0002       MORE PAGES TO FOLLOW . . .

```
   MXRAV          *          INMATE DISCIPLINE DATA         *      03-23-2020
   PAGE 002        *      CHRONOLOGICAL DISCIPLINARY RECORD   *      07:16:01


REGISTER NO: 03540-063 NAME..: WISE, TIMOTHY S
FUNCTION...: DIS      FORMAT: SPECIAL   LIMIT TO ____ MOS PRIOR TO 03-23-2020
                     RSP OF: MCD-MCDOWELL FCI


****************** INCIDENT REPORT 3347385 IS FOR RESTRICTED USE ONLY *********
REPORT NUMBER/STATUS.: 3347385 - EXPUNGED   INCIDENT DATE/TIME: 01-01-2020 1420
DHO HEARING DATE/TIME: 01-13-2020 1001
FACL/CHAIRPERSON.....: ███████████████
REPORT REMARKS.......: REPORT EXPUNGED - NO DOCUMENTATION TO COST OF LIGHT
                       FIXTURE
   CHARGES: 218  DESTROYING PROP OVER $100
************************* END OF RESTRICTED ENTRY ***************************
```

```
   G0002       MORE PAGES TO FOLLOW . . .
```

```
  MXRAV           *          INMATE DISCIPLINE DATA          *       03-23-2020
PAGE 003          *      CHRONOLOGICAL DISCIPLINARY RECORD   *       07:16:01


REGISTER NO:  03540-063  NAME..: WISE, TIMOTHY S
FUNCTION...:  DIS     FORMAT:  SPECIAL    LIMIT TO  ___ MOS PRIOR TO  03-23-2020
                     RSP OF: MCD-MCDOWELL FCI


***************** INCIDENT REPORT 3321759 IS FOR RESTRICTED USE ONLY *********
REPORT NUMBER/STATUS.: 3321759 - EXPUNGED    INCIDENT DATE/TIME: 10-28-2019 1602
DHO HEARING DATE/TIME: 11-20-2019 1148
FACL/CHAIRPERSON.....: ████████████
REPORT REMARKS.......: INSUFFICENT EVIDENCE TO SUPPORT CHARGE - MEDICAL
                       ASSESSMENT DOES NOT INDICATE WHETHER HE WAS TAKING MEDS
   CHARGES: 112  USE OF DRUGS/ALCOHOL
           199  DISRUPTIVE CONDUCT-GREATEST
************************** END OF RESTRICTED ENTRY **************************



G0002       MORE PAGES TO FOLLOW . . .
```

```
MXRAV              *        INMATE DISCIPLINE DATA          *       03-23-2020
PAGE  004          *     CHRONOLOGICAL DISCIPLINARY RECORD  *       07:16:01


REGISTER NO:  03540-063 NAME..: WISE, TIMOTHY S
FUNCTION...:  DIS       FORMAT: SPECIAL    LIMIT TO ____ MOS PRIOR TO 03-23-2020
                        RSP OF: MCD-MCDOWELL FCI


***************** INCIDENT REPORT 3307685 IS FOR RESTRICTED USE ONLY *********
REPORT NUMBER/STATUS.: 3307685 - EXPUNGED   INCIDENT DATE/TIME: 09-23-2019 1923
MGT HEARING DATE/TIME: 10-09-2019 1045
FACL/CHAIRPERSON.....: ███████████████████
REPORT REMARKS.......: INMATE HAS A HX OF SEIZURES AND MEDICAL VERIFIED THIS
                       INFORMATION
   CHARGES: 112  USE OF DRUGS/ALCOHOL
           199  DISRUPTIVE CONDUCT-GREATEST
           305  POSSESSING UNAUTHORIZED ITEM
************************** END OF RESTRICTED ENTRY **************************




G0002       MORE PAGES TO FOLLOW . . .
```

```
  MXRAV          *         INMATE DISCIPLINE DATA        *      03-23-2020
  PAGE 005        *      CHRONOLOGICAL DISCIPLINARY RECORD   *      07:16:01


REGISTER NO: 03540-063 NAME..: WISE, TIMOTHY S
FUNCTION...: DIS      FORMAT: SPECIAL  LIMIT TO ___ MOS PRIOR TO 03-23-2020
                      RSP OF: MCD-MCDOWELL FCI


****************** INCIDENT REPORT 3307813 IS FOR RESTRICTED USE ONLY *********
REPORT NUMBER/STATUS.: 3307813 - EXPUNGED   INCIDENT DATE/TIME: 09-23-2019 1923
DHO HEARING DATE/TIME: 10-07-2019 1115
FACL/CHAIRPERSON.....: ███████████
REPORT REMARKS.......: MEDICAL ASSESSMENT UNCLEAR AND INMATE HAS A HX OF
                       SEIZURES
   CHARGES: 112  USE OF DRUGS/ALCOHOL
            305  POSSESSING UNAUTHORIZED ITEM
*************************** END OF RESTRICTED ENTRY ***************************




G0002      MORE PAGES TO FOLLOW . . .
```