**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **TIMOTHY S. WISE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:20-00056** |
| | ) | |
| **C. MARUKA,** ***et al.*****,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Plaintiff's Motion for Temporary Restraining Order (Document No. 39), filed on April 17, 2020; (2) Plaintiff's Motion Requesting Censure and Monetary Award Against Defendants for Systemic Interference with Legal Mail (Document No. 41), filed on April 20, 2020; and (3) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72), filed on July 1, 2020. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 74.) On August 30, 2020, Plaintiff filed his Response in Opposition. (Document No. 82.) Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff's Motion for Temporary Restraining Order (Document No. 39) and Motion Requesting Censure and Monetary Award Against Defendants for Systemic Interference with Legal Mail (Document No. 41) should be denied and Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72) should be granted in part and denied in part.

## **PROCEDURAL HISTORY**

On February 14, 2020, Plaintiff, acting *pro se*[1] and incarcerated at FCI McDowell, filed his Amended Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 4.) In his Amended Complaint, Plaintiff names the following as Defendants: (1) C. Maruka, Warden; (2) D. Pilant, B-Unit Manager; (3) Mr. Phillips, Counselor Unit C-1; (4) R. Malone, B-4 Unit Counselor; (5) K. Thompson, Health Services Administrator; (6) F. Saunders, Special Housing Unit Lieutenant; (7) W. Kendrick, Special Housing Unit #1 Day Shift C.O.; (8) D. Sanders, Correctional Officer; (9) L. Howell, Special Housing Unit Corrections Officers; (10) L. Green, Mail Room Supervisor; (11) S. Cook, Correction Officer; (12) G. Walters, Nurse; (13) Mr. Horton, SIS, Special Investigation Service; (14) S. Wyatt, Nurse; (15) R. Alexander, Nurse; (16) C. Carothers, PA; (17) AW Rich, Associate Warden; and (18) AW Shrader, Associate Warden. (Id.) First, Plaintiff alleges that he is unable to exhaust his administrative remedies because prison staff refuse to provide him with grievance forms. (Id., p. 8.) Second, Plaintiff alleges Defendants are violating his constitutional rights due to "deliberate indifference to his serious medical needs, cruel and unusual punishment, discrimination, failure to protect, and harassment." (Id., pp. 9 – 21.) Third, Plaintiff alleges that

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Defendants have denied him dental care from July 23, 2019, until January 26, 2020. (Id., p. 21.) Fourth, Plaintiff contends that Defendants have subjected him to cruel and unusual punishment and violated his due process rights by placing him in the special housing unit ["SHU"]. (Id., pp. 21 – 22.) Fifth, Plaintiff alleges that "mail policies" at FCI McDowell "violate the Code of Federal Regulations, BOP Policy Statements, and his constitutional rights." (Id., pp. 23 – 24.) Sixth, Plaintiff alleges that Defendants have violated his due process rights and discriminated against him by refusing to approve his "visitor forms." (Id., p. 24.) Finally, Plaintiff complains that "executive staff" have failed "to correct constitutional violations or Code of Federal Regulations and BOP Policy violations." (Id., pp. 24 – 25.) Plaintiff requests injunctive and monetary relief. (Id., p. 27.) On February 14, 2020, Plaintiff paid the $400.00 filing and administration fee. (Document No. 5.)

On March 2, 2020, Plaintiff filed a Motion Regarding the Opening of Legal Mail and Request for Sanctions. (Document No. 8.) In Plaintiff's Motion, Plaintiff states that although his legal mail is appropriately marked as such, his legal mail is being opened by prison staff outside his presence. (Id.) As an Exhibit, Plaintiff attaches a copy of an envelope from this Court marked "Legal Mail – Open only in the presence of the inmate." (Id., p. 3.) This envelope, however, was stamped by prison staff as "This correspondence does not meet BOP criteria of special mail handling." (Id.)

By Order entered on March 17, 2020, the undersigned directed the Warden to file a Response to the above Motion. (Document No. 9.) By Order also entered on March 17, 2020, the undersigned directed the Clerk to issue process in this case by preparing and serving a Summons and a copy of Plaintiff's Amended Complaint (Document No. 4) upon each Defendant as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure. (Document No. 10.) The Clerk's

3

Office issued process the same day. (Document No. 11.)

On April 8, 2020, Defendants filed a Response to Plaintiff's Motion Regarding the Opening of Legal Mail indicating that staff were strictly construing BOP policy to require the individual name of the person sending the legal. (Document No. 33.) Therefore, this Court's marking of legal mail as sent by "Clerk, United States District Court" was insufficient to identify the sender. (Document No. 33.) By Order entered on April 13, 2020, the undersigned determined as follows:

> Although the Court finds such a requirement to be unduly critical, the Clerk of the Court has agreed to modify the mailing practice to include the identification of his name as the sender. Effectively immediately, legal mail from this Court will include the following notation on the envelope: "LEGAL MAIL SENT BY RORY L. PERRY II, CLERK OF THE USDC-SDWV – OPEN ONLY IN THE PRESENCE OF THE INMATE." In addition, the return address section of the envelope will continue to indicate the "Clerk, United States District Court" as the sender with the Court's return address and the envelope embossed as being used for official business. The Court believes the foregoing should satisfy BOP policy. The undersigned, therefore, finds that Plaintiff's above Motion (Document No. 8) should be denied. To the extent Plaintiff's legal mail from this Court continues to be opened outside his presence (after the above modification), Plaintiff is strongly encouraged to file another motion with this Court and a hearing will be conducted forthwith to address the issue.

(Document No. 34.)

On April 13, 2020, Plaintiff filed a "Motion Requesting to Amend Complaint." (Document No. 35.) In his Motion, Plaintiff requests permission to amend his complaint to include his allegations in "numbered form" and to correctly identify the names of Defendants. (Id.) Plaintiff states that due to "false information," he provided in "wrong names of Defendants" in his prior Amended Complaint. (Id.) As Exhibits, Plaintiff attached the following: (1) A copy of his Proposed Amended Complaint (Document No. 35-1); and (2) A copy of his Declaration (Document Nos. 35-2 and 35-3). By Order entered on April 14, 2020, the undersigned granted Plaintiff's "Motion

4

Requesting to Amend Complaint." (Document No. 36.) The undersigned directed the Clerk to docket Plaintiff's Proposed Amended Complaint (Document No. 35-1) as a new docket entry entitled "Second Amended Complaint" and docket his Declaration (Document Nos. 35-2 and 35-3) as an attachment to his Second Amended Complaint. (Id.) The undersigned further directed the Clerk to modify the docket sheet to reflect the defendants as identified in Plaintiff's Second Amended Complaint. (Id.) Specifically, the undersigned noted that docket sheet should reflect the following as Defendants: (1) C. Maruka, Warden; (2) R. Malone, Counselor, Unit B-4; (3) D. Pilant, Unit Manager, B-Unit; (4) F. Saunders, Special Housing Unit Lieutenant; (5) W. Kendrick, Correctional Officer; (6) A. Shrader, Inmate Trust Services Supervisor; (7) S. Wyatt, Nurse; (8) G. Walters, Nurse; (9) C. Carothers, Physician Assistant; (10) K. Thompson, Health Services Administrator; (11) S. Cook, Corrections Officer; (12) D. Rich, Associate Warden; (13) V. Phillips, Counselor; (14) R. Alexander, Nurse; (15) D. Munn, Captain; (16) J. Green, Mailroom Supervisor; (17) C. Horton, SIS Lieutenant; (18) K. Marsh, Human Resources; (19) John Doe #1, Correctional Officer;[2] (20) John Doe #2, Correctional Officer; and (21) John Doe #3, Supervisor of Dental. (Id.) Finally, the undersigned ordered the Clerk to issue process by preparing and serving a Summons and a copy of Plaintiff's Second Amended Complaint and Declaration upon Defendants as specified in Rule 4 of the Federal Rules of Civil Procedure. (Id.)

On April 17, 2020, Plaintiff filed a Motion for Temporary Restraining Order. (Document

---

[2] It is Plaintiff's responsibility, and not the duty of the Court, to ascertain the identities and addresses of those individuals whom Plaintiff believes caused him injury. Services of process cannot be effectuated on "John Doe" defendants and Plaintiff has failed to adequately identify those individuals so that service can be attempted. Accordingly, the undersigned **RECOMMENDS** that all John Doe defendants be dismissed without prejudice.

No. 39.) Specifically, Plaintiff alleges that he was being transferred to a different prison and he believes it is due to retaliation by Defendants. (Id.) Plaintiff requests that this Court "intervene." (Id.)

On April 20, 2020, Plaintiff filed a Motion Requesting Censure and Monetary Award Against Defendants for Systemic Interference with Legal Mail. (Document No. 41.) Plaintiff complains that on April 16, 2020, a FCI McDowell staff member "brought to Plaintiff's door the order filed by this Court on 4-13-20, which was delivered already opened even with the name 'Legal Mail Sent By Rory L. Perry, II, Clerk of the USDC-SDWV-Open only in Presence of Inmate.'" (Id.) Plaintiff complains that the opening and reading of his legal mail caused staff to use "every obstacle that could be used to deny access to the courts, delay and hinder Plaintiff's claims." (Id.) Therefore, Plaintiff "asks the court for redress" concerning the interference of his mail and interference by FCI McDowell staff regarding the prosecution of his above case. (Id.)

On April 24, 2020, Defendants filed a Response in Opposition to Plaintiff's Motion for Temporary Restraining Order. (Document No. 42.) Plaintiff filed his Reply on May 1, 2020. (Document No. 64.)

On July 1, 2020, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 72 and 73.) Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 73, pp. 10 – 15.); (2) Plaintiff's allegations are not cognizable under Bivens (Id., pp. 15 – 26.); (3) Dismissal of the Complaint pursuant to Rule 8 is appropriate (Id., pp. 27 – 28.); (4) Plaintiff has no constitutional right to file administrative remedies (Id., p. 28.); (5) Plaintiff fails to plead with specificity any actual injury related to the

alleged mishandling of his legal mail (Id., p. 29.); (6) Plaintiff's complaint fails to state a claim of excessive force (Id., pp. 30 – 31.); (7) "Plaintiff's allegation that he was wrongfully placed in SHU fails to amount to a constitutional violation since an inmate has no liberty interest in avoiding confinement in administrative segregation" (Id., pp. 31 – 32.); (8) Plaintiff's claim that he was wrongfully denied visitation is without merit (Id., pp. 32 – 33.); (9) Plaintiff's retaliation claim is without merit (Id., pp. 33 – 34.); (10) Plaintiff's discrimination claim against all Defendants are insufficient on their face and must be dismissed (Id., p. 35.); (11) There is a lack of personal involvement of Defendants Maruka, Rich, Munn, Pilant, Marsh, and Thomson (Id., pp. 35 – 37.); (12) Plaintiff's claim against Defendants in their official capacities is improper (Id., pp. 37 – 38.); (13) Plaintiff has failed to establish deliberate indifference to his medical needs (Id., pp. 38 – 47.); and (14) Defendants are entitled to qualified immunity (Id., pp. 48 – 49.).

As Exhibits, Defendants attach the following: (1) The Declaration of Robert Malone (Document No. 72-1, pp. 2 – 5.) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., p. 7.); (3) A copy of Plaintiff's Inmate History - Correctional Counselor (Id., p. 9.); (4) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" (Id., pp. 11 – 20.); (5) A copy of Plaintiff's Visitor List (Id., p. 22.); (6) The Declaration of Richard Smith (Document No. 72-2, pp. 2 – 7.); (7) A copy of Program Statement 5270.11, Special Housing Units (Id., pp. 9 – 26.); (8) A copy of Plaintiff's "Inmate History Quarters" (Id., p. 28.); (9) A copy of Staff Memos (Id., pp. 30 – 38.); (10) A copy of Plaintiff's Threat Assessment (Id., pp. 40 – 43.); (11) A copy of Plaintiff's Inmate Disciplinary History (Id., pp. 45 – 49.); (12) The Declaration of Kevin Thompson (Document No. 72-3, pp. 2 – 7.); (13) A copy of relevant pages from FCI McDowell's "Inmate Admissions & Orientation Handbook" (Id., pp. 9 – 17.); and (14) A copy of Plaintiff's relevant

medical records (<u>Id.</u>, pp. 19 – 54.).

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 2, 2020, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 74.) On August 30, 2020, following the granting of an extension of time, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document Nos. 82 and 82-1.)

## Summary of Medical Records

A review of Plaintiff's medical records reveals that after Plaintiff arrived at FCI McDowell, an intake medical screening was conducted on July 23, 2019. (Document No. 72-3, pp. 19 – 23.) During the screening, Plaintiff informed Defendant Alexander that he had a history of seizures. (<u>Id.</u>) Plaintiff advised that the seizures were sporadic and there were no real triggers. (<u>Id.</u>) Plaintiff claimed that he had experienced several small seizures during the year, but he did not report those to medical. (<u>Id.</u>) Plaintiff reported more than one seizure a year, but less than one a month. (<u>Id.</u>) Plaintiff stated that he was not currently on medications for his seizures. (<u>Id.</u>) Plaintiff also reported that he had a fractured right temporal lobe and fractured neck spinal process from a fight that occurred in prison in July 2007. (<u>Id.</u>) Defendant Alexander renewed Plaintiff's prescriptions for Ibuprofen 800 mg and Triamcinolone. (<u>Id.</u>) Finally, Defendant Alexander instructed Plaintiff on how to obtain medical, dental, and mental health care. (<u>Id.</u>) On August 19, 2019, Plaintiff was seen in medical for a chronic care visit. (<u>Id.</u>, pp. 24 - 25.) Medical issues unrelated to his seizures were addressed. (<u>Id.</u>) Plaintiff failed to complain of seizures or request treatment for such. (<u>Id.</u>)

On September 24, 2019, Plaintiff was seen by Defendant Alexander at the SHU. (<u>Id.</u>, pp.

26 - 27.) Plaintiff reported that he had experienced a seizure the previous night (September 23, 2019) and denied any drug use. (Id., pp. 26 - 27.) Plaintiff also denied any injuries. (Id.) Defendant Alexander noted that the Lieutenant's Report of the incident stated as follows:

> On September 23, 2019, at 7:23 p.m., a medical emergency was announced in the B-4 housing unit. Specifically, [Plaintiff] was incoherent and rolling on the floor in cell 229 with a homemade smoking pipe in his hand. [Plaintiff] was placed on a medical gurney and escorted from the unit without further incident.

(Id.) Upon examination of Plaintiff, medical staff noted that Plaintiff did not appear to be in distress and no injuries or complaints were noted. (Id.) Plaintiff was advised to follow-up at sick call as needed. (Id.)

On October 29, 2019, Plaintiff was evaluated by Defendant Walters following suspected narcotic use. (Id., pp. 28 - 29.) Plaintiff denied injury. (Id.) Plaintiff was examined by Defendant Walters, who noted no significant findings or apparent distress. (Id.) Defendant Walters instructed Plaintiff to follow-up at sick call as needed. (Id.) On December 5, 2019, Plaintiff was evaluated by Defendant Walters prior to his placement in SHU. (Id., pp. 30 - 32.) Plaintiff reported no injury or pain. (Id.) Plaintiff was examined by Defendant Walters, who noted Plaintiff was alert and oriented, there was no apparent distress, Plaintiff denied any fights/altercations/injuries, and he was ambulatory without difficult. (Id.) Defendant Walters informed Plaintiff of SHU sick call protocol. (Id.) On December 9, 2019, Plaintiff was the subject of an emergency medical call after an officer observed Plaintiff "fall down and hit his head on a bunk." (Id., pp. 33 - 34.) Defendant Carothers responded to the emergency, and upon arrival, she noted a strong smell of smoke in Plaintiff's cell. (Id.) Defendant Carothers noted that Plaintiff was lying on the cell floor unresponsive to verbal commands, but breathing. (Id.) Defendant Carothers immediately placed a c-collar on Plaintiff. (Id.) Defendant Carothers noted that while the backboard for transport was

being retrieved, Plaintiff became "combative, kicking and trying to bite staff." (Id.) Once Plaintiff

was transported to medical, Defendant Carothers noted that Plaintiff responded to a sternal rub by

opening his eyes and was eventually able to say his first name. (Id.) Defendant Carothers noted

that, it was believed that Plaintiff as suffering from the toxic effects of ingesting an unknown

substance and a suspected drug overdose. (Id.) Defendant Carothers arranged for Plaintiff to be

transported to the Emergency Room ("ER") for further evaluation. (Id.) Plaintiff was returned to

FCI McDowell the next day and a medical trip return encounter was performed by Defendant

Alexander. (Id., pp. 35 - 36.) Defendant Alexander examined Plaintiff and noted no significant

findings and not apparent distress. (Id.) Plaintiff noted no problems, and Defendant Alexander

noted no new orders from the ER. (Id.)

On January 1, 2020, Plaintiff was transported to medical after staff observed Plaintiff in

the floor shaking his arms. (Id., pp. 37 - 40.) When Plaintiff was transported to medical, it was

noted that a narcotic overdose was suspected. (Id.) Plaintiff was examined by Defendant Wyatt,

who noted no pin-point pupils but Plaintiff's pupils had a sluggish response to light. (Id.)

Defendant Wyatt administrated a dose of Narcan to counteract the potential effects of an overdose.

(Id.) After the Narcan was administrated, Plaintiff became more aware and was able to speak some.

(Id.) Plaintiff stated that he had a seizure and that medical staff did not believe him. (Id.) After

that, Defendant Wyatt noted that Plaintiff would only look at the nurse in response to verbal

stimuli, and he would not talk or answer questions. (Id.) Plaintiff was transported by ambulance to

the hospital for further evaluation. (Id.) Plaintiff was returned to FCI McDowell, and a medical

trip return encounter was performed by Defendant Wyatt on January 6, 2020. (Id., pp. 41 - 43.)

Defendant Wyatt indicated "this is a late note for this inmate for return from Welch Hospital."

(Id.) Plaintiff reported that he was experiencing throbbing lower back pain, and he rated his pain as a 10. (Id.) Plaintiff stated that he was unsure when the pain started, but it had been approximately 3 – 5 days. (Id.) Plaintiff showed medical staff a bruise on his hip and thigh. (Id.) Plaintiff stated that the bruises were from a seizure. (Id.) Defendant Wyatt examined Plaintiff and notified the PA that Plaintiff was complaining of lower back pain from a seizure. (Id.) Plaintiff was prescribed Ibuprofen 800 mgs for his back pain and instructed to take one 800 mg tablet every eight hours for five days. (Id.) Defendant Wyatt instructed Plaintiff to return to medical if his condition worsened or did not improve. (Id.) Defendant Wyatt further noted that the ER recommended that Plaintiff follow-up with neurology. (Id.)

On January 29, 2020, Plaintiff was evaluated by Dr. Dankwa during his chronic care visit. (Id., pp. 45 - 47.) Dr. Dankwa addressed Plaintiff neurological concerns and an unrelated medical issue. (Id.) Specifically, it was noted that Plaintiff had a history of seizures and that he had previously been on medication (Oxcarbazepine) for the issue. (Id.) Dr. Dankwa noted that Plaintiff had recently been sent to the "ER for altered mental status with recommendations to start Keppra and follow-up with neurology." (Id.) Dr. Dankwa noted that a "neuro consult has already been placed." (Id.) Plaintiff denied any seizure activity since his return from the ER. (Id.) Plaintiff also denied any pain. (Id.) Dr. Dankwa prescribed Oxcarbazepine to address Plaintiff's complaints of seizures. (Id.) It was noted that it was unclear whether Plaintiff had a "true seizure," but a trial of Oxcarbazepine would be administrated while awaiting a neurology referral. (Id.)

**THE STANDARD**

**Motion to Dismiss**

***Rule 12(b)(1) Motion:***

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995). Unlike a Rule 12(b)(6) motion, "a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." Thigpen v. United States, 800 F.2d 393, 396 (4th Cir. 1986)(overruled on other grounds by, Sheridan v. United States, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988)). The Fourth Circuit has explained the standard of review as follows:

> [W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdiction facts. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous.

Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

*Rule 12(b)(6) Motion:*

A Rule 12(b)(6) motion requests dismissal for failure to state a claim upon which relief can be granted and tests the legal sufficiency of the complaint or pleading. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); <u>also see</u> <u>Goode v. Central Va. Legal Aide Society, Inc.</u>, 807 F.3d 619 (4th Cir. 2015).

## Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts

presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1. **Motion for Temporary Restraining Order:**

On April 17, 2020, Plaintiff filed a Motion for Temporary Restraining Order. (Document No. 39.) Specifically, Plaintiff alleges that he was being transferred to a different prison and he believed it was due to retaliation by Defendants. (<u>Id.</u>) Plaintiff requests that this Court "intervene." (<u>Id.</u>) On April 24, 2020, Defendants filed a Response in Opposition to Plaintiff's Motion for Temporary Restraining Order. (Document No. 42.) On May 1, 2020, Plaintiff filed his Reply clarifying that he was "not asking this Court to dictate which prison he is transferred, only that he is transferred within his own release address region." (Document No. 64.) The record reveals that Plaintiff was released from custody on July 9, 2020. (Document No. 75.) The undersigned, therefore, respectfully recommends that Plaintiff's Motion for Temporary Restraining Order

(Document No. 39) be denied as moot.

**2.**    **Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment:**

    **A.**    **Claims Against Defendants in their Official Capacities:**

In their Motion, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff names them as defendants in their official capacities. (Document No. 72 and Document No. 73, pp. 37 – 38.) Defendants explain that the United States "has not waived its sovereign immunity for constitutional torts asserted against federal agencies or the directors of those agencies in their official capacity." (Document No. 73, p. 38.) Therefore, Defendants argue that Plaintiff's Bivens claims against Defendants in their official capacities must be dismissed. (Id.) In Response, Plaintiff appears to assert there is a cause of action against Defendants in their individual capacities. (Document No. 82, p. 6.) Thus, Plaintiff requests that the action proceed as to Defendants their individual capacities. (Id.)

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged

injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reingold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

Based upon the foregoing, the undersigned finds that Plaintiff's <u>Bivens</u> action against Defendants in their official capacities should be dismissed. As stated above, <u>Bivens</u> claims are not actionable against defendants acting their official capacities. <u>See Meyer</u>, 510 U.S. at 485; <u>also see Doe v. Chao</u>, 306 F.3d 170 (4th Cir. 2002)("[A] *Bivens* action does not lie against either agencies or officials in their official capacities"). Accordingly, the undersigned respectfully recommends that the Defendants' Motion (Document No. 72) be granted as to Plaintiff's claim against Defendants in their official capacities.

### B.    Failure to Exhaust:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes

where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA

requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that

"[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes

about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Amended Complaint, Plaintiff alleges that he had been denied grievance forms from "August 2019 to present, 1-26-2020." (Document No. 37, pp. 12 - 13.) Plaintiff explains that he began requesting grievances forms from Counselor Malone in September 2019, but "he made excuses such as 'I do not have any with me, I'll bring them next time.'" (Id.) Plaintiff states that Counselor Malone never brought the forms. (Id.) Plaintiff further explains that while Plaintiff was in the SHU, he only saw Counselor Malone "3 or 4 times and he always said the same thing, that he did not have the forms with him." (Id.) Plaintiff alleges that when he requested the forms from other staff members, he was always told that "you have to get them from your counselor, R. Malone." (Id.) Finally, Plaintiff contends that Counselor Malone was placed on extended leave in October 2019, and "I have not seen him since." (Id.) Plaintiff states that he then requested forms from Unit Manager Pilant, C1 Counselor Phillips, "every institutional duty officer," and "other unit team members." (Id.) Plaintiff alleges that each denied the forms stating that "you have to get them from your counselor." (Id.) Therefore, Plaintiff alleges that the administrative remedy process was rendered unavailable. (Id.)

In their Motion, Defendants argue that Plaintiff filed to exhaust his available administrative remedies. (Document No. 72 and Document No. 73, pp. 10 - 13.) Defendants explain that during

Plaintiff's incarceration at FCI McDowell, Plaintiff "filed or attempted to file only one administrative remedy." (Document No. 73, p. 13.) Specifically, Defendants acknowledge that Plaintiff filed an administrative remedy with the Central Office on August 8, 2019, challenging the findings of the Discipline Hearing Officer concerning an incident report he received at FCI Talladega. (Id.) Defendants noted that a response was provided to Plaintiff and the remedy was closed on September 30, 2019. (Id.) Defendants assert that Plaintiff filed no other administrative remedies while incarcerated at FCI McDowell. (Id.) Although Defendants acknowledge that Plaintiff attempts to excuse his failure to exhaust by asserting that staff refused to provide necessary forms, Defendants argue that "Plaintiff was able to file an administrative remedy while at FCI McDowell." (Id.) Defendants further contend that "Plaintiff's Correctional Counselor conducted regular rounds in SHU during the time frame addressed in his Complaint, and Counselor Malone provided administrative remedy forms as requested to Plaintiff." (Id.) In support, Defendants attach the Declaration of Robert Malone. (Document No. 72-1, pp. 2 – 5.) Mr. Malone declares, in pertinent part, as follows:

17.    During the time Plaintiff has been designated to FCI McDowell, he has filed or attempted to file only one administrative remedy.

18.    Plaintiff filed Remedy ID No. 980859-A1 at the Central Office level on August 8, 2019, in which Plaintiff challenged the findings in a Discipline Hearing Office ("DHO") hearing related to an incident report he received at FCI Talladega. This remedy was closed and a response provided on September 30, 2019.

19.    Plaintiff filed no other administrative remedies while incarcerated at FCI McDowell.

20.    Plaintiff failed to exhaust administrative remedies in relation to any of the allegations in his Complaint.

21.    As a Correctional Counselor, I performed regular rounds in SHU,

22

> and there was not a time that Plaintiff requested administrative
> remedy forms that I did not provide them to him as requested.

(Id., p. 4.) Thus, Defendants argue that "Plaintiff's bald assertion that he was denied access to the administrative remedy program is not supported by any evidence, and Plaintiff should not be excused from the exhaustion requirements." (Id.)

In Response, Plaintiff argues that "Defendants have asserted this 'failure to exhaust' defense, after denying Plaintiff the requisite forms." (Document No. 82, p. 1.) Plaintiff asserts that Defendants "fail to mention that by denying the grievance forms they were in fact denying the remedy." (Id., p. 2.) Plaintiff states he "did everything he could to exhaust his administrative remedies, yet was repeatedly denied those requisite grievance forms by the Defendants." (Id., p. 4.) Plaintiff states that "R. Malone never provided Plaintiff forms though they were requested dozens of times." (Id., p. 6.) Plaintiff explains that "R. Malone fails to mention that due to his being on 'extended leave,' for approximately six months due to an internal investigation regarding failure to provide grievance forms, retaliatory, and inappropriate behavior." (Id.) Plaintiff states that "[d]uring this time he was on that extended leave, Plaintiff did not see him in SHU at all." (Id.) Plaintiff further contends that "[n]o other Counselor was assigned to Plaintiff and he was repeatedly denied the grievance forms by all the other Defendants he requested them from." (Id.) In support, Plaintiff filed an Affidavit stating, in pertinent part, as follows:

> In the middle of August, I began asking for grievance forms from Counselor
> Malone. He repeatedly made up excuses ranging from, he "was out of them
> (grievance forms), and was waiting on a re-supply," to "he did not have time, but
> would give the (grievance forms) to me next time." I then complained to Counselor
> Malone's manager, Mr. Pilant. I made complaints to Mr. Phillips, Lieutenant
> Saunders, HAS Mr. Thompson, Officer Kendrick, Systems Specialist Mr. Green,
> Trust Fund Supervisor Mr. Shrader, AW Mr. Rich, HR Specialist Mrs. Marsh,
> Captain Munn, and Warden C. Maruka. None of the Defendants made any attempts
> to help me. Instead, they repeatedly advised me that I "had to get the grievance

forms from Counselor Malone," despite common knowledge throughout the inmate population, and with staff, that R. Malone was on investigative extended leave for almost six months. I could get no one to provide the needed forms.

(Document No. 82-1, p. 2.)

Viewing the evidence in a light most favorable to Plaintiff, the undersigned cannot find that Plaintiff failed to exhaust all available administrative remedies. In his Second Amended Complaint, Plaintiff alleges that prison staff at FCI McDowell rendered the administrative remedy process unavailable by failing to provide him with appropriate forms from August 2019 until the date he prepared his initial Complaint (January 26, 2020). (Document No. 37.) Plaintiff further explains his attempts to obtain forms, identifies those BOP staff members he requested forms from, and the staff members' responses. (Id.) In his Response, Plaintiff continues to assert the same allegations and files his Affidavit in support declaring that grievances forms were denied to him on multiple occasions. (Document Nos. 82 and 82-1.) Although Defendants provide evidence that Plaintiff filed one administrative remedy while incarcerated at FCI McDowell, this remedy was filed on August 8, 2019. Evidence that Plaintiff successfully filed an administrative remedy in early August 2019, is insufficient to refute the specific allegations contained in Plaintiff's verified Amended Complaint, sworn Response in Opposition, and Affidavit. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purpose, when the allegations contained therein are based on personal knowledge.")(emphasis in original)(citing Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979)). Thus, the undersigned cannot conclude that Plaintiff's allegations that the administrative remedy process was render unavailable by the denial of form is belied by the evidence. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the

24

administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period). Furthermore, the undersigned disagrees with Defendants' argument that Plaintiff has only made a "bald assertion that he was denied access to the administrative remedy program." (Id.) As stated above, Plaintiff has made sworn detailed statements concerning the denial of grievance forms by specific staff members and it is undisputed that no administrative remedies were filed at the institutional level by Plaintiff while he was incarcerated at FCI McDowell. See Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(finding inmate's unsupported allegation that prison staff had a practice of destroying or misplacing grievances was insufficient to prove unavailability of the grievance procedure); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed); McMillian v. N.C. Central Prison, 2013 WL 1146670, * 5 (E.D.N.C. March 19, 2013)(An inmate's allegations that grievances were not accepted by staff, "without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd, 534 Fed.Appx. 221 (4th Cir. 2013). The one administrative remedy filed by Plaintiff during his incarceration at FCI McDowell was submitted to the Central Office regarding an incident that occurred at a different institution (FCI Talladega). Based upon the foregoing, the undersigned cannot conclude that Plaintiff failed to exhaust his *available* administrative remedies.[4]

---

[4] In Footnote 5, counsel appears to misrepresent the findings in *Hancock v. Richards, et al.*, 1:18-cv-00024 (S.D.W.Va. March 30, 2020)(J. Faber). (Document No. 73, p. 13.) Defendants argue that the Court found it relevant that plaintiff, "while claiming to be unable to file administrative

Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72) be denied based upon his failure to exhaust.

### B.     Disability Discrimination Claim Unexhausted:

In their Motion, Defendants argue that Plaintiff failed to exhaust his disability discrimination claim pursuant to the Department of Justice ("DOJ") procedures. (Document No. 72 and Document No. 73, pp. 13 – 15.) In his Response, Plaintiff merely argues that "Defendants knew of his disability and were repeatedly reminded of the well-documented disability [and] they treated him much differently than similarly affected inmates, without sanctions or legal reason." (Document No. 82, p. 3.)

The compliance procedures of 28 C.F.R. § 39.170 applies "to all allegations of discrimination on the basis of a handicap in programs or activities conducted by the" DOJ or Bureau of Prisons ("BOP"). 28 C.F.R. §§ 39.170(a)-(b). These procedures expressly apply to inmates and explain when/how to file a complaint. Id., §§ 39.170(d)(1), (3), and (4). The regulations specifically describe the administrative process concerning the acceptance of the complaint and procedures for investigation/conciliation. Id., §§ 39.170(f) and (g). If the parties cannot reach an "informal resolution of the complaint," the Director of Equal Employment Opportunity for the Department of Justice or his or her designee must notify the complainant and

---

remedies in SHU, was still able to institute a civil action and file documents received by the Court in association with that case." (Id.) Thus, Defendants represent that the "Court found that this demonstrated he was not unable to file an administrative claim in SHU." (Id.) The foregoing findings, however, related solely to Plaintiff's failure to exhaust his administrative claim under the FTCA. Similar to the above case, the Court denied defendants' motion requesting dismissal of Plaintiff's Bivens claim for failure to exhaust.

respondent of the results of the investigation within 180 days of receipt of the complaint. Id., § 39.170(h) and 39.103. If either party is dissatisfied, that party may file an appeal to the Complaint Adjudication Officer, who is appointed by the Assistant Attorney General for the Civil Rights Division. Id., § 39.170(i) and 39.103. If an appeal is filed, the Director of Equal Employment Opportunity for the Department of Justice or his or her designee must accept and process the appeal. Id., § 39.170(j) and 39.103. Upon a timely request for a hearing, the Director of Equal Employment Opportunity for the Department of Justice or his or her designee "shall appoint an administrative law judge to conduct the hearing." Id., § 39.170(k)(1) and 39.103. The administrative law judge ("ALJ") will then conduct a hearing as detailed in Section 39.170(k). "The hearing, decision, and any administrative review thereof shall be conducted in conformity with 5 U.S.C. 554-557 (Sections 5 – 8 of the Administrative Procedure Act)." Id., § 39.170(k)(3). After the hearing, the ALJ must "submit in writing recommended findings of fact, conclusions of law, and remedies to all parties and the Complaint Adjudication Officer within 30 days after receipt of the hearing transcripts, or within 30 days after the conclusion of the hearing if no transcript is made." Id., § 39.170(k)(6). The Complaint Adjudication Officer will then make the agency decision. Id., § 39.170(1).

Before an inmate may seek judicial review of a disability discrimination claim, the inmate must exhaust the DOJ's administrative remedy process as set forth in 28 C.F.R. § 39.170. See O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1061-63 (9th Cir. 2007)(finding that DOJ procedures outlined in 28 C.F.R. § 39.170 must also be exhausted for a disability discrimination claim); Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001)(affirming the dismissal of an inmate's disability discrimination claim for failure to exhaust); Peppers v. Moubarke, 2020 WL

5759763, * 9 (D.Md. Sept. 25, 2020(finding that "[i]nmates complaining of discrimination on the basis of a handicap in programs or activates conducted by the [DOJ] shall file a complaint with the Director for the EEO."); <u>Washington v. Federal Bureau of Prisons</u>, 2019 WL 2125246, * 7 – 8 (D.S.C. Jan. 3, 2019)(finding inmate failed to exhaust his disability discrimination claim where he did not exhaust pursuant to 28 C.F.R. 39.170); <u>Turner v. Lanford</u>, 2018 WL 8050530, * 6 (C.D.Cal. Sept. 21, 2018)(dismissing inmate's disability discrimination claim where inmate failed to exhaust his administrative remedies under 28 C.F.R. § 39.170); <u>Elliott v. Wilson</u>, 2017 WL 1185213, * 14 (D.Minn. Jan. 17, 2017)(finding inmate was required to exhaust the DOJ's administrative process concerning his disability discrimination claim); <u>Collins v. LeMaster</u>, 2016 WL 675675, * 10 (S.D.W.Va. Jan. 25, 2016)(the PLRA requires exhaustion of claims under the Rehabilitation Act); <u>Zoukix v. Wilson</u>, 2015 WL 4064682, * 10 (E.D.Va. July 2, 2015)(noting that Section 39.170 gives correctional officials the opportunity to address claim that they are not complying with the Rehabilitation Act before being hauled into federal court and this "process is mandatory for prisoners under the PLRA"); <u>Cooke v. U.S. Bureau of Prisons</u>, 926 F.Supp.2d 720, 732-34 (E.D.N.C. Feb. 27, 2013)(finding that inmates must exhaust the administrative remedies in 28 C.R.F. § 39.170); <u>Brown v. Cantrell</u>, 2012 WL 4050300, * 2 – 4 (D.Colo. Sept. 14, 2012)("The Court concludes that the PLRA's requirement that plaintiff exhaust all 'available' remedies requires federal inmates alleging disability discrimination to take advantage of § 39.170, which is 'available.'"); <u>Haley v. Haynes</u>, 2012 WL 112946, * 1 (S.D.Ga. Jan. 12, 2012)("Requiring that an inmate seeking relief based on alleged violation of the ADA and [Rehabilitation Act] in correctional facilities file an administrative complaint with the [DOJ] is not a burden – it is only a procedural step which must occur before bringing a cause of action in federal court."); <u>William G.</u>

28

v. Pataki, 2005 WL 1949509, * 5 (S.D.N.Y. Aug. 12, 2005)("Exhaustion of the DOJ procedures would also serve the same goals that the PLRA was enacted to achieve."); Burgess v. Goord, 1999 WL 33458, * 7 n. 6 (S.D.N.Y. Jan. 26, 1999)(noting that inmate's discrimination claim would also be dismissed based upon his failure to exhaust the administrative remedies promulgated by the DOJ); Crowder v. True, 1993 WL 532455, * 5 (N.D.Ill. Dec. 21, 1993)(finding that an inmate's failure to exhaust under 28 C.F.R. § 39.170 is "fatal" to his discrimination claim). In the instant case, Plaintiff does not dispute that he failed to exhaust the DOJ's administrative remedy process concerning his disability discrimination claims. (Document No. 82.) Additionally, there is no allegation or indication that the DOJ's administrative remedy process was rendered unavailable to Plaintiff. See Cooke, 926 F.Supp.2d at 734("[T]here is nothing inconsistent about rejecting defendants' exhaustion argument under the PLRA, but requiring exhaustion under 28 C.F.R. § 39.170."); Hancock v. Richards, et al., 1:18-cv-00024 (S.D.W.Va. March 30, 2020)(J. Faber)(Finding that even if plaintiff was unable to obtain necessary forms to exhaust BOP administrative remedy procedure, plaintiff could have filed an administrative claim under the FTCA). Therefore, the undersigned respectfully recommends that Plaintiff's disability discrimination claims be dismissed based upon his failure to exhaust administrative remedies pursuant to 28 C.F.R. § 39.170.

### C.    Claims Regarding Access to Administrative Remedies and Visitation:

In their Motion, Defendants argue that the above claims should be dismissed because Plaintiff does not have a constitutional right to file administrative remedies or to visitation privileges. (Document No. 72 and Document No. 73, pp. 28 and 32.) In is Response, Plaintiff clarifies that he is not asserting that the "denial of administrative remedy forms, access to the

grievance procedures, or denial of visitation privileges" are constitutional violations. (Document No. 82, p. 1.) Plaintiff states that he is claiming that the denial of such as retaliation constitutes a constitutional violation. (Id.) Accordingly, the undersigned respectfully recommends that Defendants' Motion (Document No. 72) be granted as to the above claims.

### D.    Placement in the SHU is not a constitutional violation.

Plaintiff argues that his placement in the SHU violated his constitutional rights. (Document No. 37.) In their Motion, Defendants argue that Plaintiff has failed to establish a constitutional violation. (Document No. 72 and Document No. 73, pp. 31 – 32.) In Response, Plaintiff merely argues that he was improperly placed in the SHU "due to no fault of his own." (Document No. 82, p. 4.)

To the extent Plaintiff contends that his placement in segregation resulted in cruel and unusual punishment prohibited under the Eighth Amendment, the undersigned finds his claim to be without merit. The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), cert. denied, Mickle v. Moore, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." Sweet v. South Carolina Dep't of Corrections], 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney , 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); see Sweet, 529 F.2d at 861-62. ***Depression and

30

anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickland [v. Walters], 989 F.2d at 1381; see Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. The record reveals Plaintiff was placed in the SHU during the following periods of time: (1) From September 23, 2019 through October 9, 2019; (2) October 28, 2019 through November 27, 2019; (3) December 9, 2019 through December 31, 2019; and (4) December 31, 2019 through July 1, 2020. (Document No. 73, p. 4.) The record reveals that Plaintiff was returned to the SHU on December 31, 2019, for his protection.[5] (Id., fn. 3.) The undersigned notes that the majority of Plaintiff's placements in segregation was for a short, specific period of time. Although Plaintiff may have been inconvenienced in a number of ways as a result of his placement in segregation, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

To the extent Plaintiff alleges that he due process rights were violated by his placement in the SHU, the undersigned finds his claim to be without merit. To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564,

_____

[5] Richard Smith, Special Investigative Services Lieutenant at FCI McDowell, declares that he had several reports from other inmates that Plaintiff purchased K2, "smoked K2 every day," and was a known drug user. (Document No. 72-2, p. 4.) Inmates interviewed indicated that Plaintiff should not be released to the general population because "inmates don't want him out due to his drug use" and "someone will take care of the situation because we don't want to deal with it anymore." (Id.)

570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

Applying the principles set forth in Sandin, the undersigned finds Plaintiff's placement in segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for his placement in segregation, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship.[6] Segregation, in and of itself, does not deprive an

---

[6] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

...cells were infested with vermin; were smeared with human feces and urine;

inmate of a liberty interest or create an atypical hardship. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), overruled in part by Sandin, 515 U.S. 482-83, 115 S.Ct. 2293; Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest); and Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994)(citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976))(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. Accordingly, the undersigned respectfully recommends that Defendants' Motion (Document No. 72) be granted as to the above claim.

---

and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

E.    **Extension of <u>Bivens</u>:**

Plaintiff alleges that Defendants violated his following constitutional rights: (1) Defendants violated his First Amendment rights by retaliating against Plaintiff for pursuing his administrative remedies;[7] (2) Defendants violated his First Amendment rights by opening his "legal mail;" (3) Defendants violated his Eighth Amendment rights by denying him adequate medical and dental care; and (4) Defendants violated his Eighth Amendment rights by using excessive force. In their Motion, Defendants argue that <u>Bivens</u> liability has not been extended to Plaintiff's above First and Eighth Amendment claims. (Document Nos 72 and 73. 84, pp. 15 – 26.) Defendants contend that Plaintiff's claim fails under <u>Ziglar v. Abbasi</u>. (<u>Id.</u>) Defendants note that the United States Supreme Court has only approved a <u>Bivens</u> cause of action in three cases – <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>. (<u>Id.</u>) Defendants argue that Plaintiff's First and Eighth Amendment claims "simply bear no resemblance to the three recognized <u>Bivens</u> causes of action." (<u>Id.</u>) Defendants concluded that since Plaintiff's claims constitute a "new context" and other avenues for relief and special factors counsel against creating a damages remedy, Plaintiff's claims fail as a matter of law. (<u>Id.</u>) In his Response, Plaintiff fails to address the above issue. (Document No. 82.)

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). <u>Bivens</u> core premise is to deter individual officers' unconstitutional acts. <u>Correctional Services Corp v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend <u>Bivens</u>

---

[7] In is Response, Plaintiff clarifies that he is not asserting that the "denial of administrative remedy forms, access to the grievance procedures, or denial of visitation privileges" are constitutional violations. (Document No. 82, p. 1.) Plaintiff states that he is claiming that the denial of such as retaliation constitutes a constitutional violation. (*Id.*)

to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend Bivens to permit suit against a federal agency); Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend Bivens to an Eighth Amendment claim against employees of a privately operated prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012)(declining to extend Bivens in a military context). In Abbasi, the Supreme Court made clear the very limited scope of Bivens actions and that "expanding the Bivens remedy is now a disfavored judicial activity." Ziglar v. Abbasi, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted Bivens claim is not one of the three Bivens-type actions previously recognized by the Supreme Court, closer scrutiny is required. Id. Specifically, the Court engages in a two-step inquiry when considering the above issue. Hernandez v. Mesa, ___ U.S. ___, 140 S.Ct. 735, 743, 206 L.Ed.2d 29 (2020). First, the Court considers "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" Id., citing Malesko, 534 U.S. at 68, 122 S.Ct. 515. If a claim arises in a "new context," the Court proceeds to the second step by considering "whether there are any 'special factors [that] counsel hesitation' about granting the extension." Id.

In Abbasi, the Supreme Court set out a framework for determining whether a claim presents a "new Bivens context." Abbasi, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a Bivens remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. Id. at 1854-55(citations omitted). The Supreme Court states that "our understanding of "new context" is broad. Hernanez, 140 S.Ct. at 743. The Abbasi Court explained that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60; also see Tun-Cos v. Perrotte, 922 F.3d 514 (4th Cir. 2019)(finding that a Fourth Amendment claim against ICE agents presented a new Bivens context because the officers operated under laws and polices unique to enforcement of immigration laws). In the instant case, Plaintiff alleges that his First and Eighth Amendment rights were violated by Defendants. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim.

36

### (i)    *Eighth Amendment Claims:*

The undersigned first considers whether Plaintiff's Eighth Amendment claims concerning deliberate difference to his medical/dental needs and excessive force constitute an improper extension of <u>Bivens</u>. First, the undersigned finds that Plaintiff's deliberate indifference claim clearly does not constitute "a new <u>Bivens</u> context." As stated above, the Supreme Court has recognized an implied right of action for an Eighth Amendment claim based on deliberate indifference to serious medical needs in <u>Carlson</u>. Thus, Plaintiff's Eighth Amendment claim alleging deliberate indifference is not an improper extension of <u>Bivens</u>. Second, the undersigned finds that Plaintiff's Eighth Amendment excessive force claim is not an improper extension of <u>Bivens</u>. In <u>Pumphrey v. Coakley</u>, 2018 WL 1359047 (S.D.W.Va. March 16, 2018)(J. Berger)(vacated on other grounds) and <u>Lineberry v. Johnson</u>, 2018 WL 4232907 (S.D.W.Va. Aug. 10, 2018), this Court considered and rejected the argument that a prisoner's Eighth Amendment excessive force claim was an improper extension of <u>Bivens</u>. For the same reasons set forth in <u>Pumphrey</u> and <u>Lineberry</u>, the undersigned finds that Plaintiff's Eighth Amendment excessive force claim is not an improper extension of <u>Bivens</u>. See <u>Williams v. Baker</u>, 2020 WL 5814109 (E.D.Cal. Sept. 14, 2020)(finding even though a prisoner's Eighth Amendment excessive force claim presented a new context, no factors counseled hesitation in expanding the *Bivens* remedy); <u>Clemmons v. United States</u>, 2018 WL 4959093 * 6 (D.S.C. Oct. 15, 2018)(considering the merits of Plaintiff's excessive force claim after finding that the Supreme Court recognized in *Ziglar*, that the Court had approved an implied damages remedy for claims arising under the Eighth Amendment). The undersigned, therefore, will consider the merits of Plaintiff's Eighth Amendment claims.

*(ii)*     ***First Amendment Claims:***

Next, the undersigned considers whether Plaintiff's First Amendment claims regarding retaliation and improper opening of mail presents "a new <u>Bivens</u> context." The Supreme Court has "never held that *Bivens* extends to First Amendment claims." <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that <u>Bivens</u> extends to First Amendment claims."); <u>also see</u> <u>Correctional Services Corporation v. Malesko</u>, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); <u>Bush v. Lucas</u>, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); <u>Leibelson v. Collins</u>, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that *Bivens* may be extended to First Amendment claims."). In <u>Ashcroft v. Iqbal</u>, the Supreme Court stressed that "we have declined to extend <u>Bivens</u> to a claim sounding in the First Amendment." <u>Iqbal</u>, 556 U.S. at 676, 129 S.Ct. at 1948. The <u>Iqbal</u> Court, however, noted that it assumed without deciding that respondent's First Amendment claim was actionable under <u>Bivens</u> because petitioners did not assert the above argument. <u>Id.</u>; <u>also see</u> <u>Wood v. Moss</u>, ___ U.S. ___, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014)("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. We do so again in this case."); <u>Reichle v. Howards</u>, 566 U.S. 658, 663, n. 4, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)("We have never held that *Bivens* extends to First Amendment claims"); <u>Dorsey v. United States</u>, 2020 WL 614240, * 2 (D.S.C. Feb. 10, 2020)(finding that Plaintiff's claim that his First, Sixth, and Fourteenth Amendments rights were violated when the prison staff improperly opened his legal mail outside his present does not support claims previously recognized under *Bivens*); <u>Scates v. Craddock</u>, 2019

38

WL 6462846, * 7 – 8 (N.D.W.Va. July 26, 2019)(finding that "Plaintiff's First Amendment claim arises in a new context for which the Supreme Court itself has not authorized *Bivens* liability"); White v. Inch, 2018 WL 6584899, * 1 (S.D.Ill. Dec. 14, 2018)(finding that it is "quite clear that the Supreme Court has not yet 'officially recognized' a First Amendment *Bivens* claim."); Clemmons v. United States, 2018 WL 4959093, * 2 (D.S.C. Oct. 15, 2018)("Congress and the courts have not expanded the *Bivens* remedy to include claims for denial of access to courts under the First Amendment."); Kirtman v. Helbig, 2018 WL 3611344, * 3 – 5(D.S.C. July 27, 2018)(examining a *Bivens* First Amendment claim and finding no justification for extending *Bivens* to address a First Amendment retaliation claim); Clinton v. Brown, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015)(finding that Plaintiff's allegation of a violation of his First Amendment right was an unrecognized claim under *Bivens*); Heap v. Carter, 2015 WL 3999077 (E.D.Va. July 1, 2015)(no implied cause of action for damages under *Bivens* for alleged violations of the First Amendment). Based upon the foregoing, the undersigned finds that Plaintiff's First Amendment claims present a new Bivens context.

Next, the Court must determine whether Bivens should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new *Bivens* remedy). Alternative remedies can include administrative, statutory,

equitable, and state law remedies. Based upon the undersigned's above finding that the BOP administrative remedy process was unavailable to Plaintiff, the Court finds that the administrative remedy process does not constitute an alternative remedy in this case. The undersigned, however, finds that Plaintiff had other alternative remedies such as the following: (1) Filing a claim pursuant to 31 U.S.C. § 3723, which allows claims up to $1,000 to be presented to the agency for redress of damages caused by a federal officer's negligence; (2) Filing a claim pursuant to 31 U.S.C. § 3724, which allows the United States Attorney General to settle claims for losses to privately owned property caused Department of Justice employees that does not exceed $50,000; and (3) Filing a tort claim under State law. See Minneci v. Pollard, 565 U.S. 118, 127-30, 132 S.Ct. 617, 181 L.Ed.2d. 606 (2012); Borowski v. Baird, 2018 WL 6583976, * 2 (S.D.Ill. Dec. 14, 2018), aff'd, 772 Fed.Appx. 338 (7th Cir. 2019); White v. Sloop, 2018 WL 6977336, * 3 (S.D.Ill. Aug. 31, 2018); also see Chilicky, 487 U.S. at 425-27, 108 S.Ct. 2460(As long as the plaintiff had an avenue for some redress, the bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability) Finally, if an inmate is being subjected to an ongoing constitutional violation, he could seek injunctive relief. See 18 U.S.C § 3626(a)(2); also see Malesko, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff had alternative remedies available to address his allegations of a violation of his First Amendment rights.

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be

extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" <u>Abbasi</u>, 137 S.Ct. at 1857(quoting <u>Carlson</u>, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." <u>Id.</u> at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." <u>Id.</u> at 1865. The <u>Abassi</u> Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." <u>Id.</u> The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

<u>Id.</u> The PLRA's exhaustion requirement clearly applies to <u>Bivens</u> actions. <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." <u>Jones v. Bock</u>, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing <u>Porter v. Nussle</u>, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." <u>Turner v. Safely</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d

64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259; also see Hernandez, 140 S.Ct. at 743("We have not attempted to 'create an exhaustive list' of factors that may provide a reason not to extend *Bivens*, but we have explained that 'central to [this] analysis' are 'separation-of-powers principles.' We thus consider the risk of interfering with the authority of the other branches, and we ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'") Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's First Amendment claims regarding retaliation and the improper opening of mail. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used

42

to bring about the proper formulation and implementation of public policies." Id. The Supreme

Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact

of a new species of litigation' against those who act on the public's behalf." Wilkie, 551 U.S. at

562, 127 S.Ct. 2588(quoting Bush, 462 U.S at 389, 103 S.Ct. 2404). In Abbasi, the Supreme Court

further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense
> and indemnification. Congress, then, has a substantial responsibility to determine
> whether, and the extent to which, monetary and other liabilities should be imposed
> upon individual officers and employees of the Federal Government. In addition, the
> time and administrative costs attendant upon intrusions resulting from the discovery
> and trial process are significant factors to be considered.

Abbasi, 137 U.S. at 1856. The undersigned notes that expanding Bivens to allow such First

Amendment claims by inmates would clearly result in an increase of suits by inmates. This increase

in suits would result in increased litigation costs to the Government and impose a burden upon

individual employees to defend such claims. As stated above, Congress recognized the need of

reducing costs related to frivolous lawsuits by prisoners when it enacted the PLRA. Thus, the costs

of defending such litigation against the need for damages as a remedy to protect a prisoner's rights

must be balanced if Bivens liability is extended to First Amendment claims. This is exactly the

type of activity that the Supreme Court determined in Abbasi is better left to the legislative branch.

Accordingly, the undersigned finds there are special factors counselling hesitation as to the

expansion of Bivens to a First Amendment claim of retaliation and improper opening of mail. See

Kirtman v. Helbig, 2018 WL 3611344, * 5 (D.S.C. July 27, 2018)("Having conducted the 'special

factors analysis,' the Court concludes that Plaintiff does have other avenues for relief, and there

are significant economic and governmental concerns with recognizing an implied cause of action

in this instance."), aff'd, 2019 WL 1513621 (4th Cir. April 8, 2019). Based upon the foregoing, the

undersigned respectfully recommends that the District Court decline to expand Bivens to Plaintiff's First Amendment claims and that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72) be granted as to Plaintiff's First Amendment claims. See Harris v. Dunbar, 2018 WL 3574736, * 3 (S.D.Ind. July 25, 2018)(collecting cases)("Nationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment."); also see Dorsey v, 2020 WL 614240 at * 2; Scates, 2019 WL 6462846 at * 7 – 8; Kirtman, 2018 WL 3611344 at * 3 – 5.

**F.    Excessive Force Claim:**

As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'")(quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are

sufficiently grave to form the basis of an Eighth Amendment violation). The Court, however, notes that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while other constitute 'excessive force.'" Thompson v. Commonwealth of Virginia, 878 F.3d 89, 97 (4th Cir. 2017)(citing Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). In the context of prison officials' use of force upon an inmate, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1078 (citations omitted)(Under the excessive force standard, an inmate must demonstrate that prison officials applied force "maliciously and sadistically for the very purpose of causing harm."); also see Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 178, 175 L.Ed.2d 995 (2010); Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)(holding that the excessive force standard applied to an officer who punched an inmate for no apparent reason). In determining whether prison officials acted maliciously and sadistically, the following factors must be balanced: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(citing Whitley, 475 U.S. at 321, 106 S.Ct. at 1078). Although the absence of serious injury may be relevant to the determination of prison officials' culpable intent, the lack of an injury is not dispositive. Id.; also see Thompson, 878 F.3d at 98("While excessive force does require malicious intent, it does not require that the prisoner victim suffer a 'significant injury.' . . . Therefore, a prisoner who suffers a minor, but malicious, injury may be able to prevail on an excessive force claim but not on a deliberate indifference claim."); Wilkins, 559 U.S. at 40, 130 S.Ct. at 1179("The 'core judicial inquiry' . . . [is] not whether a certain quantum

of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"); Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)("[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry.")

Furthermore, the Eighth Amendment does not prohibit "*de minimis* uses of physical force, provided that the use of force is not of the sort repugnant to the conscience of mankind." Harris v. Salley, 339 Fed.Appx. 281, 284 (4th Cir. 2009)(citing Hudson, 503 U.S. at 9 - 10, 112 S.Ct. at 1000). Thus, an inmate who "complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 38, 130 S.Ct. at 1178(citations omitted). It is well recognized, however, that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9, 112 S.Ct. at 1000 ("This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."); also see Thompson, 878 F.3d at 101("[W]hen use of force is malicious or repugnant, a plaintiff need to suffer anything significant to establish an excessive force claim.") Although every "malevolent touch" by a prison guard will not give rise to a federal cause of action, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38, 130 S.Ct. at 1179; Hudson, 503 U.S. at 9, 112 S.Ct. at 1000.

In his Amended Complaint, Plaintiff alleges that Defendant Cook responded to Plaintiff's medical duress alarm while Plaintiff was incarcerated at FCI McDowell. (Document No. 37, pp. 24 – 25.) Plaintiff states that Defendant Cook "was aware, or should have been aware, of Plaintiff's

46

disability and history of seizures." (Id.) Plaintiff further states that a fellow inmate notified Defendant Cook that Plaintiff was "having a seizure." (Id.) Plaintiff complains that Defendant Cook "not only ignored and disregarded this information, he abused and caused other officers responding to abuse Plaintiff, using inappropriate and excessive force on Plaintiff during and after his seizure." (Id., p. 25.) Plaintiff alleges that "at not time was [he] resisting or capable of resistance." (Id.) Plaintiff contends that Defendant Cook proclaimed that Plaintiff "was on drugs." (Id.) Plaintiff then alleges as follows:

> Cuffing Plaintiff behind his back without double locking them, S. Cook and other unknown officers carried Plaintiff outside, down stairs, flipping Plaintiff in the air and slamming him down, ratcheting the cuffs down on skin and bone crushingly, with hands and metal cuffs digging into Plaintiff's lower back painfully, then strapping and padlocking Plaintiff into this excruciatingly painful position for approximately 2 hours, then placing Plaintiff in SHU for weeks.

(Id.) Plaintiff contends that he was "bruised all over, wrists cut where the cuff's clamped down, also on his lower back." (Id.) Plaintiff complains that "[t]his treatment was never necessary or appropriate, but was the result of S. Cook ignoring the medical sheet in his office showing 'history of seizure,' as well as another inmate informing him that Plaintiff was indeed 'having a seizure.'" (Id.)

In their Motion, Defendants argue that Plaintiff's Complaint fails to state a claim of excessive force. (Document No. 72 and Document No. 73, pp. 30 – 31.) Defendants first complain that Plaintiff fails to indicate the date or time of the alleged use of force. (Document No. 73, p. 30.) Defendants explain that even though Plaintiff concludes that Defendant Cook used excessive force, Plaintiff "does not specify what actions Defendant Cook is supposed to have taken in this ordeal." (Id.) Defendants note that the only specific allegation made against Defendant Cook by Plaintiff, is that Defendant Cook made the statement that Plaintiff was on drugs. (Id.) Defendants

contend this is insufficient to state a claim. (Id.) Defendants next note that although Plaintiff alleges he suffered bruising and his wrists were cut, nothing in the medical records suggest that Plaintiff suffered such injuries during his confinement at FCI McDowell. (Id.) Finally, Defendants argue that "[i]f Defendant Cook did engage in the use of force in response to Plaintiff's suspected drug use, there is no evidence or allegations that this specific actions amount to a violation of his constitutional rights." (Id.) Defendants explain "[t]here is no information in the pleadings that Cook specifically acted in a sadistic or malicious manner to cause harm - stating that Plaintiff was on drugs is not sufficient-in fact, Cook's belief that Plaintiff was suffering from drug intoxication demonstrates his perception that a degree of force was necessary to respond to Plaintiff's behavior with good faith effort to maintain or restore discipline." (Id.) Therefore, Defendants request that Plaintiff's above claim be dismissed. (Id.)

In Response, Plaintiff argues "[r]ecords and testimony will prove that Defendants used excessive force after restraining the Plaintiff both during and after a seizure." (Document No. 82, p. 3.) Plaintiff states that "these documents include Plaintiff's Sworn Affidavit and officer reports regarding the incident." (Id.) Plaintiff alleges that "excessive force was frequently deployed, including leg shackles, belly chain, handcuffs and 'black box,' while cruelly strapping the Plaintiff to a gurney for hours post-seizure without relief as a standard procedure." (Id.) Plaintiff states that this "policy was adopted to deter drug use a FCI McDowell." (Id.) In his Affidavit, Plaintiff concludes that "the grossly excessive force of officers directly caused unnecessary injuries and severe mental anguish that exacerbated my increasing seizure experiences." (Document No. 82-1, p. 5.) Plaintiff states that "[t]his excessive force used by the officer taking me to the Emergency Room is evidenced by the fact that I suffered a partially torn rotator cuff which the officers

attempted to disguise by stating I had attempted to bite them though they did not follow standard protocols for treatment of person experiencing a medically document medical seizure." (Id.)

The undersigned finds that Plaintiff has failed to state a cognizable claim of excessive force. Although a complaint need not assert detailed factual allegations, it must contain more than labels and conclusions. A plaintiff must also assert factual allegations with sufficient detail to put a defendant on notice of claim against him or her. In his Response, Plaintiff concludes that "[r]ecords and testimony will prove that Defendants used excessive force." Plaintiff then states that "these documents include Plaintiff's Sworn Affidavit and officer reports regarding the incident." Plaintiff fails to cite or identify the "officer reports" he is referring, and Plaintiff's Sworn Affidavit merely concludes that "officers" used "grossly excessive force." Unsupported affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment. Moore v. United States, 1987 WL 11280 (S.D.W.Va. March 23, 1987); also see Evans v. Technologies Applications & Service, Co., 80 F.3d 954, 692 (4th Cir. 1996)(Summary judgment affidavits cannot be conclusory or based on hearsay). Therefore, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)(citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001)). Therefore, the undersigned finds that Plaintiff's general allegation that "Defendants used excessive force," without identify the specific defendant and the alleged misconduct taken by that defendant, to be insufficient. Liberally construing Plaintiff's claim, Plaintiff appears to allege that Defendant Cook caused other staff members to use "excessive force" because Defendant Cook stated that Plaintiff was "on drugs." Defendant Cook's action of stating Plaintiff was "on drugs," does not constitute the use of excessive force. To the extent Plaintiff is alleging that Defendant Cook

participated in the handcuffing of Plaintiff and carrying him down the steps, then "slamming" him on a gurney, the undersigned will consider the claim. Although Plaintiff indicates that he suffered pain as a result of the foregoing, there is no indication or allegation Defendant Cook maliciously and sadistically used force to cause harm. Plaintiff focuses heavily upon his claim that Defendant Cook knew, or should have known, that Plaintiff had a "history of seizures." Even assuming Defendant Cook knew Plaintiff had a history of seizures, the record also reveals that prison staff had evidence indicating that Plaintiff was a known drug user within the prison. (Document No. 72-2, pp. 2 – 6.) The Court notes that symptoms caused by a seizure can be very similar to negative side effects caused by drug use. Thus, the undersigned cannot find that the application of handcuffs on an inmate, when it is unclear whether he was experiencing side effects from drug use or a seizure, to be unreasonable. It is reasonable that the application of handcuffs is necessary and appropriate under these circumstances when moving an inmate from one area of a prison to another. Next, there is no indication that Defendant Cook intentionally applied the handcuffs too tightly. Plaintiff merely complains that Defendant Cook and "others" did not ensure that the cuffs were double locked to prevent the tightening of the handcuffs. Given the circumstance of the situation that required immediate medical attention, it is not unreasonable that Defendant Cook might not take the time or effort to double lock handcuffs. The foregoing, however, does not exhibit intentional malicious conduct by Defendant Cook taken for the purpose of causing harm to Plaintiff. Accordingly, the undersigned respectfully recommends that Defendants' Motion (Document No. 72) be granted as to the above claim.

### G.    No Deliberate Indifference Regarding Medical Care:

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir.

1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") Therefore, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate

51

indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that there was a substantial risk to Plaintiff's health or safety and that Defendant disregarded the serious physical consequences.

Plaintiff alleges that Defendants Walters, Wyatt, Alexander and Carothers acted with deliberate indifference in failing to provide adequate medical care for his seizure disorder. (Document No. 37, pp. 21 - 24.) Plaintiff contends Defendants acted with deliberate indifference by denying him medication for seizure disorder for approximately four months. (Id.) Plaintiff alleges that he requested to be placed back on seizure medication during this intake screening on July 23, 2019. (Id.) Plaintiff complains that Defendant Alexander merely provided him a lower bunk pass and stated he would review Plaintiff's seizure history. (Id.) Plaintiff further complains that the ER doctor prescribed Keppra as an antiseizure medication on December 9, 2019, but such was not provided to Plaintiff. (Id.) Plaintiff alleges that he notified Defendant Walters on several occasions of his "fear of having more seizures." (Id.) Plaintiff alleges that Defendant Carothers was notified of his need for antiseizure medications and treatment for the injuries he suffered due to a seizure on January 2, 2020, but no treatment was ever provided. (Id.) For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his seizure condition

52

subjected him to a substantial risk of serious harm. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants Walters, Wyatt, Alexander and Carothers acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends Defendants acted with deliberate indifference by denying him medication for his seizure disorder for approximately four months. (Document No. 37, pp. 21 – 24, Document No. 82, and Document No. 82-1.) Plaintiff states that he requested to be placed back on seizure medication on numerous occasions, but Defendants refused his request. (Id.) Plaintiff complains Defendants continued to suspect drug use as the cause of his seizures despite the fact that Plaintiff repeatedly tested negative on drug screenings.[8] (Id.) Plaintiff contends that Defendants acted with deliberate indifference because "Defendants should have ordered a neurology consult or provided the treatment and medication ordered by the qualified doctor they sent plaintiff to, but they only sent Plaintiff to that doctor to run drug screens." (Id.) Even assuming the foregoing as true, the undersigned finds that Plaintiff cannot establish a claim of deliberate indifference. Specifically, Plaintiff has not established that Defendants knew of, and disregarded, Plaintiff's need for treatment. The record clearly reveals that Plaintiff was evaluated by Defendants following each

---

[8] Special Investigative Services Lieutenant Smith declares as follows (Document No. 72-2, p. 6): Plaintiff was drug tested in connection with each suspected substance abuse incident with negative results. However, it had been found that a new K2 white powder substance had been introduced to the prison that might not result in a positive test due to the way it was being made and broken down inside the prison.

seizure-like episode. Plaintiff's medical records reveal that Plaintiff experienced four seizure-like episodes[9] from July 23, 2019 (date of transfer to FCI McDowell) until January 29, 2020 (the date he was prescribed anti-seizure medication). On at least two occasions, medical staff had very compelling evidence to support suspicion of drug use. On one occasion, a homemade pipe was found lying beside Plaintiff in his cell. On the other occasion, Plaintiff's cell had a strong smell of smoke. During another seizure-like episode, Defendant Wyatt suspected drug use after conducting an examination of Plaintiff. Defendant Wyatt administrated a dose of Narcan and it was noted that Plaintiff became more responsive within five minutes of receiving the Narcan. Additionally, the record reveals that Plaintiff as transported to the ER following two of his seizure-like episodes. Although Plaintiff asserts that he was only transported to ER for the purpose of drug testing, this bare assertion is unsupported by the record. Furthermore, the record reveals that Plaintiff was referred to a neurologist after his January 1, 2020 episode, and anti-seizure medication was provided on January 29, 2020. Medical staff, however, noted that it was still unclear whether Plaintiff suffered a "true seizure," but the medication would be provided pending a consult with a neurologist. Although Plaintiff may have disagreed with Defendants' suspicion of drug use and their medical decision to not immediately prescribe anti-seizure medication, this does not establish deliberate indifference. An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). Plaintiff's claim that the

---

[9] Plaintiff experienced seizure like episodes on September 23, 2019, October 29, 2019, December 9, 2019, and January 1, 2020. On at least two occasions, medical staff had compelling evidence to support suspicious of drug use. On one occasion a homemade pipe was found lying beside Plaintiff in his cell and the other occasion Plaintiff's cell had a strong smell of smoke.

ER doctor's assessment and treatment plans was better than Defendants' assessment and treatment plan does not state a constitutional violation. See Lewis v. Proctor, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); Oglesby v. Abbassi, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). At most, Defendants may have misdiagnosed the reasoning for Plaintiff's seizure-like episodes. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008)(noting that a defendant's consultation with outside experts supported inference that a misdiagnosis was not deliberate indifference); also see Bridges v. Keller, 519 Fed.Appx. 786, 787 (4th Cir. 2013)(where prison officials were promptly responsive to inmate's complaints and regularly administered treatment, prison officials failure to correctly diagnose plaintiff's condition did not render their responses deliberately indifferent); Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the undersigned finds that Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's seizure-like episodes. The undersigned, therefore, respectfully recommends that Defendants' Motion (Document No. 72) be granted as to Plaintiff's above claim.

**H.    Dental Care:**

Plaintiff alleges that Defendant Thompson was the Health Services Administrator and he failed to ensure that Plaintiff received antiseizure medication as well as antibiotic for his abscessed tooth. (Document No. 37.) Plaintiff fails to identify any other defendants concerning his dental

55

care. (Id.) In Defendants' Motion, Defendant Thompson contends that Plaintiff's claim against him are improperly raised based upon supervisory liability. (Document No. 72 and Document No. 73, pp. 35 – 36.) Specifically, Defendant Thompson states that Plaintiff names him as a defendant solely due to his supervisory position at FCI McDowell. (Document No. 73, p. 36.) Defendant Thompson contends that Plaintiff has failed to establish the requisite personal or supervisory involvement necessary to support Bivens liability. (Id.) Defendant Thompson filed a Declaration stating that as the Health Services Administrator, "I provide administrative oversight for the Health Services Department at FCI McDowell." (Document No. 72-3, pp. 2 – 7.) Therefore, Defendant Thompson argues that his supervisory position and the general notion that he is responsible for the actions of his subordinates is simply insufficient to form the basis of a claim for violations of a constitutional right. (Document No. 73, p. 36.) In Response, Plaintiff argues that "[e]ach Defendant knowingly acted in violation of Plaintiff's constitutional rights [and] [e]ach Defendant acted outside the scope of their official capacities in their contact with Plaintiff." (Document No. 82, p. 6.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of

56

Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendant Thompson argues that Plaintiff has failed to demonstrate specifically how he was personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendant Thompson violated his constitutional rights with respect to his failure to supervise employees. The evidence of record, however, does not indicate any personal involvement by Defendant Thompson. In the instant case, there is no evidence that Defendant Thompson was personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Plaintiff cannot establish supervisory liability merely by alleging that subordinates were deliberately indifferent to his needs or failed to provide him with forms. Accordingly, Plaintiff has improperly raised his claim against Defendant Thompson under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court, therefore. finds that Defendant Thompson's "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" (Document No. 72) should be granted.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's claims. The undersigned further finds that Plaintiff's "Motion Requesting Censure and Monetary Award Against Defendants for Systemic Interference with Legal Mail" (Document No. 41) should be

denied as moot.[10]

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **DENY** Plaintiff's Motion for Temporary Restraining Order (Document No. 39), **GRANT in part and DENY in part** the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72), **DENY as moot** Plaintiff's Motion Requesting Censure and Monetary Award Against Defendants for Systemic Interference with Legal Mail (Document No. 41), and **REMOVE** this matter from the Court's docket. Specifically, the undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72) be **DENIED** as to Defendants' arguments that (1) Plaintiff's claims are precluded by his failure to exhaust BOP administrative remedies, and (2) Plaintiff's Eighth Amendment claims are an improper extension of <u>Bivens</u>. The undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72) be **GRANTED** as to the following arguments: (1) Plaintiff's <u>Bivens</u> claim against Defendants in their official capacities is improper; (2) Plaintiff's disability discrimination claims should be dismissed for failure to exhaust; (3) Plaintiff's fails to establish a constitutional

---

[10] The undersigned notes that this Court revised the marking of legal mail to inmates to identify the Clerk of the Court by name so as to comply with the BOP's strict construction of its policy. (Document No. 34.) The Court notified the BOP that the Court believed the forgoing satisfied their policy requirements, and if not, the BOP was to notify of Court. There is no indication that Plaintiff's legal mail was opened after Defendants' receipt of this Order that was entered on April 14, 2020. Although Plaintiff complains his copy of the Court's April 14, 2020 Order was improperly opened on April 16, 2020, the Court notes that it is unlikely that the appropriate BOP staff had received a copy of the foregoing Order at that time.

violation regarding the denial of access to the administrative remedies process and visitation privileges; (4) Plaintiff's fails to establish a constitutional violation regarding his placement in SHU; (5) Plaintiff's claims under the First Amendment constitute an improper extension of <u>Bivens</u>; (6) Plaintiff fails to establish an excessive force claim against named-defendants; (7) Plaintiff cannot establish a claim of deliberate indifference to his medical condition; and (8) Plaintiff's claim against Defendant Thompson is inappropriately based upon supervisory liability. The undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 72) be **DENIED as moot** as to the argument that Defendants are entitled to qualified immunity.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 5, 2021.

Omar J. Aboulhosn
United States Magistrate Judge